09 CV 8083

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

LEVITON MANUFACTURING CO., INC.,

        Plaintiff,

        -against-

GREENBERG TRAURIG LLP, PAUL J. SUTTON,
BARRY G. MAGIDOFF, and CLAUDE R.
NARCISSE,

        Defendants.

-------------------------------------------------------X

___ Civ ____

**COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
SEP 22 2009
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff LEVITON MANUFACTURING CO., INC., by its attorney Jeffrey A. Jannuzzo, Esq., as and for its Complaint against defendants GREENBERG TRAURIG LLP and PAUL J. SUTTON, BARRY G. MAGIDOFF, and CLAUDE R. NARCISSE, alleges as follows:

        1.     This is an action for legal malpractice and breach of fiduciary duty involving questions of federal patent law, as well as state law claims. Federal question jurisdiction exists under applicable case law. Damages in excess of $100 million are alleged. Plaintiff demands a trial by jury.

### THE PARTIES

        2.     Plaintiff Leviton Manufacturing Co., Inc. ("Leviton") is a Delaware corporation, with its principal executive office at 201 North Service Road, Melville, NY 11747.

        3.     Defendant Greenberg Traurig LLP ("Greenberg Traurig") is a domestic registered limited liability partnership, with its offices at 200 Park Avenue, New York, NY 10166.

        4.     Defendant Paul J. Sutton ("Sutton") is a member of the Bar of the State of New York, and resides or does business in person in the Southern District of New York.

        5.     Defendant Sutton was, from approximately February 2000, a

partner/shareholder at defendant Greenberg Traurig or a counsel employed by Greenberg Traurig, and was responsible for the representation of plaintiff with regard to the matters complained of, and the supervision of the lawyers who performed the services complained of. Defendant Sutton was until approximately February 20, 2009 a counsel employed by defendant Greenberg Traurig, and was Traurig's "Senior Chair, Intellectual Property and Technology/Technology, Media & Telecommunications."

6.     Defendant Barry G. Magidoff ("Magidoff") is a member of the Bar of the State of New York, and either resides or does business in person in the Southern District of New York.

7.     Defendant Magidoff was, from approximately February 2000, either a counsel, or a partner/shareholder at defendant Greenberg Traurig, and was responsible for the representation of plaintiff with regard to the matters complained of, and the supervision of the lawyers who performed the services complained of. According to Greenberg Traurig's website, defendant Magidoff became a partner/shareholder on February 18, 2005.

8.     Defendant Claude R. Narcisse ("Narcisse") is a member of the Bar of the State of New York. On information and belief, defendant Narcisse resides in New Jersey.

9.     According to Greenberg Traurig's website, defendant Narcisse became a partner/shareholder of defendant Greenberg Traurig on February 18, 2005. Prior to becoming a partner/shareholder, at the relevant times, defendant Narcisse was an associate or counsel employed by defendant Greenberg Traurig.

10.    Defendant Narcisse was the lawyer assigned by defendants Sutton, Magidoff and Greenberg Traurig to prosecute the so-called '766 Patent, and the Germain patent application, referred to herein.

11.     Defendants Greenberg Traurig, Sutton, Magidoff and Narcisse are sometimes referred to collectively as "the Greenberg Traurig Defendants."

12.     On or about February 20, 2009, defendants Sutton, Magidoff, and Narcisse departed defendant Greenberg Traurig.

13.     On information and belief, defendants Sutton, Magidoff, and Narcisse were either forced to leave or were encouraged to leave defendant Greenberg Traurig.

14.     Defendants Sutton and Magidoff now practice law and do business in person at Sutton Magidoff LLP, 909 Third Avenue, New York, NY 10022-6731, in the Southern District of New York.

## VENUE AND JURISDICTION

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a), in that issues of patent infringement or validity are necessary elements of the legal malpractice action.[1]

16.     This Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367 over any and all state law claims, in that such claims are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

17.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this District.

## THE FACTS

**A      Leviton Manufacturing Co., Inc.**

18.     Defendant Leviton is a leading North American producer of electrical and

---

[1] *Air Measurement Technologies v. Akin Gump Strauss Hauer & Feld LLP*, 504 F.3d 1262 (Fed.Cir. 2007), and *Immunocept LLC v. Fulbright & Jaworsky LLP,* 504 F.3d 1281 (Fed.Cir. 2007).

electronic products, and is the largest North American manufacturer of electrical and electronic wiring devices. It is a third generation family-owned business, founded in 1906 by Isidor Leviton in a small shop on Delancey Street in New York, at the dawn of the electrical era. Isidor Leviton's son Harold Leviton was the CEO and Chairman of the company from 1965 until his passing in 2007.

19.    Under the stewardship of Mr. Harold Leviton, Leviton set industry standards for product design, innovation and safety. It currently holds over 800 patents worldwide and its brands and products are known around the world.

20.    One of Leviton's most significant lines of personal safety products are its Ground Fault Circuit Interrupter devices ("GFCIs"), introduced in 1972. A GFCI protects people from electric shock and is found in nearly every home and building in North America. It has undoubtedly saved countless lives.

## B.    Suttons's Continuous Representation of Leviton

21.    For approximately 37 years, from 1971 to 2008, when Leviton terminated the relationship, defendant Sutton represented Leviton in substantially all of its intellectual property matters. Defendant Sutton took over the representation of Leviton from his partner Harry Hamilton, Esq., who had represented Leviton for 45 years, until Mr. Hamilton retired in 1971.

22.    Defendant Sutton's representation of Leviton included responsibility for seeking patent protection for Leviton's inventions and enforcing Leviton's patent rights, including through litigations commenced upon Sutton's recommendation. When Sutton changed law firms, he took Leviton's intellectual property matters with him from one firm to the next.

23.    During his 37 year relationship with Leviton, Sutton developed, nurtured and protected a close relationship of friendship and trust with Mr. Harold Leviton. Sutton led plaintiff to believe that there was never any need for Leviton to have an internal legal department to oversee

Sutton's work. Sutton and his firms effectively functioned as Leviton's legal department for intellectual property matters.

24.    This relationship proved to be very lucrative for Sutton, who advertised on Greenberg Traurig's website that he represented Leviton in at least 58 patent litigations, 44 as a plaintiff and 14 as a defendant.

25.    On information and belief, the legal services that defendant Sutton provided or supervised at his various firms represented half or more of the client business originated by Sutton at such firms during most of the years covered by the events described herein. Leviton's business was the mainstay of defendant Sutton's legal practice.

26.    On information and belief, the Leviton account formed a principal part of the "portable business" of defendant Sutton which caused defendant Greenberg Traurig to offer Sutton a position as a partner/shareholder in approximately February 2000.

27.    On information and belief, defendant Sutton was being paid annual compensation by defendant Greenberg Traurig in excess of $2 million a year during much of the time period in question.

28.    Defendant Sutton departed defendant Greenberg Traurig not long after Leviton wound down and then terminated the use of his professional services.

C.    **Greenberg Traurig's Continuous Representation of Leviton**

29.    During the times complained of below, defendant Greenberg Traurig, through its partner/shareholder defendant Sutton, functioned as Leviton's general counsel for all patent matters.

30.    Defendants Greenberg Traurig and Sutton were retained and paid by Leviton to prosecute and maintain nearly all of its patents worldwide. This included reviewing invention

disclosures; making recommendations on protecting the inventions with appropriate patent applications; preparing and filing timely applications in various countries to protect Leviton's inventions; representing Leviton before the U.S. Patent and Trademark Office ("the USPTO" or "PTO") to achieve issuance of correct and complete Letters Patent; maintaining a database of Leviton's patents and monitoring the deadlines for maintenance payments; insuring that all fees were timely paid; and enforcing Leviton's patents.

