**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————

**LEVITON MANUFACTURING CO., INC.,**

                **Plaintiff,**

      **– against –**                    **Civil Action No. 09-cv-08083-GBD**

**GREENBERG TRAURIG LLP, PAUL J.**
**SUTTON, BARRY G. MAGIDOFF and**
**CLAUDE R. NARCISSE,**

                **Defendants.**

—————————————————————————

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**COMPLAINT OR, IN THE ALTERNATIVE, FOR A STAY**

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

    A.    Plaintiff Leviton .................................................................................................... 3

    B.    Defendants' Background and Experience............................................................... 3

    C.    Defendants' Representation of Leviton ................................................................. 4

    D.    The Shanghai Meihao Litigation .......................................................................... 5

    E.    The Instant Litigation............................................................................................ 6

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ........................................................................................................................... 8

I.    LEVITON'S PATENT PROSECUTION CLAIMS ARE UNTIMELY............................ 8

    A.    The Alleged Malpractice Occurred Outside the Statute of Limitations. ............... 9

        1.    Leviton's Allegations of Failures to Prosecute "Correct and Complete" Patent Applications Are Not Timely. ....................................... 9

        2.    Leviton's Allegations of Malpractice in the "'766 Patent" Application Are Not Timely. ................................................................... 11

        3.    Leviton's "On-Sale Bar" Claims Are Not Timely. .................................. 13

        4.    Leviton's Allegations Regarding a Re-Examination Are Not Timely. .................................................................................................... 15

    B.    The "Continuous Representation" Doctrine Does Not Save Plaintiff's Claims. ................................................................................................................ 16

    C.    Leviton's Claims for "Breach of Fiduciary Duty" Are Barred By the Same Statute of Limitations. ............................................................................. 18

i

II.     LEVITON IMPROPERLY PLEADS ITS PATENT PROSECUTION
        CLAIMS AGAINST ALL DEFENDANTS. .................................................................... 19

III.    LEVITON'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE NOT
        RIPE. ........................................................................................................................... 20

        A.     Leviton Has Yet to Sustain Any Damages, and May Never Sustain
               Damages At All. .................................................................................................. 20

        B.     Leviton's Allegations Should Be Dismissed as Premature. .................................. 22

IV.     ALTERNATIVELY, THIS COURT SHOULD STAY THE LITIGATION
        PENDING RESOLUTION OF LEVITON'S APPEAL. .................................................. 24

CONCLUSION ............................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Page

*Abbasi v. Herzfeld & Rubin*,
863 F. Supp. 144 (S.D.N.Y. 1994)......................................................................7

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)......................................................................................7

*Bastys v. Rothschild*,
No. 97-cv-5154, 2000 WL. 1810107 (S.D.N.Y. Nov. 21, 2000)......................................13

*Carruthers v. Flaum*,
388 F. Supp. 2d 360 (S.D.N.Y. 2005)..............................................................19

*Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*,
261 F. Supp. 2d 293 (S.D.N.Y. 2003)................................................................8

*Fezzani v. Bear, Stearns & Co., Inc.*,
384 F. Supp. 2d 618 (S.D.N.Y. 2004).............................................................16

*Francis v. Blaikie Group*,
372 F. Supp. 2d 741 (S.D.N.Y. 2005).............................................................16

*Ghartey v. St. John's Queens Hospital*,
869 F.2d 160 (2d Cir. 1989).....................................................................7, 16

*Hoffenberg v. Hoffman & Pollok*,
248 F. Supp. 2d 303 (S.D.N.Y. 2003)................................................................8

*Kramer v. Time Warner Inc.*,
937 F.2d 767 (2d Cir. 1991)..................................................................3, 6, 21

*LNC Investments, Inc. v. First Fidelity Bank, N.A.*,
935 F. Supp. 1333 (S.D.N.Y. 1996)................................................................8

*LaSala v. Needham & Co., Inc.*,
399 F. Supp. 2d 421 (S.D.N.Y 2005).............................................................24

*Landis v. North America Co.*,
299 U.S. 248 (1936)..............................................................................24

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir. 1996) ..............................................................................7

*Mason Tenders District Council Pension Fund v. Messera,*
    958 F. Supp. 869 (S.D.N.Y. 1997)..........................................................9, 18

*Nechis v. Oxford Health Plans, Inc.,*
    421 F.3d 96 (2d Cir. 2005)............................................................................6

*S&R Development Estates, LLC v. Bass,*
    588 F. Supp. 2d 452 (S.D.N.Y. 2008) ........................................................8

*In re Seagate Technology, LLC,*
    497 F.3d 1360 (Fed. Cir. 2007).................................................................12

*Sun-Studs, Inc. v. Applied Theory Assoc., Inc.,*
    772 F.2d 1557, 1568 (Fed. Cir. 1985) .................................................13, 17

*The Diversified Group, Inc. v. Daugerdas,*
    139 F. Supp. 2d 445 (S.D.N.Y. 2001).........................................................8

*Uehigashi v. Kanamori,*
    161 F. Supp. 2d 221 (S.D.N.Y. 2001).................................................13, 19

## STATE CASES

*Estate of Steinberg v. Harmon,*
    259 A.D.2d 318 (N.Y. App. Div. 1st Dep't 1999)..........................................23

*Glamm v. Allen,*
    57 N.Y.2d 87 (N.Y. 1982) .............................................................................8

*Igen, Inc. v. White,*
    250 A.D.2d 463 (N.Y. App. Div. 1st Dep't 1998)....................................23, 24

*Lopes v. Mangiatordi, Maher & Lemmo, LLC,*
    6 Misc.3d 1004 (2004 WL. 3058150) (N.Y. Sup. Ct. 2004) ...........................23

*Luniewski v. Zeitlin,*
    188 A.D.2d 642 (N.Y. App. Div. 2d Dep't 1992) ..........................................22

*McCoy v. Feinman*,
    99 N.Y.2d 295 (N.Y. 2002) ........................................................................13, 22

*Shumsky v. Eisenstein*,
    96 N.Y.2d 164 (N.Y. 2001) ............................................8, 9, 10, 12, 14, 18

*Wei Cheng Chang v. Pi*,
    288 A.D.2d 378 (N.Y. App. Div. 2d Dep't 2001) ..........................................20

*Williams v. Lindenberg*,
    24 A.D.3d 434, 434 (N.Y. App. Div. 2d Dep't 2005) ....................................14

*Williamson v. Pricewaterhouse Coopers*,
    9 N.Y.3d 1, 10-11 (N.Y. 2007) ......................................................................18

