UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

LEVITON MANUFACTURING CO., INC.,

                       **Plaintiff,**

          – against –                        **Civil Action No. 09-cv-08083-GBD**

GREENBERG TRAURIG LLP, PAUL J.
SUTTON, BARRY G. MAGIDOFF and
CLAUDE R. NARCISSE,

                       **Defendants.**

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    A.    Plaintiff Leviton. ................................................................................................ 3

    B.    Defendants' Background and Experience. ........................................................ 3

    C.    Defendants' Representation of Leviton. ........................................................... 4

    D.    The Shanghai Meihao Litigation. .................................................................... 5

    E.    The Instant Litigation ....................................................................................... 6

STANDARD OF REVIEW ................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

I.    LEVITON'S PATENT PROSECUTION CLAIMS ARE UNTIMELY. ............................ 8

    A.    The Alleged Malpractice Occurred Outside the Statute of Limitations. ................ 9

        1.    Leviton's Allegations of Failures to Prosecute "Correct and Complete" Patent Applications Are Not Timely. ....................................... 9

        2.    Leviton's Allegations of Malpractice in the "'766 Patent" Application Are Not Timely. .................................................................. 10

        3.    Leviton's "On-Sale Bar" Claims Are Not Timely. ................................... 11

        4.    Leviton's Allegations Regarding a Re-Examination Are Not Timely. ................................................................................................... 12

    B.    The "Continuous Representation" Doctrine Does Not Save Plaintiff's Claims. ............................................................................................................ 12

        1.    Leviton's Conclusory Allegations of What Was "Contemplated" By the Parties Does Not Toll the Statute of Limitations. ............................................................................................. 13

2.     Leviton Fails to Show That Any of the Specific Matters in Dispute Continued into the Limitations Period. ....................................... 14

   a.     Patent Prosecution and Litigation are Distinct Forms of Representation.............................................................................. 15

   b.     A "Continuing Application" is Not a Continuous Representation on the Same Specific Matter. ............................... 17

   c.     Continued Alleged "Inaction" is Not a Basis for Finding a Continuous Representation............................................ 19

   d.     Plaintiff Has No Basis for Tolling Its Re-Examination Claim............................................................................................... 19

II.     LEVITON'S EQUITABLE CLAIMS ARE IMPERMISSIBLY DUPLICATIVE OF THEIR LEGAL MALPRACTICE CLAIMS................................. 20

III.    LEVITON IMPROPERLY PLEADS ITS PATENT PROSECUTION CLAIMS AGAINST ALL DEFENDANTS. ...................................................... 21

IV.     LEVITON'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE NOT RIPE............................................................................................................. 22

   A.     Leviton Has Yet to Sustain Any Damages, and May Never Sustain Damages At All.......................................................................... 22

   B.     Leviton's Allegations Should Be Dismissed as Premature................... 23

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Abbasi v. Herzfeld & Rubin*,
    863 F. Supp. 144 (S.D.N.Y. 1994)........................................................................7

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................2, 7, 14

*Bastys v. Rothschild*,
    No. 97-cv-5154, 2000 WL. 1810107 (S.D.N.Y. Nov. 21, 2000).......................15

*Carruthers v. Flaum*,
    388 F. Supp. 2d 360 (S.D.N.Y. 2005)...............................................................20

*Combined Tactical Sys. Inc. v. Defense Tech. Corp. of Am.*,
    589 F.Supp.2d 260, 264 (S.D.N.Y. 2008)..........................................................18

*Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*,
    261 F. Supp. 2d 293 (S.D.N.Y. 2003)..................................................................7

*Elias v. Albanese*,
    No. 00-cv-2219, 2000 WL 1182803 (S.D.N.Y. Aug. 21, 2000).......................19

*Fezzani v. Bear, Stearns & Co., Inc.*,
    384 F. Supp. 2d 618 (S.D.N.Y. 2004)...............................................................12

*Francis v. Blaikie Group*,
    372 F. Supp. 2d 741 (S.D.N.Y. 2005)...............................................................12

*Ghartey v. St. John's Queens Hospital*,
    869 F.2d 160 (2d Cir. 1989)..........................................................................7, 12

*Hoffenberg v. Hoffman & Pollok*,
    248 F. Supp. 2d 303 (S.D.N.Y. 2003)..................................................................8

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)......................................................................3, 6, 23

*Leeds v. Meltz*,
    85 F.3d 51 (2d Cir. 1996) ....................................................................................7

*Malmsteen v. Berdon, LLP*,
    477 F.Supp.2d 655, 661 (SDNY 2007)..............................................................20

*Mason Tenders District Council Pension Fund v. Messera*,
    958 F. Supp. 869 (S.D.N.Y. 1997)..............................................................................9, 13

*Milne v. Navigant Consulting, Inc.*,
    No. 08 Civ. 8964, 2009 WL 4437412 (S.D.N.Y. Nov. 30, 2009) ....................................14

*Oldcastle Precast, Inc. v. U.S. Fidelity & Guar. Co.*,
    458 F. Supp. 2d 131 (S.D.N.Y. 2006)...........................................................................24

*Ricciuti v. N.Y.C. Transit Auth.*,
    No. 90-cv-2823, 1991 WL 221110 (S.D.N.Y. Oct. 3, 1991).............................................19

*S&R Development Estates, LLC v. Bass*,
    588 F. Supp. 2d 452 (S.D.N.Y. 2008)..............................................................................8

*In re Seagate Technology, LLC*,
    497 F.3d 1360 (Fed. Cir. 2007).....................................................................................16

*Sun-Studs, Inc. v. Applied Theory Assoc., Inc.*,
    772 F.2d 1557 (Fed. Cir. 1985) ....................................................................................15

*Texas v. United States*,
    523 U.S. 296 (1998)......................................................................................................23

*Transco Prods., Inc. v. Performance Contracting, Inc.*,
    38 F.3d 551 (Fed. Cir. 1994) ........................................................................................17

*Uehigashi v. Kanamori*,
    161 F. Supp. 2d 221 (S.D.N.Y. 2001)............................................................................16

## STATE CASES

*Glamm v. Allen*,
    57 N.Y.2d 87 (N.Y. 1982) ...............................................................................................8

*Greene v. Greene*,
    56 N.Y.2d 86 (1982) .....................................................................................................14

*Igen, Inc. v. White*,
    250 A.D.2d 463 (N.Y. App. Div. 1st Dep't 1998)......................................................24, 25

*Lopes v. Mangiatordi, Maher & Lemmo, LLC*,
    6 Misc.3d 1004, 2004 WL 3058150 (N.Y. Sup. Ct. 2004)...............................................24

*Luk Lamellen U. Kupplungbau v. Lerner*,
    166 A.D.2d 505 (N.Y. App. Div. 2d Dep't 1990) ...........................................................16

*Luniewski v. Zeitlin*,
    188 A.D.2d 642 (N.Y. App. Div. 2d Dep't 1992) ............................................................24

*McCoy v. Feinman*,
    99 N.Y.2d 295 (N.Y. 2002) ...............................................................................15, 24

*Parlato v. Equitable Life Assur. Soc. of U.S.*,
    299 A.D.2d 108 (N.Y. App. Div. 1st Dep't 2002)....................................................8, 17