31.    During the times complained of below when Sutton was a partner/shareholder in defendant Greenberg Traurig, Leviton paid Greenberg Traurig an average of 4.9 million dollars annually, with nearly 11 million dollars paid in 2005, for handling Leviton's patent matters, including both patent prosecution and patent litigation. During the period from 2000 through 2005, Leviton paid Greenberg Traurig over $38 million for its work on Leviton's patent matters.

32.    Defendant Greenberg Traurig continuously represented plaintiff Leviton with regard to patent matters during the time that defendant Greenberg Traurig maintained the patent docket of Leviton, and was responsible for all matters related to the patents on such docket, including insuring timely payment of all fees necessary to maintain such patents. Greenberg Traurig, under Sutton's supervision, maintained such database, and charged plaintiff for its professional time and disbursements for maintaining such patents and such database, until at least November 2008.

33.    Defendant Greenberg Traurig continuously represented Leviton with respect to patent matters before the USPTO until the USPTO was notified in approximately July 2008 that the patent files in question were the responsibility of different counsel.

**D.    Defendants' Malpractice In Failing To Prosecute Correct and Complete Patent Claims For One Of Leviton's Most Significant Recent Inventions**

34.    **Background of the GFCI Inventions**.  A GFCI receptacle is commonly

found in kitchens and bathrooms near a water source. It is designed to detect a small loss of current that might indicate there is a broken path to the ground, *i.e.,* a "ground fault," which could cause the shock or electrocution of a someone holding an appliance that is plugged into the defective receptacle. A properly functioning GFCI receptacle will detect the "ground fault" and will "interrupt" the circuit, cutting off all power to the face outlets, and preventing shock or electrocution.

35.    A GFCI receptacle typically has two buttons: one to test its operation, and the other to reset it, after it has been tripped by a ground fault. One long-standing industry problem was how to prevent the GFCI from being reset if the device was broken. In that situation, someone could reset the device thinking it was still safe, but the device would no longer give protection from a ground fault.

36.    **Leviton's Reset Lockout Invention**.  In approximately mid-1998 Leviton employees were the first in the industry to solve this problem, and invented "reset lockout" technology. Simply put, it prevented a broken GFCI device from being reset, so that a person would not be shocked or electrocuted by plugging an appliance into a GFCI that no longer protected against a ground fault. Leviton considered "reset lockout" to be one of its most important inventions.

37.    Leviton submitted to defendant Sutton an invention disclosure to seek patent protection for this "reset lockout" technology.

38.    Sutton prepared a patent application and filed it on August 24, 1998. After a complete and thorough examination, the USPTO granted U.S. Patent No. 6,040,967 (the '967 Patent) to Leviton. This was the first, or parent, of a line of "reset lockout" patent applications.

39.    **"Reverse Wire" And Its Solution**.  On or about October 20, 1998, approximately two months after the application for the '967 Patent was filed, Leviton provided

Sutton with another invention that solved a second long standing problem known as "reverse wire," so named because it arose when an installer of a GFCI wired the device in reverse. Simply put, if the installer wired a GFCI device with the incoming or "line" terminals mistakenly connected to the outgoing or "load" terminals, the faulty installation would defeat the protection of the GFCI. Leviton refers to this invention as "isolated conductors."

40.    Prior to this invention, GFCIs had one conductor connected to the incoming or "line" terminals, and a second conductor that fed power to both the "load" terminals and the "face outlets," *i.e.*, the place where an appliance was plugged in. The circuit interrupter was situated between the first and second conductors. If the GFCI was installed correctly, in the event of a ground fault, the circuit interrupter tripped, cutting off power to the load terminals and the face outlets.

41.    However, when the device was wired in reverse, power entered from the wrong side, *i.e.*, the "load" terminals. Because the "load" terminals were permanently connected to the face outlets, even if the circuit interrupter tripped due to a ground fault, the face outlets were still live, and could still cause shock or electrocution.

42.    Leviton invented the "isolated conductor" GFCI to solve this problem. This new GFCI has three separate conductors: one for the line side, one for the load side, and one for the face outlets. When a ground fault is detected, the circuit interrupter isolates all three conductors. In this way, even if the installer has wired the GFCI in reverse, the "isolated conductors" would cut off power to the face outlets and prevent shock or electrocution if a ground fault is detected.

43.    "Isolated conductors" is one of Leviton's more significant inventions.

44.    In no small part, Leviton's demonstration of a viable "reverse-wired" protected GFCI made it possible for the ANSI standards body to require, effective July 2006, that

a GFCI that is wired in reverse should be unable to provide power at the outlets upon installation.

45.     Leviton submitted to defendant Sutton an invention disclosure to seek patent protection for this invention.

46.     Leviton provided Sutton with a preferred embodiment of the new GFCI that encompassed both "reset lockout" and "isolated conductors." The preferred embodiment used a bridge mechanism to electrically connect the three conductors. This bridge mechanism was referred to as "bridge contacts."

47.     On August 20, 1999, Sutton filed a patent application entitled "Circuit Interruptive Device with Reverse Wiring Protection." This application was filed as a continuation in part of the application that led to the '967 patent. On June 21, 2001, the USPTO granted U.S. Pat No. 6,246,588 (the '558 patent) to Leviton.

48.     **Malpractice in Failing to Prosecute Correct and Complete Patent Claims**. Instead of prosecuting patent claims that covered the full breadth of the "isolated conductor" invention, Sutton prosecuted patent claims limited in one fashion or another to the preferred embodiment. Sutton did not prosecute a patent claim for "isolated conductors" as a separate invention, but only claimed patent protection for "isolated conductors" used in connection with "reset lockout."

49.     Despite having every opportunity to do so prior to the issuance of the '558 Patent, Sutton failed to prosecute proper and correct patent claims directed to this invention. Only later when unauthorized GFCIs incorporating "isolated conductors" were found in the marketplace did Sutton appreciate he had failed to properly claim the isolated conductors invention.

50.     As a result of defendants Greenberg Traurig and Sutton's negligence in securing proper patent protection for Leviton's "isolated conductors" invention, Leviton had to pay

Greenberg Traurig and Sutton excessive fees for a multiplicity of patent application filings in excess of what a patent prosecutor of ordinary skill would have achieved following accepted patent prosecution practice.

51.    By failing to completely and correctly patent the invention, defendants Greenberg Traurig and Sutton caused Leviton to expend millions of dollars of unnecessary legal fees and expenses in litigating multiple patent infringement cases, and to settle such cases for less than they would have been worth if the proper patents had been obtained.

52.    Defendants Greenberg Traurig and Sutton caused Leviton to incur legal fees and expenses in the Shanghai Meihao Litigation that would have been unnecessary if the proper patents had been obtained, and to incur the damage to the value of the patents described below.

53.    Leviton was further harmed by widespread infringement of its "isolated conductors" invention, because until recently it did not have the proper patent coverage to obtain judicial relief.

E.    **Defendants' Malpractice During Prosecution Of The Application For the '766 Patent**

54.    On April 19, 2004, Sutton filed another patent application as a continuation application regarding GFCI technology, which in accordance with applicable U.S. statutes and regulations, claimed a priority filing date back to the filing of the '558 patent, August 20, 1999. This application was drafted with the goal of claiming "isolated conductors" separate from reset lockout. On March 8, 2005, the USPTO granted U.S. Patent No. 6,864,766 (the "'766 Patent") to Leviton.

55.    Defendant Narcisse was the attorney who actually wrote the patent application for the '766 Patent, and prosecuted such patent before the USPTO. Defendants Sutton and Magidoff were responsible for supervising defendant Narcisse with regard to the '766 Patent.

56.    Narcisse had not previously worked on any of the patent applications related

to the "reset lockout" or "isolated conductors" inventions. However, he had worked on another, later invention by a different group of inventors, who created a new embodiment for a GFCI with the isolated conductors invention. This application was filed six months prior to the filing of the application for the '766 Patent, and was assigned Serial No.10/690,776 ("the Germain Application").

57.    The Germain Application was prepared by defendant Narcisse, under the supervision of defendants Sutton and Magidoff.