*Zaref v. Berk & Michaels*,
    192 A.D.2d 346 (N.Y. App. Div. 1st Dep't 1993)......................9, 13, 16, 17, 18

## OTHER AUTHORITIES

C.P.L.R. § 214[6] ...........................................................................................1, 8

37 C.F.R. § 1.32 ................................................................................................17

37 C.F.R. § 10.7 ................................................................................................12

35 U.S.C. § 102(b) ............................................................................................13

## INTRODUCTION

This legal malpractice action filed by Plaintiff Leviton Manufacturing Co., Inc. ("Plaintiff" or "Leviton") against its former attorneys at Greenberg Traurig LLP ("Greenberg"), is untimely, and should be dismissed. Plaintiff's central allegation is that the individual defendants Paul J. Sutton ("Sutton"), Barry G. Magidoff ("Magidoff"), and Claude R. Narcisse ("Narcisse") (collectively, "Defendants"), both while at Greenberg and while at Sutton's and Magidoff's prior firm, acted negligently in prosecuting and/or failing to timely file and prosecute certain patent applications, and further, committed misconduct during litigation against an alleged patent infringer. However, as the Complaint makes clear:

(1)  The alleged acts of malpractice in patent prosecution (*i.e.*, Counts Four through Eight) are supposed to have occurred between 1997 and Spring 2006, and therefore fall outside New York's three-year statute of limitations for legal malpractice actions. *See* C.P.L.R. § 214[6]. Indeed, inasmuch as many of the alleged acts or omissions occurred before February 2000, they do not even allege conduct by Greenberg or Narcisse. While Leviton attempts to invoke the "continuous representation rule" to toll the statute of limitations, *see* Compl. ¶¶ 21-33, its allegations fail to establish anything more than a continuing general representation, which is insufficient as a matter of law to save Leviton's claims; and

(2)  Leviton's allegations of malpractice in the prosecution of a lawsuit (*i.e.*, Counts One through Three), are premature because the alleged wrongdoing has not yet resulted in damages, if it ever will. In its appeal of that litigation, currently pending before the U.S. Court of Appeals for the Federal Circuit, Leviton disputes the very "facts" it now alleges against Greenberg. *See* Compl. ¶¶ 76, 84; *see also*

*infra* Part III.A.  Pending the outcome of that appeal, Leviton has paid none of the assessed fees and costs it seeks to recover from Greenberg, and has suffered no impairment of the underlying patent.  The theoretical possibility that Leviton will be injured at some indeterminate point in the future is not a legally sufficient basis on which to bring a claim of malpractice, and its claims should therefore be dismissed.

Should it become necessary to defend the case on the merits, Defendants intend to demonstrate that they provided Leviton with excellent legal representation, from which it has profited greatly and continues to profit today.  Leviton's allegations of litigation malpractice and misconduct in patent prosecution are the contrivances of a new management team that assumed control of the company in 2007 following the passing of its Chairman and CEO, *cf.* Compl. ¶ 18, fired Greenberg in favor of other attorneys, and began making allegations of wrongdoing in matters that had long since been completed to the prior management's satisfaction.  Indeed, *even as it pursues these claims against Defendants*, Leviton is concurrently arguing in the United States Court of Appeals for the Federal Circuit that Defendants: "took appropriate action" before the patent office; "[a]t most . . . [committed] a minor technical mistake with no practical effect"; "could not have intended to deceive the [patent office]"; and acted in a "legitimate effort to avoid waiving its attorneys' work product."  *See infra,* Part III.A.  Defendants fully agree that there was no misconduct, and have every intention of defending themselves against allegations to the contrary.

Statutes of limitations are designed to prevent the types of claims asserted in Counts Four through Eight.  Leviton filed its lawsuit on September 22, 2009.  Certain of its claims expired as long ago as 2002, and the latest to expire did so in March 2009, six months before Leviton filed its Complaint.  Defendants should have no obligation to incur the burden and expense of

litigating claims that are untimely.  Nor should they have the obligation to defend claims premised on contingent future events (Counts One through Three) that may never even occur, and therefore are not yet ripe for filing.  Defendants accordingly request that the Court dismiss the patent prosecution claims *with* prejudice on the ground that they are barred by the statute of limitations, and dismiss the litigation malpractice claims *without* prejudice on the ground that they are not yet ripe.

Alternatively, if the latter claims are not dismissed, Defendants respectfully request that the Court stay those claims pending the outcome of Leviton's appeal to the Federal Circuit.

## BACKGROUND

The following factual recitation is drawn from the allegations of plaintiff's complaint and, where appropriate, matters of public record of which this Court can take judicial notice.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

### A.    Plaintiff Leviton

Leviton is the largest North American manufacturer of electrical and electronic wiring devices.  Compl. ¶ 18.  Leviton holds over 800 patents and is a frequent patent litigant.  *Id.* ¶¶ 19, 22.  It is a "third generation family-owned business" and was founded in 1906 by Isidor Leviton. *Id.*  His son, Harold Leviton, was the CEO and Chairman of Leviton from 1965 until his passing in 2007.  *Id.*

### B.    Defendants' Background and Experience

Defendant Paul Sutton has over four decades of law firm and corporate experience in intellectual property law.  Mr. Sutton graduated from New York University with a B.M.E. in Mechanical and Electrical Engineering in 1962, and pursued graduate studies in Industrial Engineering from Columbia University and Welding Metallurgy from UCLA.  *available at* http://suttonmagidoff.com  (last visited Nov. 25, 2009).  Mr. Sutton began his career as a

member of a team of design engineers in Douglas Aircraft's Missiles & Space Systems Division, and was involved in the design of the Apollo Saturn third stage booster rocket structure that carried the first U.S. Astronauts to the Moon.  *Id.*[1]

Defendant Barry Magidoff has provided intellectual property counseling to clients ranging from individual inventors to large public corporations for almost 50 years.  *Id.*  Mr. Magidoff has extensive experience practicing in state and federal courts and the U.S. Patent and Trademark Office ("USPTO") and has technical expertise in chemistry, metallurgy, mining, polymers, and mechanical and chemical engineering.  *Id.*

Defendant Claude Narcisse has nearly twenty years of experience in intellectual property law.  In addition to his J.D., Mr. Narcisse has a BS and a Master's in Electrical Engineering from Columbia University and a Master's in Computer Science from Polytechnic University.

Greenberg is an international law and lobbying firm with more than thirty offices worldwide.  Greenberg employed Defendant Sutton from February 2000 through February 2009, Defendant Magidoff from February 2000 through January 2009, and Defendant Narcisse from October 2001 through June 2008.