*Shumsky v. Eisenstein*,
    96 N.Y.2d 164 (N.Y. 2001) ................................................................................ *passim*

*Town of North Hempstead v. Winston & Strawn, LLP*,
    28 A.D.3d 746, 749 (N.Y. App. Div. 2d Dep't 2006) .......................................................20

*Town of Wallkill v. Rosenstein*,
    40 A.D.3d 972, 974 (N.Y. App. Div. 2d Dep't 2007) .......................................................20

*Spinale v. Tenzer Greenblatt, LLP*,
    309 A.D.2d 632 (N.Y.App. Div. 1st Dep't 2003)..............................................................20

*Wei Cheng Chang v. Pi*,
    288 A.D.2d 378 (N.Y. App. Div. 2d Dep't 2001) ......................................................14, 21

*Williams v. Lindenberg*,
    24 A.D.3d 434, 434 (N.Y. App. Div. 2d Dep't 2005) .......................................................11

*Zaref v. Berk & Michaels*,
    192 A.D.2d 346 (N.Y. App. Div. 1st Dep't 1993)..................................................... *passim*

## OTHER AUTHORITIES

*Mark A. Lemley & Kimberly A. Moore*, "Ending Abuse of Patent Continuations"
    84 B.U. L. Rev. 63 (2004) .......................................................................................24

C.P.L.R. § 214[6].......................................................................................................1, 8

37 C.F.R. § 10.7 .........................................................................................................12

35 U.S.C. § 102(b) ......................................................................................................13

## INTRODUCTION

This legal malpractice action filed by Plaintiff Leviton Manufacturing Co., Inc. ("Plaintiff" or "Leviton") against its former attorneys at Greenberg Traurig LLP ("Greenberg"), is untimely, and should be dismissed.  Plaintiff's central allegation is that the individual defendants Paul J. Sutton ("Sutton"), Barry G. Magidoff ("Magidoff"), and Claude R. Narcisse ("Narcisse") (collectively, "Defendants"), both while at Greenberg and while at Sutton's and Magidoff's prior firm, acted negligently in prosecuting and/or failing to timely file and prosecute certain patent applications, and further, committed misconduct during litigation against an alleged patent infringer.  However, as the Amended Complaint makes clear:

> (1)  The alleged acts of malpractice in patent prosecution (*i.e.*, Counts Four through Eight) are supposed to have occurred between 1997 and Spring 2006, and therefore fall outside New York's three-year statute of limitations for legal malpractice actions.  *See* C.P.L.R. § 214[6].  Indeed, inasmuch as many of the alleged acts or omissions occurred before February 2000, they do not even allege conduct by Greenberg or Narcisse; and

> (2)  Leviton's allegations of malpractice in the prosecution of a lawsuit (*i.e.*, Counts One through Three), are premature because the alleged wrongdoing has not yet resulted in damages, if it ever will.  In its appeal of that litigation, currently pending before the U.S. Court of Appeals for the Federal Circuit, Leviton disputes the very "facts" it now alleges against Greenberg.  Leviton's damages claims are contingent on the outcome of that appeal, and are not yet ripe.

In response to an earlier motion to dismiss, Leviton amended its Complaint in an effort to establish the timeliness of its claims under the "continuous representation rule."  *See* First Am. Compl. (hereafter, "Compl.")., Dkt. # 35.  These new allegations, *id.* at ¶¶ 34-95, fail to satisfy

Leviton's burden of alleging facts that plausibly establish Defendants' continuing representation, into the limitations period, on the "specific matter[s] directly" giving rise to Leviton's claims. *See Zaref v. Berk & Michaels, P.C.*, 192 A.D.2d 346, 348 (N.Y. App. Div. 1st Dep't 1993). Instead, the new allegations consist of: (1) conclusory statements that it was "contemplated" or "understood" that Defendants would continue to represent Leviton indefinitely on all matters, even if no actions were taken or needed, *id.* ¶¶ 34-49; and (2) assertions that a number of matters within the limitations period that Plaintiff claims are related to the matter for which malpractice is alleged, should be considered as the same matter for limitations purposes, *id.* ¶¶ 50-95. The first type of allegation is the kind of bald, conclusory statement that is entitled to no deference in a motion to dismiss under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009). The remainder are contrary to the clear requirement that the statute of limitations can only be tolled by the pendency of the *specific* matter giving rise to Plaintiff's claims.

The Amended Complaint also adds three additional causes of action, grounded in the same set of alleged facts, that seek recovery under the equitable theories of unjust enrichment, constructive trust, and constructive fraud. *See* Compl., at Ninth, Tenth and Eleventh Causes of Action. Well-established New York law requires that these claims be dismissed on the ground that they duplicate Leviton's malpractice claims.

Should it become necessary to defend the case on the merits, Defendants intend to demonstrate that they provided Leviton with excellent legal representation, from which it has profited greatly and continues to profit today. Leviton's allegations of wrongdoing are unsupported in the record. Indeed, *even as it pursues these claims against Defendants*, Leviton is concurrently arguing in the United States Court of Appeals for the Federal Circuit that Defendants: "took appropriate action" before the patent office; "[a]t most . . . [committed] a minor technical mistake with no practical effect"; "could not have intended to deceive the [patent

office]"; and acted in a "legitimate effort to avoid waiving its attorneys' work product." *See infra,* Part III.A.  Defendants fully agree that there was no misconduct, and have every intention of defending themselves against allegations to the contrary.

Defendants request that the Court dismiss the patent prosecution claims (Counts Four through Eight) *with* prejudice on the ground that they are barred by the statute of limitations; dismiss the equitable claims (Counts Nine through Eleven) *with* prejudice on the ground that they duplicate Leviton's malpractice claims; and dismiss the litigation malpractice claims (Counts One through Three) *without* prejudice on the ground that they are not yet ripe.

## BACKGROUND

The following factual recitation is drawn from the allegations of Plaintiff's complaint and, where appropriate, matters of public record of which this Court can take judicial notice.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

### A.    Plaintiff Leviton.

Leviton is the largest North American manufacturer of electrical and electronic wiring devices.  Compl. ¶ 18.  Leviton holds over 800 patents and is a frequent patent litigant.  *Id.* ¶¶ 19, 40 n.2.  It is a "third generation family-owned business" and was founded in 1906 by Isidor Leviton.  *Id.* ¶ 18.  His son, Harold Leviton, was the CEO and Chairman of Leviton from 1965 until his passing in 2007.  *Id.* ¶ 19.

### B.    Defendants' Background and Experience.

Defendant Paul Sutton has over four decades of law firm and corporate experience in intellectual property law.  Mr. Sutton graduated from New York University with a B.M.E. in Mechanical and Electrical Engineering in 1962, and pursued graduate studies in Industrial Engineering from Columbia University and Welding Metallurgy from UCLA.  *available at* http://suttonmagidoff.com  (last accessed 2/9/10).  Mr. Sutton began his career as a member of a

team of design engineers in Douglas Aircraft's Missiles & Space Systems Division, and was involved in the design of the Apollo Saturn third stage booster rocket structure that carried the first U.S. Astronauts to the Moon.  *Id.*[1]

Defendant Barry Magidoff has provided intellectual property counseling to clients ranging from individual inventors to large public corporations for almost 50 years.  *Id.*  Mr. Magidoff has extensive experience practicing in state and federal courts and the U.S. Patent and Trademark Office ("USPTO") and has technical expertise in chemistry, metallurgy, mining, polymers, and mechanical and chemical engineering.  *Id.*

Defendant Claude Narcisse has nearly twenty years of experience in intellectual property law.  In addition to his J.D., Mr. Narcisse has a B.S. and a Master's in Electrical Engineering from Columbia University and a Master's in Computer Science from Polytechnic University.