58.    Narcisse filed claims in the application for the '766 Patent that were nearly identical to the claims he had previously filed in the Germain Application.

59.    Defendant Greenberg Traurig filed a Petition to Make Special requesting expedited prosecution of the application for the '766 Patent, in light of infringing activity.

60.    During prosecution of the application for the '766 Patent, the Greenberg Traurig Defendants did not inform the Patent Office examiner about the co-pending Germain Application with nearly identical claims, and did not make disclosures about relevant litigations and other matters.

61.    The Greenberg Traurig Defendants' failure to make proper disclosures to the USPTO in the application for the '766 Patent resulted in adverse findings in the litigation discussed below.

**F.    Judicial Determinations Of Greenberg Traurig's Malpractice and
Breach of Duty In The Shanghai Meihao Litigation**

62.    Three weeks after the '766 Patent was granted, on March 31, 2005, defendant Greenberg Traurig filed suit in the District of Maryland on behalf of Leviton against Universal Security Instruments, Inc. ("USI") and Shanghai Meihao Electric, Inc. ("Shanghai Meihao") for infringement of the '766 Patent. *Leviton Manufacturing Co., Inc. v. Universal Security Instruments, et al.*

63.     On May 5, 2005, Shanghai Meihao filed its Answer in that case, and commenced a declaratory judgment action against Leviton ("the Shanghai Meihao Declaratory Judgment Action"). The actions were consolidated and are referred to collectively herein as "the Shanghai Meihao Litigation."

64.     Shangai Meihao raised the defense, and sought a declaratory judgment, that the '766 Patent was unenforceable due to "inequitable conduct" during prosecution of the '766 Patent before the USPTO.

65.     The conduct alleged by Shanghai Meihao was the conduct of the Greenberg Traurig Defendants. Shanghai Meihao referred to the conduct of Sutton, Magidoff, and Narcisse, by name, and made detailed allegations of wrongdoing and breaches of professional responsibility and standards of practice by them.

66.     On or about January 14, 2008, Shanghai Meihao moved for attorneys' fees and costs against Leviton, alleging "inequitable conduct" by the Greenberg Traurig Defendants during prosecution of the application for the '766 Patent, and discovery misconduct by the Greenberg Traurig Defendants during the Shanghai Meihao Litigation.

67.     By email dated January 20, 2008, Leviton informed the Greenberg Traurig Defendants of Shanghai Meihao's motion, and sent the Greenberg Traurig Defendants a copy of the publicly-filed motion.

68.     **Judicial Determinations Of Failure to Disclose by Greenberg Traurig Defendants**. In a Report and Recommendation dated December 23, 2008 in the Shanghai Meihao Litigation ("the Gauvey Decision"), Magistrate Judge Susan K. Gauvey determined that Greenberg Traurig had violated applicable regulations of the PTO and case law in connection with its prosecution of the '766 Patent. In a Memorandum and Order dated May 12, 2009 in the Shanghai

Meihao Litigation ("the Davis Decision"), District Judge Andre Davis adopted the report and recommendation of Magistrate Gauvey in virtually all respects.

69.     Leviton informed the Greenberg Traurig Defendants of these decisions within days of their receipt.

70.     The Gauvey and Davis Decisions determined that the Germain Application and the '766 Patent have many patent claims that are word-for-word identical, or very nearly so. *Davis at 7; Gauvey at 5.* The Gauvey Decision determined that the Greenberg Traurig Defendants had copied claim language from the Germain Application into the application for the '766 Patent, and had failed to timely inform the PTO that they had done so. *Id. at 23.* The Davis Decision adopted this determination.

71.     The Gauvey Decision determined that the copying of claim language from the Germain Application into the application for the '766 Patent was material, and that copying of claim language was "essentially material *per se*," and that disclosure of such copying is "an absolute, unqualified duty." *Gauvey at 22.* The Davis Decision adopted these determinations, and held that the Germain Application should have been disclosed to the patent examiner "as a matter of law." *Davis at 7.*

72.     The Gauvey Decision further determined that there was a duty to disclose to the PTO that there was related litigation to the subject matter of the '766 Patent, namely, that the parent patents of the '766 Patent had been litigated in at least 12 different lawsuits filed before the '766 Patent was issued. *Id. at 37-38. See also MPEP § 2001.06(b).* The Gauvey Decision determined that the related litigation had not been timely disclosed to the PTO by the Greenberg Traurig Defendants. *Id. at 40-42.*

73.     **Judicial Determination of Intent to Deceive by Greenberg Traurig**

**Defendants**. The Gauvey Decision determined that the Greenberg Traurig Defendants had intended to deceive the PTO when they failed to disclose the Germain Application and the related litigation. The Gauvey Decision expressly found that "the facts and circumstances indicate" Greenberg Traurig's "intentional, deliberate deception of the PTO." *Id. at 59*. The Gauvey Decision determined that Greenberg Traurig "*played 'fast and loose' with the governing law, ignoring their overarching duty of candor and disclosure complying with the governing statute, regulations and manual provisions*." *Id. at 62*. While the finding referred on occasion to Leviton as the party to the litigation, all of the wrongful conduct found by the court was committed solely by the Greenberg Traurig Defendants. *Id. at 47-59, 62*.

74.    The Davis Decision adopted the determination of the Gauvey Decision that Greenberg Traurig had acted with intent to deceive the PTO:

> Here, Narcisse withheld highly material information in the form of the Germain application. He knew of the materiality of this information. In fact, he drafted the '766 Patent and the Germain application within a relatively short time period of one another. And, he has not offered any credible explanation as to why the information was withheld. Narcisse's bare denials of his subjective belief that disclosure was not required contradict his own testimony that he not only was familiar with MPEP requirements and PTO regulations, but that he was also aware of 37 C.F.R. § 10.23, which prohibits copying of claims, and 37 C.F.R. § 1.604(b), which requires disclosure of material information. *Id. at 11*.

75.    The Gauvey Decision determined that the acts and omissions of the Greenberg Traurig Defendants constituted "inequitable conduct" during the prosecution of the '766 Patent. The Gauvey Decision recommended that based on the acts and omissions of the Greenberg Traurig Defendants, plaintiff Leviton should be sanctioned and required to reimburse Shanghai Meihao over \$800,000 in costs and attorneys' fees. The Davis Decision adopted the report and recommendation of Magistrate Judge Gauvey, and entered judgments against Leviton, as described herein.

76.     Leviton has filed an appeal of the Davis Decision and the resulting judgments, and has posted an appeal bond. Regardless of whether Leviton succeeds in its appeal that the Greenberg Traurig Defendants' conduct did not rise the level of "inequitable conduct" under applicable case law in the Federal Circuit, the Greenberg Traurig defendants committed malpractice and failed to follow accepted professional standards during the prosecution of the '766 Patent, and the Greenberg Traurig Defendants malpractice has caused Leviton significant harm.

77.     **Judicial Imposition of Sanctions For Discovery Misconduct By The Greenberg Traurig Defendants**. As noted, Shanghai Meihao also moved for attorneys' fees and costs based on litigation misconduct by the Greenberg Traurig Defendants. In addition to the conduct of the Greenberg Traurig Defendants during the prosecution of the '766 Patent referred to above, the Court determined to impose sanctions on Leviton on the independent ground that the Greenberg Traurig Defendants had committed misconduct during discovery.

78.     The opposing party in the Shanghai Meihao Litigation served subpoenas on the Greenberg Traurig Defendants on January 25, 2007. *Gauvey at 77*. The subpoenas were for documents and testimony relevant to the defense of "inequitable conduct" raised in the Shanghai Meihao Litigation in May 2005. *Id. at 77*.

79.     Despite being duly subpoenaed, the Greenberg Traurig Defendants neither appeared for deposition nor produced documents, nor did they timely move to quash, nor did they seek an adjournment of their time to respond. *Id. at 77*.