## C. Defendants' Representation of Leviton

Mr. Sutton represented Leviton in several intellectual property matters for approximately 37 years, from 1971 to 2008.  Compl. ¶ 21.  As a result of those representations, Leviton "currently holds over 800 patents worldwide and its brands and products are known around the world."  *Id.* at ¶ 19.  Leviton's patent portfolio has been highly ranked by numerous trade

---

[1] Mr. Sutton serves as an Adjunct Professor of Law at Polytechnic Institute of New York University, where he teaches courses in Intellectual Property Strategies for Engineers & Scientists and Intersections of Law, Engineering & Business.  He also serves as a member of the Industry Advisory Board of NYU-Poly.  Mr. Sutton is a member of the Editorial Panel of World Intellectual Property Review and has lectured before the judiciary and legislators of the People's Republic of China to harmonize Chinese and U.S. intellectual property laws.

publications for many years; its website indicates that the company was recently "ranked #1 by the Patent Board [of the Wall Street Journal] for the impact the company's patents have had on the [electrical and electronic wiring devices] industry."[2]  Mr. Sutton, Mr. Magidoff, and Mr. Narcisse were involved with creating and protecting many of the patents in that portfolio.

For nearly four decades, Mr. Sutton helped Leviton procure hundreds of patents for Leviton's patent portfolio, *id.* ¶ 19, helping make it "one of the foremost giants in the electrical industry."[3]  Mr. Sutton protected intellectual property rights of a myriad of Leviton's 25,000-plus electrical wiring device products by prosecuting or defending successfully dozens of lawsuits on Leviton's behalf.  Compl. ¶ 24.

### D.     The Shanghai Meihao Litigation

In 2005, Leviton sued Universal Security Instruments, Inc. ("USI") and Shanghai Meihao Electric, Inc. ("Shanghai Meihao") for patent infringement under U.S. Pat. No. 6,864,766 ("'766 Patent"), one of its GFCI patents.  Compl.  ¶ 62.  Shanghai Meihao counterclaimed for a declaratory judgment declaring the patent invalid on the ground that it was obtained through "inequitable conduct" because of alleged undisclosed similarities between two co-pending patent applications filed by Leviton.  *Id.* ¶¶ 64-65.

In early 2007, after several years of litigation, Leviton replaced Greenberg as litigation counsel with the law firm of Nixon & Vanderhye, who subsequently dismissed Leviton's claims against Shanghai Meihao with prejudice.  Leviton failed to obtain a reciprocal release of claims by Shanghai Meihao against Leviton, who responded to the dismissal by seeking an award of

---

[2] http://www.leviton.com/OA_HTML/ibeCCtpSctDspRte.jsp?section=27317&minisite=10026 (last accessed 11/25/09)

[3] http://www.leviton.com/OA_HTML/ibeCCtpSctDspRte.jsp?section=14754&subsection=14969 &minisite=10026 (last accessed 11/25/09)

fees and costs.  *See Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc., et al.*, 1:05-cv-00889-AMD (D. Md.), at Dkt. # 133 (Motion to Dismiss); *id.* # 139 (Motion for Costs).[4]  While Shanghai Meihao no longer sought a formal declaration of the patent's invalidity, it continued to argue that Leviton's '766 patent was procured through "inequitable conduct," using that as a basis on which to obtain its attorneys fees.

On December 23, 2008, Magistrate Judge Susan K. Gauvey of the United States District Court for the District of Maryland, issued an Opinion and Order granting Shanghai Meihao's request for costs and fees.  The Magistrate Judge's Opinion was affirmed by the District Court in May 2009.  Both the Magistrate Judge's Order, and the Opinion affirming it, found that Leviton had committed "inequitable conduct" in prosecuting and litigating the patents at issue, and had committed misconduct in discovery in the litigation.  Compl. ¶¶ 68, 79-80.  Leviton has since appealed that ruling, arguing that "the district court erred in finding inequitable conduct in the prosecution of the '766 patent and in finding litigation misconduct . . ."  *See* Brief of Defendant-Appellant, *Leviton Mfg. Co. Inc., v. Universal Sec. Instruments, Inc. and USE Elec., Inc.,* No. 05-CV-889, at 4 (Fed. Cir. 2009) ("Leviton Appeal," attached hereto as Ex. A).

### E.    The Instant Litigation

In September 2009, while its appeal was pending, Leviton brought suit against Defendants for alleged malpractice in the prosecution of the '766 and several other patents. Most of these allegations reach far into the past, with some allegations extending back over ten years into the late 1990s.

---

[4] In ruling on a motion to dismiss, the Court may consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference."  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  "Also, courts routinely take judicial notice of documents filed in other courts, [] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer*, 937 F.2d at 774.

Plaintiff's Complaint consists of four categories of allegations:  (1) that Defendants did not prosecute full and complete applications for two of Leviton's patents, *see* Compl. ¶¶ 47-49, 152; (2) that Defendants intended to deceive the USPTO in prosecuting the application for one of Leviton's patents, *id.* ¶¶ 54-61; (3) that Defendants did not timely file certain applications, causing Leviton to lose several patents under the one-year "on-sale bar" and to pay for unnecessary work, *id.* ¶¶ 104-107; and (4) that Defendants committed misconduct in prosecuting a lawsuit against an alleged infringer, *id.* ¶¶ 62-67, 77-81.

Defendants now file this motion to dismiss for failure to state a claim as to certain claims, and for lack of ripeness with regard to the remaining claims.

## STANDARD OF REVIEW

Motions seeking dismissal on the basis of the statute of limitations are properly resolved under Rule 12(b)(6).  *See Ghartey v. St. John's Queens Hosp*., 869 F.2d 160, 162 (2d Cir. 1989). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  *Leeds v. Meltz*, 85 F.3d 51, 53-55 (2d Cir. 1996); *see also Abbasi v. Herzfeld & Rubin, P.C.*, 863 F. Supp. 144, 146 (S.D.N.Y. 1994) ("[C]onclusory allegations that fail to give a Defendant notice of the material elements of a claim are insufficient as a matter of law to state a claim."); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A motion to dismiss on grounds of ripeness "is jurisdictional in nature and therefore properly considered on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co*., 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003).  "The standard for a Rule 12(b)(1) motion to dismiss for

lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction in a 12(b)(1) motion." *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008) (quotation omitted).