Greenberg is an international law and lobbying firm with more than thirty offices worldwide.  Greenberg employed Defendant Sutton from February 2000 through February 2009, Defendant Magidoff from February 2000 through January 2009, and Defendant Narcisse from October 2001 through June 2008.

### C.    Defendants' Representation of Leviton.

Mr. Sutton represented Leviton in several intellectual property matters for approximately 37 years, from 1971 to 2008.  Compl. ¶¶ 21, 40 & n.2-3.  As a result of those representations, Leviton "currently holds over 800 patents worldwide and its brands and products are known around the world."  *Id.* at ¶ 19.  Leviton's patent portfolio has been highly ranked by numerous

---

[1] Mr. Sutton serves as an Adjunct Professor of Law at Polytechnic Institute of New York University, where he teaches courses in Intellectual Property Strategies for Engineers & Scientists and Intersections of Law, Engineering & Business.  He also serves as a member of the Industry Advisory Board of NYU-Poly.  Mr. Sutton is a member of the Editorial Panel of World Intellectual Property Review and has lectured before the judiciary and legislators of the People's Republic of China to harmonize Chinese and U.S. intellectual property laws.

trade publications for many years; its website indicates that the company was recently "ranked #1 by the Patent Board [of the Wall Street Journal] for the impact the company's patents have had on the [electrical and electronic wiring devices] industry."[2]  Mr. Sutton, Mr. Magidoff, and Mr. Narcisse did legal work in connection with many of the patents in that portfolio.

For nearly four decades, Mr. Sutton helped Leviton procure hundreds of patents for Leviton's patent portfolio, *id.* ¶ 19, helping make it "one of the foremost giants in the electrical industry."[3]  Mr. Sutton protected intellectual property rights of a myriad of Leviton's 25,000-plus electrical wiring device products by prosecuting or defending successfully dozens of lawsuits on Leviton's behalf.  Compl. ¶ 24.  Among the technologies for which Defendants secured patents for Leviton, is the Ground Fault Circuit Interruptor ("GFCI"), a device that is used to prevent electrical shock.  *Id.* ¶¶ 20, 104.

### D.    The Shanghai Meihao Litigation.

In 2005, Leviton sued Universal Security Instruments, Inc. ("USI") and Shanghai Meihao Electric, Inc. ("Shanghai Meihao") for patent infringement under U.S. Pat. No. 6,864,766 ("'766 Patent"), one of its GFCI patents.  Compl.  ¶ 124.  Shanghai Meihao counterclaimed for a declaratory judgment declaring the patent invalid on the ground that it was obtained through "inequitable conduct" because of alleged undisclosed similarities between two co-pending patent applications filed by Leviton.  *Id.* ¶¶ 126-27.

In early 2007, after several years of litigation, Leviton replaced Greenberg as litigation counsel with the law firm of Nixon & Vanderhye.  Leviton subsequently dismissed its claims against Shanghai Meihao with prejudice.  Leviton failed to obtain a reciprocal release of claims

---

[2] http://www.leviton.com/OA_HTML/ibeCCtpSctDspRte.jsp?section=27317&minisite=10026 (last accessed 2/9/10)

[3]http://www.leviton.com/OA_HTML/ibeCCtpSctDspRte.jsp?section=14754&subsection=14969&minisite=10026 (last accessed 2/9/10)

by Shanghai Meihao against Leviton, who responded to the dismissal by seeking an award of

fees and costs. *See Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc., et al.*, 1:05-cv-00889-

AMD (D. Md.), at Dkt. # 133 (Motion to Dismiss); *id.* # 139 (Motion for Costs).[4]  While

Shanghai Meihao no longer sought a formal declaration of the patent's invalidity, it continued to

argue that Leviton's '766 patent was procured through "inequitable conduct," using that as a

basis on which to obtain its attorneys' fees.

On December 23, 2008, Magistrate Judge Susan K. Gauvey of the United States District

Court for the District of Maryland, issued an Opinion and Order granting Shanghai Meihao's

request for costs and fees.  The Magistrate Judge's Opinion was affirmed by the District Court in

May 2009.  Both the Magistrate Judge's Order, and the Opinion affirming it, found that Leviton

had committed "inequitable conduct" in prosecuting and litigating the patents at issue, and had

committed misconduct in discovery in the litigation.  Compl. ¶¶ 130-34.  Leviton has since

appealed that ruling, arguing that "the district court erred in finding inequitable conduct in the

prosecution of the '766 patent and in finding litigation misconduct . . ."  *See* Brief and Reply

Brief of Defendant-Appellant, *Leviton Mfg. Co. Inc., v. Universal Sec. Instruments, Inc. and USE*

*Elec., Inc.,* No. 05-CV-889, at 4 (Fed. Cir. 2009) (attached hereto as Exs. A & B).  Oral

argument on the appeal was heard on February 5, 2010.  *See* Ex. C (Transcript).

### E.    The Instant Litigation

In September 2009, while its appeal challenging the finding of inequitable conduct was

pending, Leviton brought suit against Defendants for alleged malpractice in the prosecution of

the '766 and several other patents.  Most of these allegations reach far into the past, with some

allegations extending back more than ten years into the late 1990s.

---

[4] "[C]ourts routinely take judicial notice of documents filed in other courts, [] not for the truth of
the matters asserted in the other litigation, but rather to establish the fact of such litigation and
related filings."  *Kramer*, 937 F.2d at 774.

Plaintiff's Amended Complaint consists of four categories of allegations: (1) that Defendants did not prosecute full and complete applications for two of Leviton's patents, *see* Compl. ¶¶ 110-15, 215-24; (2) that Defendants intended to deceive the USPTO in prosecuting the application for one of Leviton's patents, *id.* ¶¶ 116-123; (3) that Defendants did not timely file certain applications, causing Leviton to lose several patents under the one-year "on-sale bar" and to pay for unnecessary work, *id.* ¶¶ 167-214; and (4) that Defendants committed misconduct in prosecuting a lawsuit against an alleged infringer, *id.* ¶¶ 124-29, 139-43.

Defendants now file this motion to dismiss for failure to state a claim as to certain claims, and for lack of ripeness with regard to the remaining claims.

## STANDARD OF REVIEW

Motions seeking dismissal on the basis of the statute of limitations are properly resolved under Rule 12(b)(6). *See Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53-55 (2d Cir. 1996); *see also Abbasi v. Herzfeld & Rubin, P.C.*, 863 F. Supp. 144, 146 (S.D.N.Y. 1994) ("[C]onclusory allegations that fail to give a Defendant notice of the material elements of a claim are insufficient as a matter of law to state a claim."); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A motion to dismiss on grounds of ripeness "is jurisdictional in nature and therefore properly considered on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). "The standard for a Rule 12(b)(1) motion to dismiss for

lack of subject matter jurisdiction is 'substantively identical' to the 12(b)(6) standard, except that the plaintiff has the burden of establishing jurisdiction in a 12(b)(1) motion." *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008) (quotation omitted).