80.     The Gauvey Decision recommended that based on the discovery misconduct by the Greenberg Traurig Defendants, plaintiff Leviton should be sanctioned and required to reimburse Shanghai Meihao over $800,000 in costs and attorneys' fees.

81.     The Davis Decision adopted the report and recommendation of Magistrate

Judge Gauvey, and adopted the conclusion of the Magistrate Judge that the litigation misconduct committed by the Greenberg Traurig Defendants was egregious. *Id. at 12*. Judge Davis found as follows:

> The inference is inescapable that the misguided efforts of Leviton's counsel to resist discovery on inequitable conduct arose in significant part because it was members of that firm that had engaged in such conduct. Under the circumstances, this case played out quite predictably. *Id. at 14 (Emphasis added.)*

82.     **Judgments For Attorneys' Fees and Costs In the Shanghai Meihao**

**Litigation**. Judgment was entered in the Shanghai Meihao Litigation on May 14, 2009 against Leviton for $726,579.15 in attorneys' fees and $84,080.02 in costs, because of the acts and omissions of the Greenberg Traurig Defendants during prosecution of the '766 Patent, and independently, because of their discovery misconduct during the Shanghai Meihao Litigation.

83.     Another judgment was entered in the Shanghai Meihao Litigation on May 15, 2009 against Leviton for an additional $234,499.04 in attorneys' fees and $1,194.94 in costs, for the attorneys' fees and costs incurred in litigating the foregoing sanctions motion.

84.     Leviton's appeal of the Davis Decision and the judgments resulting from it is currently pending. Leviton has posted an appeal bond for the amounts set forth in the May 14 and May 15, 2009 judgments.

85.     Regardless of the outcome of the appeal, the malpractice and breach of fiduciary duty of the Greenberg Traurig Defendants has already caused financial harm to Leviton.

86.     The judicial determination of "inequitable conduct" regarding the prosecution of the application for the '766 Patent has already caused harm to the value of Leviton's GFCI patents, and unless the Davis Decision is reversed on appeal, Leviton will suffer additional financial harm, as described in more detail herein, both in further loss of value of the patents, and attorneys'

fees and expenses for the appeal of the Davis Decision and further proceedings in relation thereto.

87.     Defending against the sanctions motion in the Shanghai Meihao Litigation cost Leviton $357,216.25 in costs and attorneys' fees, and will cost Leviton additional amounts through the appeal of the Davis Decision and the judgments resulting therefrom, and other proceedings relating thereto, including the costs of the appeal bond.

88.     Leviton had to hire new counsel to replace the Greenberg Traurig Defendants as counsel in the Shanghai Meihao Litigation and Leviton incurred $870,792.75 in attorneys' fees for the new firm's work leading to Leviton's dismissal of the Shanghai Meihao Litigation. A substantial portion of this sum was necessitated by the requirement that such counsel replace Greenberg Traurig after that firm had spent several years on the case, to mitigate damage caused by the Greenberg Traurig Defendants.

## G.     Greenberg Traurig's Violation of DR 5-102 and Breach of Fiduciary Duty In the Shanghai Meihao Litigation

89.     As set forth below, the Greenberg Traurig Defendants should never have acted as counsel for Leviton in the Shanghai Meihao Litigation, and they breached their fiduciary duty and committed malpractice, by putting their own interest in earning millions of dollars in legal fees in that litigation, ahead of their fiduciary obligations to their client.

90.     **Applicable Ethics and Fiduciary Obligations**.  Defendants Greenberg Traurig, Sutton, Magidoff, and Narcisse are subject to the New York Code of Professional Responsibility, which was in effect at the times complained of.

91.     It is a breach of professional ethics in violation of a lawyer's fiduciary duty for the lawyer, or his firm, to accept employment or to continue employment in a contemplated or pending litigation if the lawyer or any other lawyer in his law firm may be called as a witness

adverse to the lawyer's or the law firm's client.  DR 5-102(b),[2] DR 5-102(d).[3]

92.     Under DR 5-102(b) and DR 5-102(d) it is not permissible to accept or continue employment if a lawyer's testimony might or may be prejudicial to the client, even if the lawyer's client is fully informed of the law and the facts, and even if the lawyer's client purports to consent after full disclosure.

93.     **Greenberg Traurig's Improperly Acting As Counsel For Leviton in the Shanghai Meihao Litigation**. Each of defendants Greenberg Traurig, Sutton, Magidoff and Narcisse were aware of their own involvement in the conduct that Shanghai Meihao alleged rendered the '766 Patent unenforceable.  Defendants Greenberg Traurig, Sutton, Magidoff and Narcisse should never have commenced the Shanghai Meihao Litigation on Leviton's behalf.

94.     Defendant Greenberg Traurig and defendants Sutton, Magidoff, and Narcisse knew or it was obvious from the outset of the Shanghai Meihao Litigation that either one or all of the individual Greenberg Traurig Defendants, or other lawyers in their firm, were likely to be adverse witnesses to their client Leviton in regards to the patent prosecution of the '766 Patent.

95.     Upon receipt of the detailed allegations in the Shangai Meihao Declaratory Judgment Action which were directed at them by name, defendants Greenberg Traurig, Sutton, Magidoff and Narcisse should have withdrawn from the Shanghai Meihao Litigation. If it was not

---

[2] DR 5-102(b) provides as follows: "Neither a lawyer nor the lawyer's firm shall accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or another lawyer in the lawyer's firm may be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony would or might be prejudicial to the client." *(Emphasis added.)*

[3] DR 5-102(d) provides as follows: "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal." *(Emphasis added.)*

known or obvious to such defendants from the outset of the litigation, then it was known or obvious to such defendants from the time that Shanghai Meihao commenced its declaratory judgment action, containing specific allegations against such lawyers and referring to them by name.

96.     Neither at the time Greenberg Traurig commenced the Shanghai Meihao Litigation, nor at the time that Shanghai Meihao filed its declaratory judgment action based on such defendants' conduct, nor at any time until they were replaced as counsel for Leviton in the Shanghai Meihao Litigation, nor at any time thereafter, did any of defendants Greenberg Traurig, Sutton, Magidoff or Narcisse advise their client Leviton of their obvious conflict of interest, nor of the possibility or certainty that they would be adverse witnesses against their client, nor of their ethical obligation under DR 5-102 to either not accept, or to withdraw from, the representation of their client in the litigation.

97.     The Greenberg Traurig Defendants never informed their client Leviton of the existence of the inequitable conduct defense, or the potential costs and risks associated with the inequitable conduct defense.

98.     The Greenberg Traurig Defendants failed to disclose these things to their client, so that they could continue to earn millions of dollars in fees in representing Leviton in that lawsuit, and so that the virtual monopoly by defendants Sutton and Greenberg Traurig on Leviton's patent litigation business would not be interrupted

99.     By reason of commencing and prosecuting the Shanghai Meihao Litigation on behalf of Leviton, defendant Greenberg Traurig was paid over $3.5 million by Leviton in attorneys' fees and disbursements.

100.    Upon information and belief, defendants Sutton, Magidoff, and Narcisse received higher compensation from defendant Greenberg Traurig by reason of the fees that

Greenberg Traurig obtained from Leviton for the Shanghai Meihao Litigation.

101.   None of such fees or expenses were properly earned, and the Greenberg Traurig Defendants must disgorge the full amount of the fees and expenses they were paid.

102.   Because of defendants Greenberg Traurig, Sutton, Magidoff and Narcisse's conflicted status, plaintiff Leviton was deprived of sound and unbiased advice in the conduct of the Shanghai Meihao Litigation, and in opportunities for the settlement thereof. By breaching their fiduciary duty to their client, the Greenberg Traurig Defendants prevented their client from taking timely action to mitigate its risks and costs.

## H.   Defendants' Malpractice: "On-Sale Bar"
   ### Failure to Timely File Patent Applications

103.   At all times complained of, defendants Sutton and Magidoff were personally responsible for supervising the timely and correct handling of the prosecution of the patent applications described below.