## ARGUMENT

## I.      LEVITON'S PATENT PROSECUTION CLAIMS ARE UNTIMELY.

Leviton's allegations of malpractice in patent prosecution – the Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action – are untimely, and should be dismissed.  New York's statute of limitations for legal malpractice claims is three years, measured from the occurrence of the alleged wrongdoing, not its discovery.  *See* CPLR § 214[6]; *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166 (N.Y. 2001) ("An action to recover damages for legal malpractice accrues when the malpractice is committed.  What is important is when the malpractice was committed, not when the client discovered it.") (citation and internal quotations omitted); *see also Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003) (same).  "This is so even if one or several subsequent events have the effect of tolling the Statute of Limitations period."  *Glamm v. Allen*, 57 N.Y.2d 87, 93 (N.Y. 1982).[5]

Under the "continuous representation" doctrine, the statute of limitations is tolled until the end of the attorney's representation of the client in connection with the matter giving rise to

---

[5] This action is governed by New York law, as Plaintiff appears to concede.  *See* Compl. ¶¶ 90-92 (alleging that Defendants' conduct is to be measured against New York's ethical rules).  "In determining which state's law to apply a court must look to the choice of law rules of the state in which it sits."  *Diversified Group, Inc. v. Daugerdas*, 139 F.Supp.2d 445, 452 (S.D.N.Y. 2001).  "According to New York's choice of law rules, a court should give controlling effect to the law of the jurisdiction with the most significant interest in the specific issues involved in the dispute."  *Id.*  That State is New York, which is home to both the Plaintiff and the Defendants, and the place where the alleged wrongdoing would have occurred.  *See id.* at 453 (applying New York law to legal malpractice dispute and holding that "[a] state has a paramount interest in regulating the conduct of attorneys licensed to practice within its borders"); *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 935 F.Supp. 1333, 1350-51 (S.D.N.Y. 1996) (same).

the malpractice claim.  *See Shumsky* 96 N.Y.2d at 167-68.  However, the "doctrine tolls the

Statute of Limitations only where the continuing representation *pertains specifically to the

matter* in which the attorney committed the alleged malpractice."  *Id.* at 168 (emphasis added).

Plaintiff's Complaint "must assert more than simply an extended general relationship between

the professional and client, in that the facts are required to demonstrate continued representation

in the *specific matter directly under dispute*." *Zaref v. Berk & Michaels, P.C.*, 192 A.D.2d 346,

348 (N.Y. App. Div. 1st Dep't 1993) (emphasis added) (citations omitted); *see also Mason

Tenders District Council Pension Fund v. Messera*, 958 F.Supp. 869, 888 (S.D.N.Y. 1997)

("New York Courts have repeatedly held that the doctrine is strictly limited to instances where

the continuing representation pertains specifically to the matter in dispute, and is not applicable

where an attorney provides ongoing general representation.").

As demonstrated below, the acts and omissions alleged by Leviton to constitute

malpractice in the prosecution of patents all occurred between 1997 and March 2006, placing

them outside the three-year statute of limitations.  Moreover, Leviton's attempt to invoke the

"continuous representation" rule to preserve its claims ultimately fails because it alleges only a

continuing general representation on other matters, not a continuing representation on the

specific matters in dispute.

**A.     The Alleged Malpractice Occurred Outside the Statute of Limitations.**

Leviton alleges a series of acts and omissions that it contends constitute malpractice in

the prosecution of patents.  None of the alleged conduct occurred within the statutory period.

**1.     Leviton's Allegations of Failures to Prosecute "Correct and
Complete" Patent Applications Are Not Timely.**

Leviton alleges in its Fifth Cause of Action that Defendant Sutton committed malpractice

by failing to prosecute a "[c]orrect and [c]omplete" patent application for a ground fault circuit

interrupter ("GFCI") invention containing both an "isolated conductor" and a "reset lockout." *See* Compl. ¶¶ 46-48; *id.* ¶¶ 192-95.  According to the Complaint, Leviton's patent application, prepared by Sutton, was deficient in that it did not claim protection for the "isolated conductor" as a stand-alone invention, but rather, only when it was used in tandem with the "reset lockout" device.  *Id.* ¶ 48.  This allegedly caused Leviton to incur additional legal fees and reduced settlement awards in subsequent litigation against infringers of the "isolated conductor" invention.  *Id.* ¶ 51.

Even assuming the truth of these allegations, they are untimely.  The alleged malpractice occurred (and the statute began to run) on August 20, 1999, when the supposedly "incomplete" patent application was filed.  *See* Compl. ¶ 47; *Shumsky*, 96 N.Y.2d at 166.  Even assuming the statutory period was tolled during the pendency of the patent application, it began to run again when the patent issued on June 21, 2001, *id.* ¶ 47, and expired three years later.[6]

Leviton separately alleges in its Seventh Cause of Action a failure by Defendants to include complete descriptions in a series of patent applications it describes as relating to a "unique line of wiring devices that encompassed many novel features. . . ."  *Id.* ¶ 152; *id.* ¶¶ 201-03.  According to the Complaint, the six patent applications filed by Defendants for that invention omitted material information, which went unnoticed because they "did not seek the inventors' review" before filing.  *Id.* ¶ 156.  This allegedly then led to Leviton incurring additional expense when corrected patents were filed.  *Id.* ¶¶ 156-61.

These allegations are untimely.  The alleged malpractice occurred on June 6, 2002, when the original (allegedly defective) patent applications were filed.  *Id.* ¶ 154.  The Complaint

---

[6] Separate and apart from the statute of limitations, this allegation relates to conduct that occurred before February 2000, and therefore does not state a claim against Greenberg or Mr. Narcisse, who are not even alleged to have been Leviton's attorneys at the time.  *Id.* ¶¶ 5-9.

alleges that Defendants then filed amended or related applications in September 2002, June 2003, May 2004, and December 2004 (the latest of which were abandoned soon after). *Id.* ¶¶ 156-160. No further actions with respect to this series of patents are alleged. As a result, Leviton has not pleaded sufficient facts to allege a tolling of the statute of limitations beyond that date, and any claims it has regarding the Defendants' handling of these patents expired no later than December 3, 2007. *Id.* ¶ 160.

### 2.  Leviton's Allegations of Malpractice in the "'766 Patent" Application Are Not Timely.

Leviton alleges in its Fourth Cause of Action that Defendants also committed malpractice when, in April 2004, they filed a patent application seeking protection for the "isolated conductor" technology for which Sutton had not claimed independent protection in the August 1999 application. This application, known as the "'766 patent" (after the last three digits of its patent number), was based on the same design disclosure as the earlier application, and therefore was given the same August 1999 priority date. *Id.* ¶ 54. According to the Complaint, when the '766 patent application was filed, Defendants included within it language that was similar or identical to language that had been used in a different application filed on Leviton's behalf six months earlier. *Id.* ¶¶ 56-58. Leviton alleges that Defendants committed malpractice by not disclosing that fact to the USPTO, thereby leaving the '766 patent subject to a potential challenge on the ground that it was obtained through "inequitable conduct." *Id.* ¶¶ 60-61.