## ARGUMENT

## I.    LEVITON'S PATENT PROSECUTION CLAIMS ARE UNTIMELY.

Leviton's allegations of malpractice in patent prosecution – the Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action – are untimely, and should be dismissed. New York's statute of limitations for legal malpractice claims is three years, measured from the occurrence of the alleged wrongdoing, not its discovery. *See* CPLR § 214[6]; *Shumsky v. Eisenstein*, 96 N.Y.2d 164, 166 (N.Y. 2001) ("An action to recover damages for legal malpractice accrues when the malpractice is committed. What is important is when the malpractice was committed, not when the client discovered it.") (citation and internal quotations omitted); *see also Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003) (same). "This is so even if one or several subsequent events have the effect of tolling the Statute of Limitations period." *Glamm v. Allen*, 57 N.Y.2d 87, 93 (N.Y. 1982).

Under the "continuous representation" doctrine, the statute of limitations is tolled until the end of the attorney's representation of the client in connection with the matter giving rise to the malpractice claim. *See Shumsky* 96 N.Y.2d at 167-68. However, the "doctrine tolls the Statute of Limitations only where the continuing representation *pertains specifically to the matter* in which the attorney committed the alleged malpractice." *Id.* at 168 (emphasis added). Plaintiff's Complaint "must assert more than simply an extended general relationship between the professional and client, in that the facts are required to demonstrate continued representation in the *specific matter directly under dispute*." *Zaref*, 192 A.D.2d at 348 (emphasis added) (citations omitted); *Parlato v. Equitable Life Assur. Soc. of U.S.*, 299 A.D.2d 108, 114 (N.Y.

App. Div. 1st Dep't 2002) (holding doctrine inapplicable to a "series of discrete and severable transactions"); *see also Mason Tenders District Council Pension Fund v. Messera*, 958 F.Supp. 869, 888 (S.D.N.Y. 1997) ("New York Courts have repeatedly held that the doctrine is strictly limited to instances where the continuing representation pertains specifically to the matter in dispute, and is not applicable where an attorney provides ongoing general representation.").

As demonstrated below, the acts and omissions alleged by Leviton to constitute malpractice in the prosecution of patents all occurred between 1997 and March 2006, placing them outside the three-year statute of limitations.  Moreover, Leviton's attempt to invoke the "continuous representation" rule to preserve its claims ultimately fails.

### A.     The Alleged Malpractice Occurred Outside the Statute of Limitations.

Leviton alleges a series of acts and omissions that it contends constitute malpractice in the prosecution of patents.  None of the alleged conduct occurred within the statutory period.

### 1.     Leviton's Allegations of Failures to Prosecute "Correct and Complete" Patent Applications Are Not Timely.

Leviton alleges in its Fifth Cause of Action that Defendant Sutton committed malpractice by failing to prosecute a "[c]orrect and [c]omplete" patent application for a ground fault circuit interrupter ("GFCI") invention containing both an "isolated conductor" and a "reset lockout." *See* Compl. ¶¶ 110-15; *id.* ¶¶ 256-59.  According to the Amended Complaint, Leviton's patent application, prepared by Sutton, was deficient in that it did not claim protection for the "isolated conductor" as a stand-alone invention, but rather, only when it was used in tandem with the "reset lockout" device.  *Id.* ¶ 110.  This allegedly caused Leviton to incur additional legal fees and reduced settlement awards in subsequent litigation against infringers.  *Id.* ¶ 113.

Even assuming the truth of these allegations, they are untimely.  The alleged malpractice occurred (and the statute began to run) on August 20, 1999, when the supposedly "incomplete"

patent application was filed. *See* Compl. ¶ 109; *Shumsky*, 96 N.Y.2d at 166. Even assuming the statutory period was tolled during the pendency of the patent application, it began to run again when the patent issued on June 21, 2001, *id.* ¶ 109, and expired three years later.[5]

Leviton separately alleges in its Seventh Cause of Action a failure by Defendants to include complete descriptions in a series of patent applications it describes as relating to a "unique line of wiring devices that encompassed many novel features. . . ." *Id.* ¶ 216. According to the Complaint, the six patent applications filed by Defendants for that invention omitted material information, which went unnoticed because they "did not seek the inventors' review" before filing. *Id.* ¶ 219. This allegedly then led to Leviton incurring additional expense when corrected patents were filed. *Id.* ¶¶ 220-22. These allegations are untimely as well. The alleged malpractice occurred on June 6, 2002, when the original (allegedly defective) patent applications were filed. *Id.* ¶ 218.

### 2.    Leviton's Allegations of Malpractice in the "'766 Patent" Application Are Not Timely.

Leviton alleges in its Fourth Cause of Action that Defendants also committed malpractice when, in April 2004, they filed a patent application seeking protection for the "isolated conductor" technology for which Sutton had not claimed independent protection in the August 1999 application. This application, known as the "'766 patent" (after the last three digits of its patent number), was based on the same design disclosure as the earlier application, and therefore was given the same August 1999 priority date. *Id.* ¶ 116. According to the Complaint, when the '766 patent application was filed, Defendants included within it language that was similar or identical to language that had been used in a different application filed on Leviton's behalf six

---

[5] Separate and apart from the statute of limitations, this allegation relates to conduct that occurred before February 2000, and therefore does not state a claim against Greenberg or Mr. Narcisse, who are not even alleged to have been representing Leviton at the time. *Id.* ¶¶ 5-9.

10

months earlier.  *Id.* ¶¶ 120.  Leviton alleges that Defendants committed malpractice by not disclosing that fact to the USPTO, thereby leaving the '766 patent subject to a potential challenge on the ground that it was obtained through "inequitable conduct."  *Id.* ¶¶ 122-23.

These allegations are again untimely.  The '766 patent application was filed in April 2004, and the patent issued in March 2005.  *Id.* ¶ 116.  Regardless whether the alleged malpractice is considered to be the filing of the application itself, or the failure to disclose its alleged similarity to another pending application, that alleged misconduct ended no later than March 8, 2005, when the patent issued.  *Id.*  Absent a basis for tolling, the statute of limitations therefore expired no later than March 8, 2008 – eighteen months before the Complaint was filed.

### 3.    Leviton's "On-Sale Bar" Claims Are Not Timely.

Leviton alleges in its Sixth Cause of Action that series of patentable inventions as to which it claims Defendants committed malpractice by failing to timely file patent applications. *See* Compl. ¶¶ 167-210; *id.* ¶¶ 261-63.  Regarding each such invention, Leviton generally asserts that it informed Defendants of the invention and the need to file a patent application, but that Defendants did not do so until more than a year after the inventions were on sale in the United States.  *Id.*  According to Leviton, that delay rendered the inventions incapable of being patented due to the "on-sale bar" rule imposed by 35 U.S.C. § 102(b).  *Id.* ¶ 168.  These allegations are untimely.