104.   **The One-Year "On-Sale" Bar**. Pursuant to 35 U.S.C. 102(b), in order to obtain a U.S. patent, the applicant must file an application for the patent at least one year before the product in question is offered for sale. This rule is commonly known as "the on-sale bar."[4]

105.   Plaintiff Leviton entrusted certain inventions to defendants Sutton and Magidoff, and later, to defendants Greenberg Traurig, Sutton and Magidoff, to timely apply for patents, where the patent applications were not timely filed within one year of the date the product which utilized such invention was "on sale" in the United States. Defendants Sutton and Magidoff were responsible for supervising the timely and correct filing of these patent applications.

---

[4] 35 U.S.C. 102(b) provides: "A person shall be entitled to a patent unless * * * (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." *(Emphasis added.)*

106.   In all such cases, the defendants were aware, prior to the time they received the assignment from plaintiff Leviton to apply for such patent, that Leviton was applying for the patent because Leviton intended or was likely to offer the product which utilized such invention for sale in the United States as soon as the product could be made ready for sale.

107.   In all such cases, plaintiff Leviton relied upon the defendants to either timely apply for the patent in question, prior to the time that Leviton offered the product for sale, or if the product was on sale before the invention was submitted to the defendants, prior to the on-sale bar date.

108.   **Occupancy Sensor Inventions – 1997**.  On approximately June 18, 1997, Leviton submitted to defendants three disclosures concerning inventions for occupancy sensors. Defendants waited seven years before filing provisional applications with the USPTO.  Subsequent to filing the provisional applications, defendants filed corresponding non-provisional applications. Defendants did not seek the inventor's review and approval of the patent application until after they filed it with the USPTO.

109.   The first provisional application, assigned serial no. 60/591,274, directed to a passive infrared switch, was not filed until July 27, 2004.  The second provisional application, assigned serial no. 60/601,246, directed to a Method for Switching a Latching Relay, was not filed until August 13, 2004.  The third provisional application, assigned serial no. 60/602,478, directed to an Intelligent PIR wall switch, was not filed until August 18, 2004.

110.   By the time these three applications had been filed Leviton had been selling devices with these technologies for several years.  When Leviton finally learned that the applications had been filed late, Leviton was forced to abandon the applications.

111.   **Plug In Counter Tool – 1998**.  On approximately May 15, 1998 Leviton

submitted to defendants a disclosure for a Plug In Counter Tool. At the time the disclosure was submitted to defendants, Leviton informed defendants that the device was on sale.

112.   Despite knowing they had less than one year before the on-sale bar would apply, more than ample time to prepare a patent application, defendants did not seek any patent protection until March 3, 2005, when they filed a provisional patent application, serial no. 60/658,262. Defendants subsequently filed a corresponding non-provisional application on March 3, 2006, serial no. 11/367,651.

113.   By the time these applications had been filed Leviton had been selling devices with this technology for several years. When Leviton finally learned that the applications had been filed late, Leviton was forced to abandon the applications.

114.   **Magnetic Low Voltage Dimmer – 1998**. On approximately October 9, 1998, Leviton submitted to defendants an invention disclosure concerning a magnetic low voltage dimmer. Leviton informed defendants that it intended to develop a product in 1998. A product was in fact developed and first sold in 1999.

115.   Defendants failed to file for any patent protection until March 3, 2005, when defendants filed a provisional application, serial no. 60/658,080. On March 3, 2006, defendants filed a corresponding non-provisional application, serial no. 11/367,985, which ultimately issued on January 27, 2009, as U.S. Patent No. 7,482,758.

116.   By the time these applications had been filed Leviton had been selling devices with this technology for several years. When Leviton finally learned that the applications had been filed late, Leviton was forced to donate the patent to the public.

117.   **Motor Starting Switches**. On approximately October 9, 1998 Leviton submitted to defendants an invention disclosure for motor starting switches. Leviton informed

defendants of its intention to make the invention public by the end of 1998 and in fact first sold a product embodying the invention on October 28, 1999.

118. Defendants did not seek patent protection until January 31, 2005, when they filed a provisional application, serial no. 60/648,793. Defendants subsequently filed a corresponding non-provisional patent application on January 6, 2006, serial no. 11/326,688. The claims prosecuted by defendants are either narrower than the invention so as to avoid the on-sale bar, but consequently do not cover Leviton's invention and products; or alternatively, the claims are invalid as defendants failed to file for patent protection within one year of the invention being on sale. In either case Leviton has lost value as to its patents.

119. **Controller For Wallbox Dimmer – 1999**. On approximately February 18, 1999 Leviton submitted to defendants an invention disclosure for a controller for a wallbox dimmer. Leviton informed defendants of its intention to commercialize the product that year.

120. Defendants did not file an application for a design patent until December 16, 2004. The product was already on sale in 2000. The patent issued as U.S. Patent No. 513,607 on January 17, 2006.

121. When Leviton finally learned that the application had been filed late, Leviton was forced to donate the patent to the public.

122. **Membrane Touch Dimmer – 1999**. On approximately February 18, 1999, Leviton submitted to defendants an invention disclosure for a Membrane Touch Dimmer. Leviton informed defendants of its intention to commercialize the product that year.

123. Defendants did not seek patent protection until March 2, 2005, when they filed a provisional application, serial no. 60/657,906. Defendants filed a corresponding non-provisional application, serial no. 11/363,888 on February 27, 2006. Product incorporating this

invention was on sale at least by 2000.

124.     When Leviton finally learned that the applications had been filed late, Leviton was forced to abandon the applications.

125.     **Programming Template – 1999**.  On approximately October 14, 1999, Leviton submitted to defendants an invention disclosure for a programming template/instructions for wiring device.  Leviton informed defendants of its intention to commercialize the product in January 2000.

126.     Defendants did not seek patent protection until March 3, 2005 when they filed a provisional application serial no. 60/658,263.  Defendants filed a corresponding non-provisional application, serial no. 11/367,934 on March 3, 2006.

127.     When Leviton finally learned that the applications had been filed late, Leviton was forced to abandon the applications.

128.     **Transition to Greenberg Traurig**. None of the aforementioned patents in question were timely applied for at the time that defendants Sutton and Magidoff affiliated with defendant Greenberg Traurig.  Defendant Greenberg Traurig thereafter undertook the responsibility to timely file those patent applications which could still be timely filed, and failed to do so, while charging fees and disbursements for patent prosecutions where the on-sale bar had already run.

129.     Commencing in approximately February 2000, when defendants Sutton and Magidoff affiliated with defendant Greenberg Traurig, defendant Greenberg Traurig was given the assignment to file certain additional patent applications, and those patent applications were not timely applied for.

130.     **Security Lock Switch – 2000**.  On approximately November 10, 2000, Leviton submitted to defendants an invention disclosure for a security lock switch.  Leviton

informed defendants of its intention to commercialize the product that same year. Leviton began selling the device incorporating the invention by the end of 2000.

131.    Defendants did not seek patent protection until March 3, 2005, when they filed a provisional patent application, serial no. 60/658,081. Defendants filed a corresponding non-provisional application, serial no. 11/367,933 on March 3, 2006. The application issued as U.S. Patent No. 7,196,278 on March 27, 2007.

132.    When Leviton finally learned that the patent had not been timely applied for, Leviton was forced to donate the patent to the public.

133.    **Snap in Printed Circuit Board Holder – 2000**.  On approximately November 13, 2000, Leviton submitted to defendants an invention disclosure for a snap in printed circuit board holder. Leviton began selling the product by the end of 2001.

134.    Defendants did not seek patent protection until December 16, 2004, when they filed a provisional application, serial no. 60/637,319. Defendants filed a corresponding non-provisional application, serial no. 11/236,379, on September 27, 2005. The application issued as U.S. Patent No. 7,164,588 on January 16, 2007.

135.    When Leviton finally learned that the patent had not been timely applied for, Leviton was forced to donate the patent to the public.