These allegations are again untimely. The '766 patent application was filed in April 2004, and the patent issued in March 2005. *Id.* ¶ 54. Regardless whether the alleged malpractice is considered to be the filing of the application itself, or the failure to disclose its alleged similarity to another pending application, that alleged misconduct ended no later than March 8, 2005, when the patent issued. *Id.* After that date, Defendants could no longer withdraw the

11

patent application or make additional disclosures, and the time in which to bring a claim against them began to run. *See Shumsky*, 96 N.Y.2d at 166. Accordingly, the statute of limitations for Leviton's malpractice claim regarding that application ran no later than March 8, 2008 – eighteen months before the Complaint was filed.

Leviton includes in its Complaint allegations regarding a December 2008 judicial finding of "inequitable conduct" rendered in the context of a fee application by the defendants in the Shanghai Meihao litigation, and a May 2009 opinion affirming the same. *Id.* ¶¶ 63-67. The dates of those opinions do not affect the statute of limitations analysis. Patent prosecution and patent litigation are fundamentally different forms of legal representation, in which different goals are pursued, in different venues, using entirely different procedures. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1373 (Fed. Cir. 2007) (citing the "significantly different functions of trial counsel and opinion counsel" in patent actions, and the "fundamental difference between th[e] types of legal advice" each provides). Even where one or more of the same attorneys are involved in both representations – the Complaint alleges that Narcisse prosecuted the '766 patent application under Sutton's and Magidoff's supervision, Compl. ¶ 55; Sutton and Magidoff (but not Narcisse) subsequently entered appearances in the Shanghai Meihao litigation, *see* Docket, *Leviton, supra*, No. 1:05-cv-00889-AMD (D. Md.) – those attorneys are required to bring fundamentally different skills to each representation, and are required to be licensed separately in each venue. *See* 37 C.F.R. § 10.7 (specifying unique qualifications to be admitted to the patent bar).

Defendants' representation of Leviton in prosecuting the '766 patent, and later in suing to enforce it, are distinct representations notwithstanding that both involve the '766 patent at some level. *See Sun-Studs, Inc. v. Applied Theory Assoc., Inc.*, 772 F.2d 1557, 1568 (Fed. Cir. 1985) (describing role of counsel in applying for a patent, and distinguishing that "former

representation" from the matter that would arise "[s]hould the company later find it necessary to sue on the patent"); *McCoy v. Feinman*, 99 N.Y.2d 295, 298-300, 305-07 (N.Y. 2002) (malpractice claim arising from attorney's alleged failure to prepare and file qualified domestic relations order ("QDRO") not tolled by subsequent litigation in which absence of the QDRO limited client's rights).[7]  Irrespective of when the Shanghai Meihao litigation began or ended, the '766 patent prosecution ended in March 2005.  Any cause of action Leviton would bring for alleged "malpractice" in connection with that prosecution are therefore untimely.  The Fourth Cause of Action should therefore be dismissed.

### 3.    Leviton's "On-Sale Bar" Claims Are Not Timely.

Leviton alleges in its Sixth Cause of Action that series of patentable inventions as to which it claims Defendants committed malpractice by failing to timely file patent applications.  *See* Compl. ¶¶ 103-150; *id.* ¶¶ 197-99.  Regarding each such invention, Leviton generally asserts that it informed Defendants of the invention and the need to file a patent application, but that Defendants did not do so until more than a year after the inventions were on sale in the United States.  *Id.*  According to Leviton, that delay rendered the inventions incapable of being patented due to the "on-sale bar" rule imposed by 35 U.S.C. § 102(b).  *Id.* ¶ 104.  These allegations are untimely.

---

[7] *See also Bastys v. Rothschild*, No. 97-cv-5154, 2000 WL 1810107, *29 (S.D.N.Y. Nov. 21, 2000) ("Rothschild's negotiation of the prenuptial agreement was not part of any services he provided in connection with the divorce action, which was not even commenced until a decade later.  The fact that the prenuptial agreement was negotiated as a contingency in the event the marriage failed does not mean that any work Rothschild did during the divorce amounted to continuing representation on the agreement."); *Zaref*, 192 A.D.2d at 347-48 (allegation of continuing representation on investment and tax matters insufficient to toll limitations on the "particular transaction which is the subject of the action"). *Uehigashi v. Kanamori*, 161 F. Supp. 2d 221, 226 (S.D.N.Y. 2001) ("[T]he attorney-client relationship, however, is subject matter-specific") (citing cases).

The alleged malpractice occurred, if at all, on the last date when Defendants could have filed a patent application but failed to do so. *See Shumsky*, 96 N.Y. at 166 (malpractice action arising from failure to file within statutory period accrues on the date on which the period expired); *Williams v. Lindenberg*, 24 A.D.3d 434, 434 (N.Y. App. Div. 2d Dep't 2005) (plaintiff's malpractice claim accrued "when his time to file a notice of appeal from the adverse order in the underlying mortgage foreclosure action expired"). Taking Leviton's allegations to be true, each incidence of malpractice occurred well outside the statutory period:

- Leviton's "Occupancy Sensor Inventions," were allegedly disclosed to Defendants in June 1997. *See* Compl. ¶ 108. Leviton alleges that it had been selling devices containing this technology "for several years" by the time Defendants filed patent applications in July and August 2004. *Id.* ¶ 109.

- The "Plug in Counter Tool" was allegedly disclosed in May 1998, at which time it was already on sale. *Id.* ¶ 111.

- The "Magnetic Low Voltage Dimmer" was allegedly disclosed in October 1998, and first sold in 1999. *Id.* ¶ 114.

- The "Motor Starting Switches" were allegedly disclosed in October 1998 and first sold in October 1999. *Id.* ¶ 117.

- The "Controller for Wallbox Dimmer" was allegedly disclosed in February 1999 and first sold in 2000. *Id.* ¶¶ 119-20.

- The "Membrane Touch Dimmer" was allegedly disclosed in February 1999, and on sale "at least by 2000." *Id.* ¶¶ 122-23.

- The "Programming Template" was allegedly disclosed in October 1999, with an intention to commercialize the product it in January 2000. *Id.* ¶ 125. Although Leviton does not state when the product ultimately went on sale, it was *at least*

14

one year prior to March 3, 2005 when Defendants are alleged to have filed for protection. *Id.* ¶ 126.

- The "Security Lock Switch" was allegedly disclosed in November 2000, and on-sale before the end of that year. *Id.* ¶ 130.