The alleged malpractice occurred, if at all, on the last date when Defendants could have filed a patent application but failed to do so.  *See Shumsky*, 96 N.Y. at 166 (malpractice action arising from failure to file within statutory period accrues on the date on which the period expired); *Williams v. Lindenberg*, 24 A.D.3d 434, 434 (N.Y. App. Div. 2d Dep't 2005) (plaintiff's malpractice claim accrued "when his time to file a notice of appeal from the adverse order in the underlying mortgage foreclosure action expired").  Taking Leviton's allegations to

be true, each incidence of malpractice occurred between 1997 (for the "Occupancy Sensor Inventions," *see* Compl. ¶ 172), to the early-2000s (for its other inventions, *id.* ¶¶ 175-209).  As to each of these inventions, Defendants' alleged malpractice occurred, if at all, one year after the date on which the products were offered for sale, and are long since time-barred.

### 4.    Leviton's Allegations Regarding a Re-Examination Are Not Timely.

Finally, Leviton alleges in its Eighth Cause of Action that Defendants committed malpractice by defending a patent re-examination without informing Leviton that it was pending. *Id.* ¶¶ 206-13; *id.* ¶¶ 269-73.  However, this re-examination allegedly occurred in 2002, *id.* ¶ 227, and therefore cannot be the basis for any claims filed against Defendants in September 2009.

\*          \*          \*          \*          \*

For these reasons, Leviton's allegations of malpractice in patent prosecution are untimely.  Absent a basis for tolling the statute, the Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action should be dismissed.  *See Fezzani v. Bear*, *Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 630 (S.D.N.Y. 2004) ("It is proper to dismiss claims when it is apparent from the complaint and documents referenced therein that they are barred by the applicable statute of limitations."); *Ghartey*, *supra*, 869 F.2d at 162 ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."); *Francis v. Blaikie Group*, 372 F.Supp.2d 741, 743 n. 2 (S.D.N.Y.2005) (same).

### B.    The "Continuous Representation" Doctrine Does Not Save Plaintiff's Claims.

In response to Defendants' motion to dismiss, Leviton amended its Complaint to allege additional grounds in support of its argument that the statute of limitations is tolled by the "continuous representation" doctrine.  The original Complaint alleged only the existence of a continuing *general* representation, which is insufficient to toll the statute of limitations. *Compare* Complaint, Dkt. # 1, at ¶ 21 ("[f]or approximately 37 years, from 1971 to 2008, when

Leviton terminated the relationship, defendant Sutton represented Leviton in substantially all of its intellectual property matters"), *with Mason Tenders District Council Pension Fund*, 958 F. Supp. at 888 ("[T]he doctrine is strictly limited to instances where the representation pertains specifically to the matter in dispute, and is not applicable where an attorney provides ongoing general representation.").

The Amended Complaint seeks to address that shortcoming, but ultimately fares no better.  Although Leviton goes to great lengths to identify events it alleges occurred within the limitations period, it cannot disguise the fact that those events are not part of the "specific matters" giving rise to their claims, and therefore are not a basis on which to toll the statute of limitations.  Because Leviton bears the burden of pleading (and ultimately of proving) facts sufficient to invoke the doctrine, its failure to do so requires that Counts Four through Eight of the Complaint be dismissed.

> ### 1.    Leviton's Conclusory Allegations of What Was "Contemplated" By the Parties Does Not Toll the Statute of Limitations.

Leviton's first attempt to plead a basis for tolling the statute of limitations is under a new heading "D.  The Scope of Defendants' Continuous Representation."  *See* Compl. ¶¶ 34-39. Leviton devotes that section of the Amended Complaint to making sweeping characterizations about the breadth and scope of Defendants' engagement—portraying it as essentially limitless in both its subject matter and duration.  *Id.*  While Plaintiff alleges that such a limitless and undefined representation was "expressly contemplated" at the time Defendants were engaged for each patent application, *id.* ¶¶ 35-36, they never allege the factual basis for those conclusions. Plaintiff identifies no contract—written or oral—containing these terms; nor any conversation in which such terms were discussed or agreed upon; nor any other facts that they can point to as evidence of Defendants' agreement to take on such an indefinite and limitless representation.

These are precisely the sort of conclusory allegations that are "not entitled to the assumption of truth" on a motion to dismiss. *Iqbal,* 129 S. Ct. at 1951; *see also Milne v. Navigant Consulting, Inc.*, No. 08 Civ. 8964, 2009 WL 4437412, * 6 (S.D.N.Y. Nov. 30, 2009) (same). Leviton's obligation was to allege sufficient facts to show that *Defendants* undertook a representation of the scope they describe. *See Wei Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (N.Y. App. Div. 2d Dep't 2001) ("[A]n attorney-client relationship is established where there is an explicit undertaking to perform a specific task."). They have not alleged a plausible basis for such a finding. Leviton's conclusional allegation that it was "expressly contemplated" Defendants' services were all part of a single matter of indefinite length, is entitled to no weight.[6]

### 2.    Leviton Fails to Show That Any of the Specific Matters in Dispute Continued into the Limitations Period.

Leviton's second attempt to plead a continuing representation does finally involve factual allegations, but none that are sufficient to toll the running of the statute of limitations. As explained above, Leviton's burden is to show that the *specific matters* giving rise to their claims continued into the limitations period. *See Zaref*, 192 A.D.2d at 348.

Here, those specific matters are either the filing of a patent application that Plaintiff contends was negligently prepared, *supra* at 9-11, or the alleged failure to file other patent applications in a timely manner, *supra* at 11-12. None of these matters are identified as occurring into the limitations period. Instead, Plaintiff argues that a variety of actions allegedly taken with respect to *different* matters should be deemed to be part of a single representation.

---

[6]    In *Greene v. Greene*, 56 N.Y.2d 86 (1982), the Court of Appeals found that a legal representation which began with the preparation of a trust continued through the trust's administration. *Id.* at 95. The court based this finding on specific allegations that such an arrangement had been reached not only with the defendants' consent, but at their *suggestion*. *Id.* Such allegations are qualitatively different than the current Plaintiff's conclusory allegations about what was "contemplated" in the abstract.

### a.    Patent Prosecution and Litigation are Distinct Forms of Representation.

Leviton argues that the prosecution of a patent application along with any subsequent litigation regarding that patent constitute a single matter for purposes of the continuous representation rule. *See* Compl. at ¶¶ 40-49.  They are not.  Patent prosecution and patent litigation are fundamentally different forms of legal representation, in which different goals are pursued, in different venues, using entirely different procedures.  Even where one or more of the same attorneys are involved in both representations – the Complaint alleges that Narcisse prosecuted the '766 patent application under Sutton's and Magidoff's supervision, Compl. ¶ 117; Sutton and Magidoff (but not Narcisse) subsequently entered appearances in the Shanghai Meihao litigation, *see* Docket, *Leviton*, *supra*, No. 1:05-cv-00889-AMD (D. Md.) – those attorneys are required to bring fundamentally different skills to each representation, and are required to be licensed separately in each venue. *See* 37 C.F.R. § 10.7 (specifying unique qualifications for the patent bar).