136.    **Weatherproof Electrical Enclosure – 2001**.  On approximately May 31, 2001, Leviton submitted to defendants an invention disclosure for a weatherproof electrical enclosure. On August 30, 2002, defendant Sutton was requested to update Leviton with the status of the patent filing on this invention and was reminded that commercial sales of certain products containing at least part of the invention had launched on or about May 30, 2002.

137.    Defendants did not seek patent protection until July 28, 2004, when they filed

a provisional application, serial no. 60/591,896. Defendants filed a corresponding non-provisional application, serial no. 11/182,368 on July 15, 2005.

138.    When Leviton finally learned that defendants were attempting to patent claims that were barred by the on-sale bar, Leviton attempted to mitigate by instructing defendants to narrow the claims to cover only those embodiments that had not been on sale, but Leviton eventually had to abandon the patent application.

139.    **Indexing Mechanism – 2001**. On approximately December 6, 2001, Leviton submitted to defendants an invention disclosure for an indexing mechanism. Leviton informed defendants of its intention to commercialize the product in or about May 2002. Leviton first sold the product on January 20, 2003.

140.    Defendants did not seek patent protection until March 17, 2004, when they filed a provisional application, serial no. 60/553,834. Defendants filed a corresponding non-provisional application, serial no. 11/078,078, on March 11, 2005. The application issued as U.S. Patent No. 7,375,298 on May 20, 2008.

141.    On March 16, 2005, the Greenberg Traurig Defendants filed a corresponding international patent application, from which national patent applications in Canada, Colombia, Costa Rica and Mexico were eventually filed.

142.    When Leviton finally learned that the U.S. patent had not been timely applied for, Leviton was forced to donate the U.S. patent to the public and withdraw the remaining foreign patent applications.

143.    **High Current Surge Panel with Diagnostics – 2002**. On approximately November 5, 2002, Leviton submitted to defendants an invention disclosure for a High Current Surge Panel with Diagnostics. Leviton informed defendants that the product had been made public

on March 1, 2002.

144.    Defendants did not seek patent protection until March 3, 2005, when they filed a provisional application, serial no. 60/658,069. Defendants filed a corresponding non-provisional application on March 2, 2006, serial no. 11/367,165.

145.    When Leviton finally learned that the patent had not been timely applied for, Leviton withdrew the patent application.

146.    **Additional Inventions Barred By the On-Sale Bar**. On information and belief, in addition to the inventions described above, there are additional inventions for which defendants did not timely apply for patents, and as to which patent protection is subject to the on sale bar of 35 U.S.C. 102(b). Leviton is continuing to research its patent records, and defendant Greenberg Traurig still has possession of hundreds of files of patent applications whose contents are not currently available to Leviton. Leviton reserves the right to supplement its Complaint herein as it discovers additional instances of untimely patent applications.

147.    **Summary**. Leviton lost valuable patent rights to the inventions described above, because defendants Greenberg Traurig, Sutton and Magidoff filed to timely file the patent applications.

148.    Defendants committed legal malpractice in failing to timely file the foregoing patent applications for matters that had been entrusted to them. The time requirements were well-known, and were established by federal statute. Failure to comply with established law concerning timely filing of patent applications is malpractice *per se*.

149.    Defendants' legal malpractice caused plaintiff Leviton harm in paying excessive and unjustified legal fees for the patent prosecutions, government filing fees, draftsmen fees, and other related costs and expenses.

150.     Each of the patent applications referred to above concerned a valuable commercial invention, and the loss of patent protection for each because of defendants' legal malpractice deprived Leviton of a valuable property right, either to prevent infringers from selling competing products, or to obtain license fees by licensing the technology to other manufacturers.

## I.     Breach Of Fiduciary Duty And Malpractice By Defendants In Multiplying Fees in Prosecuting the Wiring Devices Patents

151.     As set forth below, defendants Greenberg Traurig and Sutton breached accepted standards of practice and their fiduciary duty to their clients, by requiring multiple patent filings through their negligent or willful failure to prepare and review the patent applications, and negligently or willfully failing to file correct and fully supported applications, thus greatly multiplying the fees that they could charge to Leviton.

152.     **Initial Entrustment of The Patent Prosecution – 2000**. On approximately June 14, 2000, Leviton submitted to defendants Sutton and Greenberg Traurig an invention disclosure concerning a unique line of wiring devices that encompassed many novel features, including a new complex contour to the surface of the device and surrounding wallplates, unique surface contours to a receptacle, a switch rocker and a switch/dimmer rocker, a mounting system, alignment plate, multi-function clip, locator light, and a number of electro-mechanical mechanisms for the operation of some of the devices.

153.     From June 2000 until about the end of August 2001, Leviton continued to provide defendants with additional clarifications, drawings and prototypes to assist defendants in understanding the various unique features of this line of products. In addition, defendant Sutton met with Leviton personnel on more than one occasion concerning seeking patent protection for this line of products.

154.     It was not until June 6, 2002, that defendants filed six different patent

applications for the purpose of claiming various innovations in the line of products.

155.    **Duplication of Effort – 2002**. Defendants did not seek the inventors' review of the six patent application until after the applications were filed. Upon review of the six filed applications, the inventors recognized that defendants had omitted information from the applications.

156.    Defendants then proceeded to file an additional six patent applications on September 6, 2002, each one claiming to be a continuation-in-part of a corresponding one of the original set filed the previous June. Defendants abandoned the original set of six patent applications.

157.    Again, defendants did not seek the inventors' review of the applications until after the applications were filed. Defendant requested the inventor's review on or about October 8, 2002. Again, the applications required revisions from the inventors.

158.    On June 6, 2003, defendants filed six international patent applications, each corresponding to one of the prior six applications and purportedly adding further information.

159.    **Duplication of Effort – 2004**. On May 25, 2004, defendants filed another set of six applications. This time each of the six claimed to be a continuation-in part of only one of the six applications filed in September 2002. Defendants abandoned the September 2002 set of six patent applications.

160.    Despite having supposedly finally filed a correct set of applications, defendants proceeded on December 3, 2004 to file six patent applications claiming priority to each of the six international applications filed in June 2003. Realizing this latest set of six patent applications were useless in light of the filings the previous May, defendants allowed these six applications to go abandoned.

161.    **Summary**. By the foregoing multiplication of patent applications, defendants

Greenberg Traurig and Sutton magnified the fees they could obtain from a client which trusted them, when a patent prosecutor of ordinary skill could have filed a single set of applications, in a reasonable time after the patent prosecution was entrusted to him. By so doing, defendants Greenberg Traurig and Sutton obtained hundreds of thousands of dollars of fees to which they were not entitled.

**J.     Defending Patent Reexamination Proceeding Without Informing Leviton**

162.    The USPTO granted U.S. Patent No. 5,886,423 (the '423 Patent) to Leviton for an electric series circuit.

163.    In 2002, a third party commenced a reexamination proceeding regarding the '423 Patent.

164.    Defendant Sutton on behalf of defendant Greenberg Traurig responded to the reexamination proceeding, and represented Leviton, without informing Leviton that he was doing so.

165.    During the reexamination proceeding, a number of the patent claims were allowed by defendants Sutton and Greenberg Traurig to be cancelled, without informing Leviton.

166.    The files for the '423 Patent were turned over to Leviton only in July 2009, and they contain no evidence that Leviton was informed. Despite inquiry from Leviton to Greenberg Traurig, Greenberg Traurig has been unable to identify any person or communication to Leviton informing it of the existence or results of the reexamination proceeding.

167.    Defendant Greenberg Traurig charged legal fees and disbursements to Leviton to conduct the reexamination proceeding. Because the invoices to Leviton during the applicable time period did not identify this matter with specificity, Leviton is presently unable to state the precise amount of such fees.

168.    Defendant Greenberg Traurig engaged in this work without the authority of its client Leviton, and is not entitled to retain the fees and disbursements which it collected.