- The "Snap in Printed Circuit Board Holder" was allegedly disclosed in November 2000, and first sold in 2001. *Id.* ¶ 133.

- The "Weatherproof Electrical Enclosure" was allegedly disclosed in November 2001, and sold in May 2002. *Id.* ¶ 136.

- The "Indexing Mechanism" was allegedly disclosed in December 2001, and first sold in January 2003. *Id.* ¶ 139.

- The "High Current Surge Panel with Diagnostics" was allegedly disclosed in November 2002, and first sold in March 2002. *Id.* ¶ 143.

As to each of these inventions, Defendants' alleged malpractice occurred, if at all, one year after the date on which the products were offered for sale, and are well outside the statutory period. Even if the statute of limitations were deemed to be tolled until the date on which Defendants are alleged to have filed untimely applications, the statutory period still would have begun to run well over three years before the Complaint was filed.[8]

### 4.    Leviton's Allegations Regarding a Re-Examination Are Not Timely.

Finally, Leviton alleges in its Eighth Cause of Action that Defendants committed malpractice by defending a patent re-examination without informing Leviton that it was pending. *Id.* ¶¶ 162-69; *id.* ¶¶ 205-09.  However, as the Complaint alleges, this re-examination occurred in

---

[8] *See* Compl. ¶ 109 (July and August 2004); ¶ 112 (March 2005); ¶ 115 (March 2006); ¶ 118 (January 2006); ¶ 120 (December 2004); ¶ 123 (February 2006); ¶ 126 (March 2006); ¶ 131 (March 2006); ¶ 134 (September 2005); ¶ 137 (July 2005); ¶¶ 140-41 (March 2005); ¶ 144 (March 2006).

2002, *id.* ¶ 163, and therefore cannot be the basis for any claims filed against Defendants in September 2009.[9]

$$* \qquad * \qquad * \qquad * \qquad *$$

For these reasons, Leviton's allegations of malpractice in patent prosecution are barred by the statute of limitations, and its Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action should be dismissed.  *See Fezzani v. Bear*, *Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 630 (S.D.N.Y. 2004) ("It is proper to dismiss claims when it is apparent from the complaint and documents referenced therein that they are barred by the applicable statute of limitations."); *Ghartey*, *supra*, 869 F.2d at 162 ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."); *Francis v. Blaikie Group*, 372 F.Supp.2d 741, 743 n. 2 (S.D.N.Y.2005) (same).

**B.     The "Continuous Representation" Doctrine Does Not Save Plaintiff's Claims.**

In apparent recognition of the untimely nature of its claims, Leviton goes to some length to plead the existence of a "continuous representation" by Sutton, *see* Compl. ¶¶ 21-28, and by Greenberg, *id.* ¶¶ 29-33, lasting until 2008.  These allegations miss the mark, however, because they allege nothing more than a continuing *general* representation on a variety of different matters, and not a continuing representation on any of the specific patent prosecutions that form the basis of Leviton's claims.

Thus, the Complaint alleges that "[f]or approximately 37 years, from 1971 to 2008, when Leviton terminated the relationship, defendant Sutton represented Leviton in substantially all of

---

[9] The Complaint does not allege an ending point for the re-examination.  As it is Plaintiff's burden to plead facts supporting a claim of "continuous representation" into the limitations period, *Zaref*, 192 A.D.2d at 348, that omission precludes Plaintiff from claiming limitations extended to some later date.  In any event, were Plaintiff to re-plead this paragraph, it would not be able to allege that the re-examination ended any later than April 2006, more than three years before the Complaint was filed.

its intellectual property matters." *Id.* ¶ 21.  And it alleges that "Defendants Greenberg Traurig and Sutton were retained and paid by Leviton to prosecute nearly all of its patents worldwide." *Id.* ¶ 30.  But what Plaintiff does not allege – what it cannot allege – is the one thing it must allege to toll the statute of limitations:  that Defendants were engaged in a "continued representation in the *specific matter directly under dispute*."  *Zaref*, 192 A.D.2d at 348 (emphasis added).

Under the rules of the PTO, each patent application that is prosecuted requires the execution of a separate power of attorney.  *See* 37 C.F.R. § 1.32.  In this way, the PTO treats each patent application as a separate and distinct matter from all other patent applications, even those filed for the ultimate benefit of the same entity.  Indeed, through this process, patent applications are *necessarily* made distinct from one another because the governing statute requires that the inventor – and not the beneficial owner – of the technology initiate the patent application:

> An inventor, who is hired or employed by a company, and who develops an invention in the course of his work which he has agreed to assign to the company, is required to execute whatever papers are necessary for the company's patent counsel to prosecute a patent application on behalf of the company.  This procedure is dictated by 35 U.S.C. § 111 (and 37 C.F.R. § 1.41) which requires that the *inventor* must apply for the patent.   The patent application must generally contain an oath by the inventor.  37 C.F.R. § 1.51(a)(2).   The oath normally includes a power of attorney. Manual of Patent Examining Procedure, Chap. 402 (5th ed. 1983). Even where the invention has been assigned to the company, the inventor must still be the applicant.  37 C.F.R. § 1.46.

*Sun-Studs, supra*, 772 F.2d at 1568 (emphasis in original).  Moreover, "[s]hould the company later find it necessary to sue on the patent," such litigation is treated at least for conflicts purposes as its own separate and distinct matter.  *Id.* (contrasting attorneys' representation of company in patent litigation from their "former representation" in applying for the patent).

17

Just as an auditor who performs multiple successive audits of a corporation is not deemed to be engaged in "one" representation for limitations purposes, so too should a patent attorney who prosecutes multiple independent patents or multiple independent litigations not be deemed to be conducting a single representation throughout that period. *See Williamson v. PricewaterhouseCoopers*, 9 N.Y.3d 1, 10-11 (N.Y. 2007) ("[O]nce defendant[s] performed the services for a particular year, no further work as to that year was undertaken.").

Leviton does not allege any such matter-specific representation within the statutory period, because the patent prosecutions about which it complains were not only initiated, but concluded, years before the Complaint was filed. *See, supra,* at Part I.A.  As a result, the most it can allege is that Defendants continued to represent it on other matters, including the Shanghai Meihao litigation and unspecified patent prosecutions, but not the matters as to which it alleges Defendants committed malpractice.  Such allegations are insufficient to toll the running of the statute of limitations.  *See Shumsky* 96 N.Y.2d at 168 (the "doctrine tolls the Statute of Limitations only where the continuing representation *pertains specifically to the matter* in which the attorney committed the alleged malpractice.") (emphasis added); *Zaref*, 192 A.D.2d at 348 (same); *Mason Tenders District Council Pension Fund*, 958 F.Supp. at 888 ("[T]he doctrine is strictly limited to instances where the representation pertains specifically to the matter in dispute, and is not applicable where an attorney provides ongoing general representation.").