Defendants' representation of Leviton in prosecuting the '766 patent, and later in suing to enforce it, are distinct representations notwithstanding that both involve the '766 patent at some level. *See Sun-Studs, Inc. v. Applied Theory Assoc., Inc.*, 772 F.2d 1557, 1568 (Fed. Cir. 1985) (describing role of counsel in applying for a patent, and distinguishing that "former representation" from the matter that would arise "[s]hould the company later find it necessary to sue on the patent"); *McCoy v. Feinman*, 99 N.Y.2d 295, 298-300, 305-07 (N.Y. 2002) (malpractice claim arising from attorney's alleged failure to prepare and file qualified domestic relations order ("QDRO") not tolled by subsequent litigation in which absence of the QDRO limited client's rights); *see also Bastys v. Rothschild*, No. 97-cv-5154, 2000 WL 1810107, *29 (S.D.N.Y. Nov. 21, 2000) (lawyer who negotiated a pre-nuptial agreement, and later prosecuted

litigation involving that agreement, not engaged in continuous representation); *Zaref*, 192 A.D.2d at 347-48 (allegation of continuing representation on investment and tax matters insufficient to toll limitations on the "particular transaction which is the subject of the action"); *Uehigashi v. Kanamori*, 161 F. Supp. 2d 221, 226 (S.D.N.Y. 2001) ("[T]he attorney-client relationship, however, is subject matter-specific") (citing cases).[7]

The decision in *Luk Lamellen U. Kupplungbau v. Lerner*, 166 A.D.2d 505 (N.Y. App. Div. 2d Dep't 1990), is not to the contrary. In that case, the court upheld an application of the continuous representation doctrine to claims brought against a patent attorney who "continued to represent the plaintiff with regard to the same patent from which the alleged malpractice stems." *Id.* at 507. While the Appellate Division did not comment further on the nature of the ongoing representation, the order under review reflects that the patent prosecution (ending in 1974), and subsequent litigation over that patent (beginning in 1979) were regarded by the court as distinct matters. *See* Dkt. # 29-2, at 212 .[8] The court found, however, that other legal services provided by the attorney were sufficiently related to both representations as to "form a nexus, or bridge" between them. *Id.* No such "bridge" is alleged here, other than through the conclusory (and therefore, empty) allegation about what was "contemplated" to be the scope of the representation. *Supra*, at 13-14. To the extent the holding in *Luk Lumellen* is understood to mean that the continuous representation doctrine tolls the statute of limitations in circumstances

---

[7] *See also In re Seagate Tech., LLC*, 497 F.3d 1360, 1373 (Fed. Cir. 2007) (citing the "significantly different functions of trial counsel and opinion counsel" in patent actions, and the "fundamental difference between th[e] types of legal advice" each provides).

[8] *Id.* ("developed into an attorney-client relationship involving actual federal litigation over the subject patent"); *id.* ("attorney-client relationship that . . . formed in 1979 to combat the federal litigation."); *id.* (distinguishing "the alleged malpractice in the relationship that ended on May 21, 1974 and the <u>new</u> legal relationship established in the communications of April – May 1977") (emphasis in original).

like those alleged here, it is in conflict with the more recent decisions rejecting application of the doctrine to "discrete and severable" matters.  *Parlato*, 299 A.D.2d at 114.

Irrespective of when the Shanghai Meihao litigation began or ended, the '766 patent prosecution ended in March 2005.  That matter did not continue into the statutory period.[9]

### b.    A "Continuing Application" is Not a Continuous Representation on the Same Specific Matter.

Leviton argues that all GFCI patent applications should be treated as a single matter because, after the initial patent application was filed, the other GFCI patent applications were filed as "continuation" or "continuation-in-part" applications.  *See* Compl. at ¶¶ 50-72.  Plaintiff makes this argument because notwithstanding the fact that every application in the GFCI family was filed in or before 2004, *id.* ¶ 52, and every patent application for which Plaintiff claims Defendants committed malpractice *was granted* in or before 2005, *id.*, there is one patent—the '124 patent—that was filed for as a continuation application in 2004, and was not granted until 2008.  *Id.* ¶¶ 63-72.  Leviton evidently claims that the pendency of this application, for which there is no allegation of malpractice, makes it allegations concerning other patents timely.

There is no question that as a matter of substantive patent law, a "continuation" application shares many attributes of the original patent application, including most notably the same underlying invention and the right to claim priority to the date of the original application.  *See Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555-56 (Fed. Cir. 1994).  Within that context, courts will even refer to the two applications as part of the same "continuing application."  *Id.*  That does not mean, however, that these applications are functionally a single matter for purposes of a legal representation.  As one pair of commentators has explained:

---

[9]      Leviton's allegation about a reexamination of the '766 patent fail for the same reason.  As they allege, the reexamination is a separate proceeding occurring after the issuance of the patent.  Compl. ¶ 58.  This "discrete and severable" matter is not a basis for tolling limitations on claims arising from the earlier alleged patent prosecution.  *Parlato*, 299 A.D.2d at 114.

> [T]he applicant may choose to start the prosecution process over
> by filing a continuation application.  Under § 120, an applicant can
> file such a continuation application at any time before the PTO
> actually issues the patent or before the applicant abandons the
> application. Although continuations are commonly filed after a
> final rejection, they are sometimes filed after allowance as well.
> This happens either because the applicant wants the allowed claims
> to issue but also wants to argue for broader claims to be included
> in later patents, or because the applicant decides instead to
> abandon the allowed claims and try for broader claims.
>
> When a continuation application is filed, the prosecution process
> we have just described starts over.  *The continuation application is
> treated just like a new application*, giving the applicant another set
> of chances to persuade the examiner to allow the claims, to further
> amend the claims, or even to hope to get a different examiner.

*Mark A. Lemley & Kimberly A. Moore*,[10] "Ending Abuse of Patent Continuations," 84 B.U. L.

Rev. 63, 69 (2004) (emphasis added); *see also Combined Tactical Sys. Inc. v. Defense Tech.

Corp. of Am.*, 589 F.Supp.2d 260, 264 (S.D.N.Y. 2008) ("The continuation application's

specification describes the same invention as its parent application, but makes new claims

regarding what is original about the invention.").  Indeed, before the Federal Circuit, even

Leviton minimized the connection between the '766 continuation application and litigation

regarding the parent patent applications.  *See* Ex. C (Transcript) at 74.

Defendants respectfully submit that the differences between these applications are

sufficiently great that the pendency of a continuation application for which no malpractice is

alleged, should not serve as the basis for tolling, indefinitely, the statute of limitations on causes

of action relating to other patent applications that have been long since concluded.  *Cf.* Compl. ¶¶

63-72.  The pendency of such continuation applications reflects only the ongoing nature of the

professional relationship—not the ongoing nature of the specific matter from which Plaintiff's

---

[10] Today, the Honorable Kimberly A. Moore, United States Court of Appeals for the Federal
Circuit.  Judge Moore is a member of the panel that is deciding Leviton's appeal.

claims arise. *Cf. Elias v. Albanese*, 2000 WL 1182803, *5 (S.D.N.Y. 2000) ("[U]nder plaintiff's theory of the continuous representation doctrine, a corporate client that engaged the same attorney with respect to different transactions over a period of many years could claim that the statute of limitations was tolled with respect to any legal advice rendered to that client until the passage of three years after the relationship finally ended. This, plainly, is not the law.").[11]

> ### c.    Continued Alleged "Inaction" is Not a Basis for Finding a Continuous Representation.