169.    Defendants Greenberg Traurig and Sutton were not authorized by Leviton to allow claims for the '423 Patent to be cancelled. Leviton has been harmed by the loss of valuable patent claims, which would not have been lost if Leviton was properly informed.

**First Cause of Action** - Greenberg Traurig Defendants
*Breach of Fiduciary Duty/Malpractice – Legal Fees For Shanghai Meihao Litigation*

170.    All prior allegations are incorporated herein.

171.    The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty to their client Leviton: (a) by commencing the Shanghai Meihao Litigation on Leviton's behalf, when they knew or it was obvious that they may be called as witnesses other than on behalf of the client, and that their testimony would or might be prejudicial to the client on one or more significant issues, in violation of DR 5-102(b) and well-established case law; and (b) by failing to immediately withdraw from the Shanghai Meihao Litigation, after Shanghai Meihao served its Answer and commenced the Shangai Meihao Declaratory Judgment Action, when they knew or it was obvious that they may be called as witnesses other than on behalf of the client, and their testimony would or might be prejudicial to the client on one or more significant issues, in violation of DR 5-102(d) and well-established case law.

172.    The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty to their client Leviton, by failing to advise their client of their professional and ethical duty not to accept employment in the Shanghai Meihao Litigation or to withdraw from the representation.

173.    The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty to their client Leviton, by failing to advise their client of the existence and risks

of the "inequitable conduct" defense raised in the Shanghai Meihao Litigation, and of the Greenberg Traurig Defendants' acts and omissions that gave rise to the "inequitable conduct" defense.

174.    The Greenberg Traurig Defendants were disloyal to their long-time client Leviton, and put their own interest in earning fees in a case where they were barred from appearing as counsel under the Code of Professional Responsibility and case law, ahead of their fiduciary and ethical obligations to their client, and to the court before whom the case was pending. Further, the Greenberg Traurig Defendants put their own interest in preserving their virtual monopoly on representation of Leviton in patent matters, and preventing other patent counsel from appearing for Leviton and competing against the Greenberg Traurig Defendants for Leviton's legal business, where the Greenberg Traurig Defendants had earned tens of millions of dollars from representing Leviton in patent matters, and where the Greenberg Traurig Defendants hoped to continue to earn tens of millions of dollars from representing Leviton in patent matters.

175.    By reason of their legal malpractice, breach of fiduciary duty, and disloyalty to plaintiff, the Greenberg Traurig Defendants must disgorge all the fees and disbursements they were paid by plaintiff during the period of their disloyalty, which commenced from their representation of plaintiff in preparation for and during the Shanghai Meihao Litigation.

176.    The Gauvey and Davis Decisions, and the Judgments resulting therefrom, are res judicata or collateral estoppel against the Greenberg Traurig Defendants, until and unless such Decisions and Judgments are reversed on appeal.

177.    By reason of the foregoing, and all the pertinent facts alleged herein, the Greenberg Traurig Defendants liable to plaintiff to disgorge any and all fees, expenses, and other moneys received for such litigation, in an amount not less than $3,500,000.

178.    The Greenberg Traurig Defendants are further liable to plaintiff for the fees

and expenses of new counsel retained by plaintiff to represent it in the Shanghai Meihao Litigation, in the amount occasioned by such counsel having to expend time and effort to develop knowledge of the case, and to mitigate the damage caused by the Greenberg Traurig Defendants' improper appearance as counsel in the case and failure to immediately withdraw from the case, and all other damages related thereto, in an amount not less than $1,500,000.

### Second Cause of Action - Greenberg Traurig Defendants
*Breach of Fiduciary Duty/Malpractice – Damages In Shanghai Meihao Litigation*

179.   All prior allegations are incorporated herein.

180.   The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty to their client Leviton, by acting as counsel in a case where they were conflicted by their own misconduct, both in the prosecution of the '766 Patent, and in their misconduct committed during the litigation. By reason of defendants' malpractice and breach of fiduciary duty, plaintiff was deprived of unconflicted legal advice, and suffered the damages set forth below, where if plaintiff had unconflicted counsel, such damages could have been mitigated or avoided.

181.   The Gauvey and Davis Decisions, and the Judgments resulting therefrom, are res judicata or collateral estoppel against the Greenberg Traurig Defendants, until and unless such Decisions and Judgments are reversed on appeal.

182.   By reason of the foregoing, and all the pertinent facts alleged herein, the Greenberg Traurig Defendants are liable to plaintiff for all damages to plaintiff arising from or related to the Shanghai Meihao Litigation, including: (a) the loss of the value of the patents referred to herein, (b) the damages assessed against plaintiff in the Gauvey and Davis Decisions and the judgments resulting therefrom, (c) the attorneys' fees and expenses incurred by plaintiff in defending the motion by Shanghai Meihao that resulted in the Gauvey and Davis Decisions, (d) the attorneys' fees and expenses incurred and to be incurred by plaintiff for all appeals and further

proceedings related thereto, (e) the cost of the appeal bond posted by plaintiff in the appeal of the Davis Decision and the resulting judgments, (f) the legal fees and expenses paid to the Greenberg Traurig Defendants in the Shanghai Meihao Litigation, (g) the legal fees and expenses of new counsel retained by plaintiff to represent it in the Shanghai Meihao Litigation, and (h) the amounts or value that plaintiff could have received in settlement of the Shanghai Meihao Litigation, if plaintiff had the advice of litigation counsel that was unconflicted by being potential adverse witness against their client and unconflicted by litigation counsel's interest in protecting themselves ahead of their client; in an amount not less than $100 million.

### Third Cause of Action – Greenberg Traurig Defendants
#### *Breach of Fiduciary Duty/Malpractice – Sanctions in Shanghai Meihao Litigation*

183.   All prior allegations are incorporated herein.

184.   The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty by committing the discovery misconduct determined by the Gauvey and Davis Decisions to have been committed by them in the Shanghai Meihao Litigation.

185.   The Gauvey and Davis Decisions, and the Judgments resulting therefrom, are res judicata or collateral estoppel against the Greenberg Traurig Defendants, until and unless such Decisions and Judgments are reversed on appeal.

186.   By reason of the foregoing, and all the pertinent facts alleged herein, the Greenberg Traurig Defendants are liable to plaintiff for all damages to plaintiff from: (a) the damages assessed against Leviton in the Gauvey and Davis Decisions and the judgments resulting therefrom, (b) the attorneys' fees and disbursements incurred by Leviton in defending the motion by Shanghai Meihao that resulted in the Gauvey and Davis Decisions, (c) the attorneys' fees and expenses incurred and to be incurred by plaintiff for all appeals and further proceedings related thereto, and (d) the cost of the appeal bond posted by plaintiff in the appeal of the Davis Decision

and the resulting judgments; in an amount not less than $4 million.

**Fourth Cause of Action** – Greenberg Traurig Defendants
*Breach of Fiduciary Duty/Malpractice – '766 Patent Prosecution*

187.   All prior allegations are incorporated herein.

188.   The Greenberg Traurig Defendants committed legal malpractice and breached their fiduciary duty to their client Leviton, by committing the acts of legal malpractice, breaches of accepted standards of patent prosecution practice, and failure to act in accordance with well established case law and statutory law and regulations, described in the Gauvey and Davis Decisions.

189.   The Gauvey and Davis Decisions, and the Judgments resulting therefrom, are res judicata or collateral estoppel against the Greenberg Traurig Defendants, until and unless such Decisions and Judgments are reversed on appeal.