### C.    Leviton's Claims for "Breach of Fiduciary Duty" Are Barred By the Same Statute of Limitations.

Finally, Leviton's decision to style its allegations as seeking relief for both malpractice and "breach of fiduciary duty" has no impact on the timeliness of its claims.  Both theories of recovery are based on the exact same set of facts (*see* Compl. ¶¶ 171, 192, 197, 205), and both are therefore governed by the three-year statute of limitations for legal malpractice actions.  *See*

*Carruthers v. Flaum*, 388 F.Supp.2d 360, 372-73 (S.D.N.Y. 2005) (applying same three-year limitations period to both malpractice and breach of fiduciary duty claims, reasoning "[a]n action to recover for attorney malpractice . . . in New York is governed by a three-year statute of limitations, regardless of whether the underlying theory is based on contract or tort.") (citations omitted); *Uehigashi*, 161 F. Supp. 2d at 225 (same).

## II. LEVITON IMPROPERLY PLEADS ITS PATENT PROSECUTION CLAIMS AGAINST ALL DEFENDANTS.

The timing of the alleged malpractice in patent prosecution is relevant for a second reason independent of the statute of limitations. Leviton acknowledges that Messrs. Sutton and Magidoff did not join Greenberg until February 2000, *see* Compl. ¶¶ 5 & 7, and that Leviton did not become a Greenberg client until after they did so, *id.* ¶ 26. As outlined above, much of the alleged malpractice occurred, if at all, in the 1990s without even involvement of Greenberg or Narcisse, yet Plaintiff nevertheless joins Greenberg as a Defendant in all Counts of the Complaint.

Thus, Plaintiff's Fifth Cause of Action charges that "Defendants Greenberg Traurig and Sutton committed legal malpractice . . . by failing to timely prosecute correct and complete claims for plaintiff's 'isolated conductors' invention. . ." *Id.* ¶ 192. But as the Complaint elsewhere makes clear, the patent application in question was filed "[o]n August 20, 1999," *id.* ¶ 47, a time when Leviton was not even a client of the firm. Likewise, Leviton *admits* that a substantial number of its allegations concerning the "on-sale bar" (Count Six) relate to the period before "Sutton and Magidoff affiliated with defendant Greenberg Traurig." *Id.* ¶ 128. While Leviton asserts that Greenberg "undertook the responsibility to timely file [the] patent applications which could still be timely filed, and failed to do so" – it does not say which patents fall into that category, and simply asserts the entire Count against Greenberg anyway.

It is axiomatic that "[t]o recover damages for legal malpractice, a plaintiff must prove, *inter alia*, the existence of an attorney-client relationship." *Wei Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (N.Y. App. Div. 2d Dep't 2001).  "[A]n attorney-client relationship is established where there is an explicit undertaking to perform a specific task."  *Id.*  Greenberg cannot be held liable to Leviton for actions taken when Leviton was not a client of the firm.  It is therefore entitled to dismissal of Leviton's Fifth Cause of Action with prejudice, and to those portions of the Sixth Cause of Action that relate to acts or omissions occurring before February 2000.

## III.   LEVITON'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE NOT RIPE.

Leviton's First, Second and Third Causes of Action seek damages arising from Defendants' prosecution of a lawsuit on Leviton's behalf against Shanghai Meihao, an alleged patent infringer.  *See* Compl. ¶¶ 171-86.  These claims are not ripe, because Leviton has not yet sustained the alleged damages, if it ever will.  Plaintiff's claims should be dismissed, or, in the alternative, stayed pending resolution of Leviton's appeal of the Orders underlying its claims.

### A.   Leviton Has Yet to Sustain Any Damages, and May Never Sustain Damages At All.

Leviton's allegations of litigation misconduct are based primarily on the findings of Magistrate Judge Susan K. Gauvey of the United States District Court for the District of Maryland, in an Opinion and Order dated December 23, 2008.  Leviton alleges that Magistrate Judge Gauvey determined that Defendants:  had violated USPTO regulations by failing to disclose the pendency of two patent applications containing similar language, *see* Compl. ¶¶ 68-72;  had committed "inequitable conduct" in securing the '766 patent, *id.* ¶¶ 73-76;  and had committed discovery misconduct by declining to appear or produce documents in response to a subpoena, *id.* ¶¶ 77-81.  Magistrate Judge Gauvey's opinion was affirmed by the District Court in May 2009.  *Id.* ¶ 68.

For its damages, Leviton contends that it was taxed Shanghai Meihao's costs and attorneys' fees, *id.* ¶¶ 82-83, for which it has posted a bond, *id.* ¶ 84.  Leviton further alleges that it has suffered "harm to the value of [its] GFCI patents, and unless the Davis decision is reversed on appeal, Leviton will suffer additional financial harm . . ."  *Id.* ¶ 86.  Leviton also alleges that it incurred its own costs and attorneys fees in the litigation.  *Id.* ¶¶ 87-88.

Leviton is contesting the adverse rulings in an appeal that is now pending before the United States Court of Appeals for the Federal Circuit.  *See* Compl. ¶¶ 76, 84; *see also* Ex. A (Brief of Appellant Leviton).[10]  The appeal challenges not only the award of costs and fees to Shanghai Meihao, but also the underlying finding of "inequitable conduct" and the reasons the District Court gave for finding it.  Specifically, Leviton argues:

- That "Narcisse took appropriate action to bring the double-patenting issue to the attention of the PTO . . ."  Ex. A at 32-33;

- That "[a]t most, Narcisse's failure to disclose [the similar language in the second application] during prosecution of the '766 patent was a minor technical mistake with no practical effect. . ."  *Id.* at 35-36;

- That "Narcisse could not have intended to deceive the PTO by using the term 'movable bridge' in the '766 claims rather than 'movable contact arm' because it makes not a bit of difference. . ."  *Id.* at 39;

- That "Narcisse offered not only a plausible explanation but a very reasonable explanation for why he did not disclose the [second] application"  *Id.* at 49;

---

[10] The Court is permitted to take judicial notice of Leviton's statements in the Shanghai Meihao appeal, not for the truth of the matter asserted, but as proof of the positions it has taken.  *Kramer*, 937 F.2d at 774.