With respect to the patents allegedly subjected to the "on-sale bar," Leviton principally identifies actions taken by the U.S. Patent and Trademark Office ("PTO") as the basis for its contention that Defendants were engaged in a continuous representation on those matters. *See* Compl. ¶ 76 & Table Two. The fact that for the vast majority of these patents, Plaintiff cannot identify anything that *Defendants* themselves did during the statutory period, suggests only that the matters in question were at a conclusion. As to those patent applications, Leviton does not properly invoke the continuous representation rule.[12]

> ### d.    Plaintiff Has No Basis for Tolling Its Re-Examination Claim.

The additional allegations in the Amended Complaint relating to what Plaintiff calls the "'Re-examination' Patent," *id.* ¶¶ 91-95, only reinforce Defendants' conclusion that the claim is

---

[11] For the same reasons, Count VII, the "Multiplication of Fees" theory of liability, is untimely. In that claim, Leviton alleges that defendants committed errors in patent applications filed between 2000 and 2004. *See* Compl. ¶¶ 216-25. The Amended Complaint does not allege continuing work on those matters; instead, it seeks to toll limitations on the basis of subsequent "continuation" applications for which no malpractice is alleged. *Id.* ¶¶ 76-90.

[12] For purposes of this Rule 12(b)(6) motion, Defendants do not contest that the Amended Complaint alleges conduct within the limitations period for the following alleged "on-sale" bar representations: '793, '263, '319, '896, '834 and '069. Compl. ¶ 76. Because these allegations make up only a small portion of a single claim (Count VI) in Plaintiff's Complaint, no answer is required until resolution of Defendants' motion to dismiss the remaining allegations. *See Ricciuti v. N.Y.C. Transit Auth.*, No. 90-cv-2823, 1991 WL 221110, at *2 (S.D.N.Y. Oct. 3, 1991). To the extent an answer is required, Defendants deny the allegations.

untimely.  The only allegations Plaintiff makes with respect to that re-examination are dated as

having occurred in 2002.  *Id.* ¶¶ 91-93.  To render their claims timely, Leviton alleges that even

today, some seven years later, Defendants' power of attorney with respect to that matter had not

been revoked.  *Id.* ¶ 94.  They do not, however, identify any action taken by Defendants pursuant

to that power of attorney in the intervening seven years, nor any action they agreed to take.  The

existence of a dormant power to act in Leviton's behalf, is plainly not evidence of a continuing

representation that would toll limitations for seven years—and into the indefinite future.

## II.    LEVITON'S EQUITABLE CLAIMS ARE IMPERMISSIBLY DUPLICATIVE OF THEIR LEGAL MALPRACTICE CLAIMS.

The Amended Complaint contains three new causes of action, arising under common law

doctrines:  Unjust Enrichment (Count Nine); Constructive Trust (Count Ten); and Constructive

Fraud (Count Eleven).  These causes of action are expressly based on the same factual

allegations that underlie the Sixth Cause of Action, for legal malpractice relating to the "on-sale

bar."  *See* Compl. at ¶¶ 275-97.  Because these claims "ar[i]se from the same facts" as Leviton's

legal malpractice claims, and "d[o] not allege distinct and different damages," they must be

dismissed as "duplicative of the legal malpractice cause of action.  *See Town of Wallkill v.

Rosenstein*, 40 A.D.3d 972, 974 (N.Y. App. Div. 2d Dep't 2007); *Town of North Hempstead v.

Winston & Strawn, LLP*, 28 A.D.3d 746, 749 (N.Y. App. Div. 2d Dep't 2006).

Even if the Court did not dismiss those claims outright, they would be subject to the same

three-year statute of limitations as the legal malpractice claims, and therefore should be

dismissed as untimely for the same reasons.  *See Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655,

661 (SDNY 2007); *Spinale v. Tenzer Greenblatt, LLP*, 309 A.D.2d 632 (N.Y.App. Div. 1st

Dep't 2003); *see also Carruthers v. Flaum*, 388 F.Supp.2d 360, 372-73 (S.D.N.Y. 2005) ("[a]n

action to recover for attorney malpractice . . . in New York is governed by a three-year statute of limitations, regardless of whether the underlying theory is based on contract or tort.").

## III.    LEVITON IMPROPERLY PLEADS ITS PATENT PROSECUTION CLAIMS AGAINST ALL DEFENDANTS.

The timing of the alleged malpractice in patent prosecution is relevant for a second reason independent of the statute of limitations.  Leviton acknowledges that Messrs. Sutton and Magidoff did not join Greenberg until February 2000, *see* Compl. ¶¶ 5 & 7, and that Leviton did not become a Greenberg client until after they did so, *id.* ¶ 26.  As outlined above, much of the alleged malpractice occurred, if at all, in the 1990s without even involvement of Greenberg or Narcisse, yet Plaintiff nevertheless joins Greenberg as a Defendant in all causes of action.

Thus, Plaintiff's Fifth Cause of Action charges that "Defendants Greenberg Traurig and Sutton committed legal malpractice . . . by failing to timely prosecute correct and complete claims for plaintiff's 'isolated conductors' invention. . ."  *Id.* ¶ 256.  But as the Complaint elsewhere makes clear, the patent application in question was filed "[o]n August 20, 1999," *id.* ¶ 109, a time when Leviton was not even a client of the firm.  Likewise, Leviton *admits* that a substantial number of its allegations concerning the "on-sale bar" (Count Six) relate to the period before "Sutton and Magidoff affiliated with defendant Greenberg Traurig."  *Id.* ¶ 192.  While Leviton asserts that Greenberg "undertook the responsibility to timely file [the] patent applications which could still be timely filed, and failed to do so" – it does not say which patents fall into that category, and simply asserts the entire Count against Greenberg anyway.

It is axiomatic that "[t]o recover damages for legal malpractice, a plaintiff must prove, *inter alia*, the existence of an attorney-client relationship."  *Wei Cheng Chang v. Pi*, 288 A.D.2d 378, 380 (N.Y. App. Div. 2d Dep't 2001).  "[A]n attorney-client relationship is established where there is an explicit undertaking to perform a specific task."  *Id.*  Greenberg cannot be held

liable to Leviton for actions taken when Leviton was not a client of the firm.  It is therefore entitled to dismissal of Leviton's Fifth Cause of Action with prejudice, and to those portions of the Sixth Cause of Action that relate to acts or omissions occurring before February 2000.

## IV.   LEVITON'S ALLEGATIONS OF LITIGATION MISCONDUCT ARE NOT RIPE.

Leviton's First, Second and Third Causes of Action seek damages arising from Defendants' prosecution of a lawsuit on Leviton's behalf against Shanghai Meihao, an alleged patent infringer.  *See* Compl. ¶¶ 235-50.  These claims are not ripe, because Leviton has not yet sustained the alleged damages, if it ever will.  Plaintiff's claims should be dismissed.