190.   By reason of the foregoing, and all the pertinent facts alleged herein, the Greenberg Traurig Defendants are liable to plaintiff for all damages to plaintiff arising from or related to such legal malpractice and breach of fiduciary duty, including: (a) the loss of the value of the patents referred to herein, (b) the damages assessed against plaintiff in the Gauvey and Davis Decisions and the judgments resulting therefrom, (c) the attorneys' fees and expenses incurred by plaintiff in defending the motion by Shanghai Meihao that resulted in the Gauvey and Davis Decisions, (d) the attorneys' fees and expenses incurred and to be incurred by plaintiff for all appeals and further proceedings related thereto, (e) the cost of the appeal bond posted by plaintiff in the appeal of the Davis Decision and the resulting judgments, (f) the legal fees and expenses paid to the Greenberg Traurig Defendants in the Shanghai Meihao Litigation, (g) the legal fees and expenses of new counsel retained by plaintiff to represent it in the Shanghai Meihao Litigation, and (h) the amounts or value that plaintiff could have received in settlement of the Shanghai Meihao

Litigation, or which plaintiff could have recovered through judgment therein, if the patents had been prosecuted in accordance with accepted standards of patent prosecution and in accordance with well established case law and statutory law and regulations; in an amount not less than $100 million.

### Fifth Cause of Action – Greenberg Traurig, Sutton
*Breach of Fiduciary Duty/Malpractice –*
*Failure To Prosecute Correct and Complete GFCI Patent Claims*

191.  All prior allegations are incorporated herein

192.  Defendants Greenberg Traurig and Sutton committed legal malpractice, breached accepted standards of patent prosecution practice, and failed to follow well-established case law and statutory law and regulations, by failing to timely prosecute correct and complete claims for plaintiff's "isolated conductors" invention, and by failing to timely obtain correct and complete patent protection for such invention. If complete and correct patent claims had been timely prosecuted, complete and correct patents would have been issued by the USPTO.

193.  By reason of the foregoing, and all the pertinent facts alleged herein, defendants Greenberg Traurig and Sutton are liable to plaintiff to disgorge the fees which they received from plaintiff for the multiple patent prosecutions over a period of many years necessitated by such defendants' failure to timely prosecute correct and complete patent claims, in an amount not less than $2 million.

194.  By reason of the foregoing, and all the pertinent facts alleged herein, defendants Greenberg Traurig and Sutton are further liable to plaintiff for the attorneys' fees and expenses, in an amount not less than $30 million, incurred by plaintiff in litigations to enforce the GFCI patents, where plaintiff's rights were diminished because of the defendants' failure to timely file correct and complete patent claims.

195.  By reason of the foregoing, and all the pertinent facts alleged herein,

defendants Greenberg Traurig and Sutton are further liable to plaintiff, in an amount not less than $50 million, for the judgments that could have been obtained, or the settlements that could have been achieved, with infringers of plaintiff's GFCI inventions, and the lost business to plaintiff by reason of such infringers' ability to continue infringing due to incorrect and incomplete patents, and the license fees that could have been obtained if complete and correct patent claims had been timely prosecuted.

### Sixth Cause of Action – Greenberg Traurig, Sutton and Magidoff
#### *Breach of Fiduciary Duty/Malpractice - On-Sale Bar*

196.    All prior allegations are incorporated herein.

197.    Defendants Greenberg Traurig, Sutton, and Magidoff committed legal malpractice and breached their fiduciary duty to their client, breached accepted standards of patent prosecution practice, and acted in contravention of well-established case law and statutory law and regulation, by failing to timely apply for the patents for the inventions described herein, and thereby causing plaintiff to lose the patent protection to which such inventions were entitled, by reason of the statutory "on-sale bar" described herein, 35 U.S.C. 102(b).  If such patents had been timely applied for, plaintiff would have received patent protection for such inventions, and/or such patent protection would not have been lost due to the "on-sale bar."

198.    Defendants Greenberg Traurig, Sutton and Magidoff were paid fees and expenses by plaintiff for prosecution of patent applications, where patent protection was already barred by the "on-sale bar" at the time the fees and expenses were incurred.

199.    By reason of the foregoing, and all the pertinent facts alleged herein, defendant Greenberg Traurig, Sutton, and Magidoff must disgorge the fees and expenses they were paid by plaintiff for the prosecutions of such patents, and are liable to plaintiff for all damages to plaintiff arising from or related to the loss of patent protection for such patents, in an amount not less

than $10 million.

**Seventh Cause of Action** – Greenberg Traurig, Sutton
*Breach of Fiduciary Duty/Malpractice - Multiplication of Patent Applications*

200.   All prior allegations are incorporated herein.

201.   Defendants Greenberg Traurig and Sutton committed legal malpractice and breached their fiduciary duty to their client, and breached accepted standards of patent prosecution practice, by requiring multiple patent filings for the wiring devices described herein.

202.   Defendants Greenberg Traurig, Sutton and Magidoff were paid fees and expenses by plaintiff for patent prosecutions that were unnecessary if accepted standards of patent prosecution practice had been followed.

203.   By reason of the foregoing, and all the pertinent facts alleged herein, defendant Greenberg Traurig and Sutton must disgorge the fees and expenses they were paid by plaintiff for the prosecution of such patent applications, in an amount not less than $500,000.

**Eighth Cause of Action** – Greenberg Traurig, Sutton
*Breach of Fiduciary Duty/Malpractice - '423 Patent Reexamination*

204.   All prior allegations are incorporated herein.

205.   Defendants Greenberg Traurig and Sutton committed malpractice and breached their fiduciary duty to plaintiff, by failing to inform plaintiff of the existence of the reexamination proceeding for the '423 Patent, and by conducting the reexamination proceeding without authority from Leviton.

206.   Defendants Greenberg Traurig and Sutton committed malpractice and breached their fiduciary duty to plaintiff, by allowing valuable patent claims to be cancelled in such reexamination proceeding. If defendants Greenberg Traurig and Sutton had followed accepted standards of patent prosecution practice, such valuable patent claims would not have been cancelled.

207. Defendants Greenberg Traurig and Sutton were paid fees and expenses by plaintiff for representing plaintiff in a patent proceeding which plaintiff had not authorized defendants to engage in.

208. By reason of the foregoing, and all the pertinent facts alleged herein, defendants Greenberg Traurig and Sutton must disgorge the fees and disbursements they were paid by plaintiff for such reexamination proceeding, in an amount not less than $50,000.

209. By reason of the foregoing, and all the pertinent facts alleged herein, defendants Greenberg Traurig and Sutton are liable to plaintiff for the loss of the valuable patent claims in such proceeding, in an amount not less than $100,000.

WHEREFORE, plaintiff LEVITON MANUFACTURING CO., INC hereby demands judgment against defendants as follows:

A. On the First Cause of Action, against defendants Greenberg Traurig, Sutton, Magidoff and Narcisse, in an amount not less than $5 million.

B. On the Second Cause of Action, against defendants Greenberg Traurig, Sutton, Magidoff and Narcisse, in an amount not less than $100 million.

C. On the Third Cause of Action, against defendants Greenberg Traurig, Sutton, Magidoff and Narcisse, in an amount not less than $4 million.

D. On the Fourth Cause of Action, against defendants Greenberg Traurig, Sutton, Magidoff and Narcisse, in an amount not less than $100 million.

E. On the Fifth Cause of Action, against defendants Greenberg Traurig and Sutton, in an amount not less than $82 million.

F. On the Sixth Cause of Action, against defendants Greenberg Traurig, Sutton and Magidoff, in an amount not less than $10 million.

G.    On the Seventh Cause of Action, against defendants Greenberg Traurig, and

Sutton, in an amount not less than five hundred thousand dollars.

H.    On the Eighth Cause of Action, against defendants Greenberg Traurig and

Sutton, in an amount not less than one hundred fifty thousand dollars.

I.    And for such other and further relief as the Court deems proper, including

costs and attorneys' fees, and statutory interest.

Dated: September 22, 2009

JEFFREY A. JANNUZZO, ESQ.
*Attorney for plaintiff Leviton Mfg. Co., Inc.*

By: _____
    (Jeffrey A. Jannuzzo)(JJ 8203)

10 East 40th Street, 35th Floor
New York, NY 10016-0301
(212) 932-8524

Complaint-2009-9-22-final.wpd