- That "*[n]o patent owner* could satisfy the Magistrate Judge's unrealistic standards." *Id.* at 46;

- That the Court's "finding of litigation misconduct . . . was based on the erroneous finding of inequitable conduct," and should be vacated for that reason. *Id.* at 56; and

- That the alleged litigation misconduct was not misconduct at all, but "rather was a legitimate effort to avoid waiving its attorneys' work product." *Id.*

The outcome of Leviton's appeal is unknown, and is expected to remain unknown for some time.  However, what is unmistakably clear is that *even Leviton* does not believe the allegations of litigation misconduct it is making against Defendants, but is merely making those claims because of the possibility that their appeal will be rejected.  Moreover, if Leviton's positions on appeal are accepted by the Court, it will pay none of the costs and fees that were assessed against it, and would suffer no adverse effect on its patent arising from the (by then vacated) finding of "inequitable conduct."  The instant complaint, in other words, seeks recovery for damages that may or may not be sustained, depending on the outcome of future events.

### B.       Leviton's Allegations Should Be Dismissed as Premature.

"In a legal malpractice action, a plaintiff must show [*inter alia*] . . . that the attorney's breach of [his or her] professional duty caused the plaintiff's *actual damages*."  *McCoy*, 99 N.Y.2d at 302 (emphasis added); *see Luniewski v. Zeitlin*, 188 A.D.2d 642, 643 (N.Y. App. Div. 2d Dep't 1992) ("Mere speculation of a loss resulting from an attorney's alleged omissions is insufficient to sustain a prima facie case sounding in legal malpractice.").  Where, as here, damages are speculative because they depend upon the outcome of separate, pending litigation, New York courts do not hesitate to dismiss the claim.

Thus, in *Igen, Inc. v. White*, 250 A.D.2d 463 (N.Y. App. Div. 1st Dep't 1998), the Court dismissed a cause of action for malpractice arising from the defendant's alleged failure to file a patent application before the applicable filing deadline. *Id.* at 465-66. Plaintiffs could establish no actual damages that had been incurred by the date their complaint was filed, yet argued "that it should be permitted to establish the amount of future damages upon trial." *Id.* at 465. The Court rejected that argument, finding that because "plaintiff can point to no actual damage that has been incurred . . . , an essential element of the tort of negligence is lacking, and the complaint must be dismissed for failure to state a cause of action." *Id.* at 466.

Notably, the Court rejected an argument that "damages" could consist of the loss of anticipated future royalties: "What plaintiff's argument overlooks is that it has sustained no injury unless there has been an infringement against which its patent would have afforded a right of recovery." *Id.* at 464-65; *see also Lopes v. Mangiatordi, Maher & Lemmo, LLC*, 6 Misc.3d 1004(A), 2004 WL 3058150 (N.Y. Sup. Ct. 2004) (dismissing cause of action on ground that "[t]he plaintiff herein cannot show that he has sustained demonstrable damages for legal malpractice proximately caused by the defendants' alleged negligence until after the resolution of the underlying personal injury action, if then").[11]

For the same reasons, Leviton's allegations against Greenberg in its First, Second and Third Causes of Action are premature, and should be dismissed pending adjudication of Leviton's appeal in the Shanghai Meihao litigation. Until that appeal is decided, Leviton will not

---

[11] Plaintiff also seeks to recover attorneys' fees it claims to have paid as a result of the alleged malpractice. Compl. ¶¶ 87-88. In the absence of another measure of actual damages, such fees are not recoverable. *See Estate of Steinberg v. Harmon*, 259 A.D.2d 318, 318 (N.Y. App. Div. 1st Dep't 1999) (dismissing malpractice claim by reason that "[p]laintiff does not show any damages attributable to defendant's alleged ethical breach, other than the attorney fees it incurred in litigating defendant's disqualification"). Unless and until the appeal is decided, this measure of damages does not form an independent basis for Leviton's claims.

actually pay any of the costs or fees it was ordered to pay.  Likewise, if the Court of Appeals

overturns the District Court's finding of inequitable conduct, Leviton's fears that such a finding

will be used against it by infringers will not be realized.  In any event, because Leviton identifies

nothing more than an abstract diminution in the "value" of its patent, Compl. ¶ 86, and not any

actual infringement or tangible loss, its alleged damages remain too speculative to support a

claim of malpractice.  *Igen*, 250 A.D.2d at 464-65.

## IV.     ALTERNATIVELY, THIS COURT SHOULD STAY THE LITIGATION PENDING RESOLUTION OF LEVITON'S APPEAL.

In the alternative, if the Court does not dismiss Leviton's claims on the ground that they

are not ripe, it should enter an Order staying this litigation pending resolution of Leviton's appeal

in the Shanghai Meihao litigation.  "The power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its own docket with economy

of time and effort for itself, for counsel, and for litigants."  *LaSala v. Needham & Co., Inc.*, 399

F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254(1936)).

"There are several reasons why a court might decide to stay proceedings in a lawsuit."  *Id.*  "For

example, a court might, in the interest of judicial economy, enter a stay pending the outcome of

proceedings which bear upon the case, even if such proceedings are not necessarily controlling

of the action that is to be stayed."  *Id.*

If the case is not dismissed outright, then at minimum, it should be stayed pending the

outcome of Leviton's appeal before the Federal Circuit.  If Leviton's arguments in that Court are

accepted, and the underlying matter is reversed, then there will be no need for further litigation in

this Court regarding the alleged litigation misconduct or the alleged inequitable conduct.  Indeed,

inasmuch as it is *Leviton* that is concurrently arguing there was no inequitable conduct or

discovery misconduct, it should not be heard to argue the opposite in this Court.  Even if

Leviton's appeal is denied, in whole or in part, the Federal Circuit's analysis of the issues on appeal are likely to alter the scope of any claims that survive the appeal.  For these reasons, judicial economy favors the entry of a stay if the matter is not simply dismissed.

## CONCLUSION

For the foregoing reasons, Leviton's claims of malpractice in patent prosecution (Counts Four through Eight) should be dismissed with prejudice, and its claims of litigation misconduct (Counts One through Three) should be dismissed without prejudice or, in the alternative, stayed pending the outcome of Leviton's appeal in the Shanghai Meihao litigation.

Respectfully submitted,

/s/  Kevin M. Downey
Kevin M. Downey (admitted *pro hac vice*)
Alex G. Romain (admitted *pro hac vice*)
Carl R. Metz (admitted *pro hac vice*)
Corey M. Then (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005

/s/  David Francescani
David Francescani (Bar No. DF9701)
Karolina Jessien (Bar No. KJ7292)
FISH & RICHARDSON, P.C.
601 Lexington Ave – 52nd Floor
New York, NY  10022-4611

*Counsel for Defendants Greenberg Traurig LLP, Paul J. Sutton, Barry G. Magidoff and Claude R. Narcisse*

November 25, 2009