### A.   Leviton Has Yet to Sustain Any Damages, and May Never Sustain Damages At All.

Leviton's allegations of litigation misconduct are based primarily on the findings of Magistrate Judge Susan K. Gauvey of the United States District Court for the District of Maryland, in an Opinion and Order dated December 23, 2008.  Leviton alleges that Magistrate Judge Gauvey determined that Defendants:  had violated USPTO regulations by failing to disclose the pendency of two patent applications containing similar language, *see* Compl. ¶¶ 124-29;  had committed "inequitable conduct" in securing the '766 patent, *id.* ¶¶ 130--34; and had committed discovery misconduct by declining to appear or produce documents in response to a subpoena, *id.* ¶¶ 139-43.  Magistrate Judge Gauvey's opinion was affirmed by the District Court in May 2009.  *Id.* ¶ 130.

For its damages, Leviton contends that it was taxed Shanghai Meihao's costs and attorneys' fees, *id.* ¶¶ 144-45, which Leviton has tendered to the clerk of Court to hold in escrow pending the outcome of the appeal, *id.* ¶ 146.  Leviton further alleges that it has suffered "harm to the value of [its] GFCI patents, and unless the Davis decision is reversed on appeal, Leviton will suffer additional financial harm . . ."  *Id.* ¶ 148.

Leviton is contesting the adverse rulings in an appeal that is now pending before the United States Court of Appeals for the Federal Circuit. *See* Compl. ¶¶ 76, 84; *see also* Ex. A & B (Brief and Reply Brief of Appellant Leviton).[13]  The appeal challenges not only the award of costs and fees to Shanghai Meihao, but also the underlying findings of "inequitable conduct" and litigation misconduct.  Specifically, Leviton argues:

- That "Narcisse took appropriate action to bring the double-patenting issue to the attention of the PTO . . ." Ex. A at 32-33;

- That "[a]t most, Narcisse's failure to disclose [the Germain application]. . . was a minor technical mistake with no practical effect. . ." *Id.* at 35-36;

- That "Narcisse offered not only a plausible explanation but a very reasonable explanation for why he did not disclose the [Germain] application" *Id.* at 49;  and

- That the Court's "finding of litigation misconduct . . . was based on the erroneous finding of inequitable conduct," and should be vacated for that reason.  *Id.* at 56,

The outcome of Leviton's appeal is unknown.  However, at oral argument on February 5, Chief Circuit Judge Michel and Circuit Judges Prost and Moore showed extensive interest in these issues, allowing each side to argue well over their allotted time.  *See* Ex. C (Transcript).  In response to questions from the panel about the status of this lawsuit, counsel for Leviton acknowledged that its "outcome . . . may in part depend on what [the Federal Circuit] does" on appeal.  *Id.* at 24.  At the conclusion of the argument, Chief Judge Michel noted the "very important and difficult" nature of the case.  *Id.* at 82.

### B.    Leviton's Allegations Should Be Dismissed as Premature.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  "In a legal malpractice action, a plaintiff must show [*inter alia*] . . . that the attorney's

---

[13] The Court is permitted to take judicial notice of Leviton's statements in the appeal, not for the truth of the matter asserted, but as proof of the positions it has taken.  *Kramer*, 937 F.2d at 774.

breach of [his or her] professional duty caused the plaintiff's *actual damages*."  *McCoy*, 99

N.Y.2d at 302 (emphasis added); *see Luniewski v. Zeitlin*, 188 A.D.2d 642, 643 (N.Y. App. Div.

2d Dep't 1992) ("Mere speculation of a loss resulting from an attorney's alleged omissions is

insufficient to sustain a prima facie case sounding in legal malpractice.").  Where, as here,

damages are speculative because they depend upon the outcome of separate, pending litigation,

New York courts do not hesitate to dismiss the claim.

Thus, in *Igen, Inc. v. White*, 250 A.D.2d 463 (N.Y. App. Div. 1st Dep't 1998), the Court

dismissed a cause of action for malpractice arising from the defendant's alleged failure to file a

patent application before the applicable filing deadline.  *Id.* at 465-66.  The Plaintiff could

establish no actual damages that had been incurred by the date their complaint was filed, yet

argued "that it should be permitted to establish the amount of future damages upon trial."  *Id.* at

465.  The Court rejected that argument, finding that because "plaintiff can point to no actual

damage that has been incurred . . . , an essential element of the tort of negligence is lacking, and

the complaint must be dismissed for failure to state a cause of action."  *Id.* at 466.  Notably, the

Court rejected an argument that "damages" could consist of the loss of anticipated future

royalties:  "What plaintiff's argument overlooks is that it has sustained no injury unless there has

been an infringement against which its patent would have afforded a right of recovery."  *Id.* at

464-65.  While *Igen* was decided at the summary judgment stage, Leviton's failure even to

*allege* a concrete injury that is not contingent on future events, is fatal to its claim. *See also*

*Oldcastle Precast, Inc. v. U.S. Fidelity & Guar. Co.*, 458 F. Supp. 2d 131, 145 (S.D.N.Y. 2006)

(claim was "clearly premature" where it sought reimbursement for a payment obligation that

remained the subject of separate litigation pending in another court); *Lopes v. Mangiatordi,*

*Maher & Lemmo, LLC*, 6 Misc.3d 1004(A), 2004 WL  3058150 (N.Y. Sup. Ct. 2004)

(dismissing cause of action on ground that "[t]he plaintiff herein cannot show that he has

sustained demonstrable damages for legal malpractice proximately caused by the defendants' alleged negligence until after the resolution of the underlying personal injury action, if then").

For the same reasons, Leviton's allegations against Greenberg in its First, Second and Third Causes of Action are premature, and should be dismissed pending adjudication of Leviton's appeal in the Shanghai Meihao litigation.  Until that appeal is decided, Leviton will not actually pay any of the costs or fees it was ordered to pay.  Likewise, if the Court of Appeals overturns the District Court's finding of inequitable conduct, Leviton's fears that such a finding will be used against it by infringers will not be realized.  In any event, because Leviton identifies nothing more than an abstract diminution in the "value" of its patent, Compl. ¶ 86, and not any actual infringement or tangible loss, its alleged damages remain too speculative to support a claim of malpractice.  *Igen*, 250 A.D.2d at 464-65.

## CONCLUSION

For the foregoing reasons, Leviton's claims of malpractice in patent prosecution (Counts Four through Eight) and its equitable claims (Counts Nine through Eleven), should be dismissed with prejudice, while its claims of litigation misconduct (Counts One through Three) should be dismissed without prejudice.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/s/ Kevin M. Downey
Kevin M. Downey (admitted *pro hac vice*)
Alex G. Romain (admitted *pro hac vice*)
Carl R. Metz (admitted *pro hac vice*)
Corey M. Then (admitted *pro hac vice*)
725 Twelfth Street, N.W.
Washington, DC  20005


/s/  David Francescani
David Francescani (Bar No. DF9701)

Karolina Jesien (Bar No. KJ7292)
FISH & RICHARDSON, P.C.
601 Lexington Ave – 52nd Floor
New York, NY  10022-4611

*Counsel for Defendants Greenberg Traurig
LLP, Paul J. Sutton, Barry G. Magidoff and
Claude R. Narcisse*

February 9, 2009