UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

LEVITON MANUFACTURING CO., INC.,

                       Plaintiff,                    09 CV 8083 (GBD)(THK)

       -against-

GREENBERG TRAURIG LLP, PAUL J. SUTTON,
BARRY G. MAGIDOFF, and CLAUDE R.
NARCISSE,
                 Defendants.
-------------------------------------------------------------X

**PLAINTIFF LEVITON'S MEMORANDUM OF LAW
IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS</u>**

                    JEFFREY A. JANNUZZO, ESQ.
                    10 East 40th Street, 35th Floor
                    New York, NY 10016-0301
                    (212) 932-8524

                    KALOW & SPRINGUT LLP
                    488 Madison Avenue
                    New York, NY 10022
                    (212) 813-1600

                    *Counsel for plaintiff Leviton Mfg. Co., Inc*

.

 Dated: March 2, 2010

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    THE MATERIAL DATE FOR THE STATUTE OF LIMITATIONS
      IS THE DATE A *RELATED* REPRESENTATION *ENDED*  . . . . . . . . . . . . . . . . . . . 3

II.   UNDER RECENT CASE LAW, IT IS DISPOSITIVE THAT
      DEFENDANTS WERE USPTO COUNSEL OF RECORD  . . . . . . . . . . . . . . . . . . . . 6

III.  THE FOURTH AND FIFTH CAUSES OF ACTION ARE TIMELY . . . . . . . . . . . . . . 8

      A.    Representation in Patent Litigation Is Representation on the Same or Related
            Matter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    The Case Law, USPTO Filings, And Their Invoices Are Dispositive Against
            Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Greenberg Traurig Is Liable On The Fourth and Fifth Causes of Action . . . . . 14

IV.   THE SIXTH THROUGH EIGHTH CAUSES OF ACTION ARE TIMELY . . . . . . . . 14

      A.    Defendants Conceded Continuous Representation On Certain On-Sale Bar
            Patents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      B.    Defendants Were Still Counsel of Record, and Acting In That Capacity. . . . . 16

      C.    Greenberg Traurig Is Liable For The Older On-Sale Bar Patents . . . . . . . . . . 16

      D.    The Seventh And Eighth Causes of Action Are Timely . . . . . . . . . . . . . . . . . 17

V.    THE NINTH, TENTH AND ELEVENTH CAUSES
      OF ACTION ASSERT VALID AND NON-DUPLICATIVE CLAIMS  . . . . . . . . . . 17

VI.   THERE IS NO RIPENESS ISSUE, AND LEVITON
      ADEQUATELY PLED DAMAGES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      A.    The First And Second Causes of Action Will Be Untouched By The Appeal  . 19

      B.    The Third Cause of Action Is Res Judicata And Thus Ripe. . . . . . . . . . . . . . . 21

      C.    Leviton Adequately Pled Damages To The '766 Patent . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

Bastys v. Rothschild, 200 WL 1810107 (S.D.N.Y 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Beasley v. Avery Dennison Corp., 2006 WL 925069 (W.D.Tex. 2006) . . . . . . . . . . . . . . . . 22

Carruthers v. Flaum, 388 F.Supp.2d 360 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Godfrey v. Eames, 68 U.S. 317 (1864) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Guthrie v. Flanagan, 2007 WL 4355320 (E.D.Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Huron Holding Corp. v. Lincoln Mine Operating Co.,
312 U.S. 183, 61 S.Ct. 513 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Icahn v. Todtman, Nachamie, Spizz & Johns, 2001 WL 1160582 (S.D.N.Y. 2001) . . . . . . . . 6

In re Food Management Group, LLC, 380 B.R. 677 (Bkrtcy.S.D.N.Y.2008) . . . . . . . . . . . . . 21

In re Seagate Technology, LLC, 497 F.3d 1360 (2nd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 11

Malmsteen v. Berdon, LLP, 477 F.Supp.2d 655 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . 19

New York State Nat. Organization for Women v. Terry, 159 F.3d 86 (2nd Cir. 1998) . . . . . . . 21

Nobile v. Schwartz, 56 Fed.Appx. 525 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir.2003) . . . . . . . . . . . . . 21

RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco,
2009 WL 2580354 (D.N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Smartix Intern. Corp. v. Garrubbo, Romankow & Capese, P.C.,
2009 WL 857467 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sun Studs, Inc. v. Applied Theory Associates, Inc., 772 F.2d 1557 (Fed.Cir. 1985) . . . . . . . . 11

TBC Consoles, Inc. v. Forecast Consoles, Inc.,
2009 WL 2337138 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Touchcom v. Bereskin & Parr LLP, 1:07cv0114 (JCC)(E.D.Va. 2010) . . . . . . . . . . . . . . . . . . 7

Transco Prods. v. Performance Contracting, 38 F.3d 551 (Fed. Cir. 1994) . . . . . . . . . . . . . . 12

Washington v. State Street Bank & Trust Co.,
14 Fed.Appx. 12, 16, 2001 WL 812315 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

State Cases

Aaron v. Roemer, Wallens & Mineaux, LLP,
272 A.D.2d 752, 707 N.Y.S.2d 711 (Third Dept. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Byron Chemical Co., Inc. v. Groman, 61 A.D.3d 909,
877 N.Y.S.2d 457 (Second Dept. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

CLP Leasing Co., LP v. Nessen, 12 A.D.3d 226, 784 N.Y.S.2d 535 (First Dept. 2004) . . . . . . 4

Corless v. Mazza, 295 A.D.2d 848, 744 N.Y.S.2d 249 (Third Dept. 2002) . . . . . . . . . . . . . . . 8

Deep v. Boies, 53 A.D.3d 948, 863 N.Y.S.2d 269 (Third Dept. 2008) . . . . . . . . . . . . . . . . . . 6

Fielding v. Kupferman, 65 A.D.3d 437, 885 N.Y.S.2d 24 (First Dept. 2009) . . . . . . . . . . . . 23

Glamm v. Allen, 57 N.Y.2d 87, 453 N.Y.S.2d 674 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Golub v. Baer, Marks & Upham, 172 A.D.2d 489, 567 N.Y.S.2d 843 (Second Dept. 1991) . 12

Gravel v. Cicola, 297 A.D.2d 620, 747 N.Y.S.2d 33 (Second Dept. 2002) . . . . . . . . . . . . . . 13

Gray v. Wallman & Kramer, 224 A.D.2d 275, 638 N.Y.S.2d 18 (First Dept.1996) . . . . . . . . . 6

Hansen v. Brognano, 137 A.D.2d 880, 524 N.Y.S.2d 862 (Third Dept. 1988) . . . . . . . . . . . 16

Hasty Hills Stables, Inc. v. Dorfman, Lynch, Knoebel & Conway, LLP,
52 A.D.3d 566, 860 N.Y.S.2d 182 (Second Dept. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

HNH Intl. Ltd. v. Pryor Cashman Sherman & Flynn LLP,
63 A.D.3d 534, 881 N.Y.S.2d 86 (First Dept. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Igen, Inc. v. White, 250 A.D.2d 463, 672 N.Y.S.2d 867 (First Dept.1998) . . . . . . . . . . . . . . 22

InKine Pharmaceutical Co., Inc. v. Coleman, 305 A.D.2d 151,
759 N.Y.S.2d 62 (First Dept. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Keller v. Denny, 352 S.E.2d 327 (Sup.Ct.Va. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Luk Lamellen U. Kupplungbau GmbH v. Lerner,
166 A.D.2d 505, 560 N.Y.S.2d 787 (Second Dept. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McCoy v. Feinman, 99 N.Y.2d 295, 755 N.Y.S.2d 693 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Montes v. Rosenzweig, 21 A.D.3d 460, 800 N.Y.S.2d 444 (Second Dept. 2005) . . . . . . . . . . . 5

Parlato v. Equitable Life Assur. Soc. of U.S., 299 A.D.2d 108,
749 N.Y.S.2d 216 (First Dept. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pellati v. Lite & Lite, 290 A.D.2d 544, 736 N.Y.S.2d 419 (Second Dept. 2002) . . . . . . . . . . . 3

Reed v. Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman,
278 A.D.2d 296, 718 N.Y.S.2d 200 (Second Dept. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Shumsky v. Eisenstein, 96 N.Y.2d 164, 726 N.Y.S.2d 365 (2001) . . . . . . . . . . . . . . . . . . . . . 3

Stampfel v. Eckhardt, 143 A.D.2d 184, 531 N.Y.S.2d 814 (Second Dept. 1988) . . . . . . . . . . 11

Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg,
199 A.D.2d 45, 604 N.Y.S.2d 947 (First Dept. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,
56 A.D.3d 1, 865 N.Y.S.2d 14 (First Dept. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Waggoner v. Caruso, 68 A.D.3d 1, 886 N.Y.S.2d 368 (First Dept. 2009) . . . . . . . . . . . . . . . . 5

Zaref v. Berk & Michaels, P.C., 192 A.D.2d 346, 595 N.Y.S.2d 772 (First Dept. 1993) . . . . . 4

<u>Statutes</u>

15 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

35 U.S.C. 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

35 U.S.C. 120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

37 C.F.R. 1.56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

37 C.F.R. §1.33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Other Authority</u>

MPEP 201.07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## PRELIMINARY STATEMENT

Defendants have refiled substantially the same Memorandum they previously submitted, and with one exception, they still ignored the dispositive case law they had omitted from their first effort.

Defendants still passed lightly over the fact that two federal judges have ruled that they intentionally misled the U.S. Patent Office, and sanctioned Leviton over a million dollars because of their conduct. Magistrate Gauvey's 128-page decision determined that defendants:

> [P]layed "fast and loose" with the governing law, ignoring their overarching duty of candor and disclosure complying with the governing statute, regulations and manual provisions. *Compl. ¶135; Exh. B (Gauvey Dec. at 62).*

Defendants also still avoided mentioning the allegations of the First and Second Causes of Action that they had breached their fiduciary duty to their long-time client Leviton by commencing <u>and continuing</u> the litigation before Judge Davis, when they knew or it was obvious that they would be adverse witnesses against their own client, and that they were disloyal to their client so they could both: (a) continue to earn millions of dollars in fees for that litigation, and (b) prevent any other counsel from intruding on their monopoly on the tens of millions they were earning on Leviton's patent business. As Judge Davis put it:

> The inference is inescapable that the misguided efforts of Leviton's counsel to resist discovery on inequitable conduct arose in significant part because <u>it was members of that firm that had engaged in such conduct</u>. Under the circumstances, this case played out quite predictably. *(Compl.¶143) (Emphasis added.)*; *Exh. A (Davis Dec. at 14).*

Defendants even still blame their client for trying to mitigate the damages that defendants inflicted, by taking an appeal from Judge Davis's sanction decision. Defendants' latest Memorandum could still not dispute that if Leviton had not taken that appeal, these defendants

would now be arguing that it had "failed to attempt to mitigate." Nor could defendants even now point to any case law suggesting that a client's attempt to mitigate by taking an appeal of a sanctions decision was relevant to the merits of a malpractice action.

Most importantly, defendants' arguments on the fundamental issues on their motion still could not address the fatal defects pointed out in Leviton's prior Memorandum. The defendants' assertions against "ripeness" fall in the face of hornbook law that a federal judgment is res judicata from its date of entry. Defendants still could not identify any case suggesting that taking an appeal from an entered judgment rendered "unripe" any action relating to that judgment.

The defendants' arguments against continuous representation are founded both on a fundamental error of analysis, and on their inability to respond to the pleaded facts. The lawyer's representation does not need to be on the identical matter from which the malpractice arises; it need only "pertain" or "relate to" that matter. Moreover, any questions fact on whether the representation was related are required to be submitted to the jury. It is only where the subsequent representation is "unrelated" as a matter of law that continuous representation can be denied at the pleading stage.

Leviton showed in its prior Memorandum, and shows again here, that the representation was not merely "related," but was in fact identical. Defendants' attempts to slice and dice their patent work by claiming that working on the same patent is not really working on the same patent because a "continuation" of that patent is not really that patent is simply contrary to the law, to common sense, and to the pleaded facts. It also ignores that defendants undertook representation on protecting the <u>invention</u>, not merely a particular patent application related to it.

And after Leviton went to the trouble to wade through thousands of pages of defendants' invoices to show that defendants were still billing it for legal work on those inventions

until shortly before they were sued, defendants pretended that detailed pleading did not exist.

A decision in the Eastern District of Virginia, released while these papers were in process, is on-point.  In *Touchcom v. Bereskin & Parr LLP*, that the defendants were still counsel of record at the USPTO rendered the representation continuous, and defeated the statute of limitations motion.  Defendants were Leviton's USPTO counsel of record on all the patents in this lawsuit until at least 2008.  Defendants' motion should be denied for that reason alone.

### I.  THE MATERIAL DATE FOR THE STATUTE OF LIMITATIONS IS THE DATE A *RELATED* REPRESENTATION *ENDED*

As they did in their original Memorandum, defendants pounded the immaterial proposition that a malpractice cause of action accrues when the malpractice is committed, and they advanced the false proposition that to be continuous, the subsequent representation must be on the identical matter in question.  Under New York law, the continuous representation rule applies to protect the clients of lawyers until three years after a related representation ends.  As shown *infra*, the defendants' representation was in fact on the identical matter, but that is icing on the cake, because to invoke the rule, the subsequent representation must merely be not "unrelated."

Defendants correctly quote but then ignore the operative language on continuous representation.  Under *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 166, 169-171, 726 N.Y.S.2d 365 (2001) and the cases that follow it, the subsequent representation need only "pertain to" or "relate to" the malpractice matter.  Cases are legion that continuous representation will apply so long as the subsequent representation is "related." *E.g., Pellati v. Lite & Lite*, 290 A.D.2d 544, 545, 736 N.Y.S.2d 419, 420 (Second Dept. 2002)("the legal services rendered by the defendants were related to the matter from which the malpractice claim arose.")*(Emphasis added.)*; *Reed v. Jaspan, Ginsberg, Schlesinger, Silverman & Hoffman*, 278 A.D.2d 296, 718 N.Y.S.2d 200, 201 (Second Dept. 2000)("the legal services rendered by the defendants were related to the matter from which

the malpractice claim arose")*(Emphasis added.)*.

By contrast, the cases which deny application of continuous representation do so because the subsequent representation was "unrelated," not that it was not the same or not identical. *E.g.*, *Byron Chemical Co., Inc. v. Groman*, 61 A.D.3d 909, 911, 877 N.Y.S.2d 457, 459 (Second Dept. 2009)("subsequent representation in matters <u>unrelated</u> to the specific matter that gave rise to the alleged malpractice was insufficient")*(Emphasis added.)*; *Hasty Hills Stables, Inc. v. Dorfman, Lynch, Knoebel & Conway, LLP,* 52 A.D.3d 566, 567, 860 N.Y.S.2d 182, 183 (Second Dept. 2008) ("subsequent representation . . . in matters <u>unrelated</u> to the specific matter that gave rise to the alleged malpractice was insufficient")*(Emphasis added.)*; *CLP Leasing Co., LP v. Nessen*, 12 A.D.3d 226, 227, 784 N.Y.S.2d 535, 536 (First Dept. 2004)("The insurance matter reflected in defendants' billing statements was <u>unrelated</u> to the litigation conduct that they criticized.") *(Emphasis added.)*

Defendants rely on *Parlato v. Equitable Life Assur. Soc. of U.S.*, 299 A.D.2d 108, 114, 749 N.Y.S.2d 216, 222 (First Dept. 2002) for the proposition that "discrete and severable transactions" do not count towards continuous representation. Defendants omitted that *Parlato* concerned not lawyers sued for negligence, but an investment advisor sued for fraud. The lawsuit concerned particular fraudulent transactions, which were outside the six-year statute, and which were in fact "discrete and severable;" there simply was never an issue as to whether they were "related" to other transactions. *Parlato* stands only for the proposition that frauds committed more than six years ago cannot be sued upon, even if other frauds occurred thereafter. Defendants' other case, *Zaref v. Berk & Michaels, P.C.*, 192 A.D.2d 346, 347, 595 N.Y.S.2d 772 (First Dept. 1993), likewise did not concern lawyers' negligence, but financial advisors selling of investments; it held that doing the plaintiff's tax returns did not toll the statute for the unrelated matter of selling the

plaintiff faulty high-risk investments. Defendants' cases simply apply the New York rule that continuous representation will be denied only where the representation was "unrelated."

Moreover, these cases for financial advisors selling investments simply do not apply to claims by a client injured by his lawyer's malpractice. Recent New York cases have gone out of their way to protect the clients of lawyers, and applied continuous representation to sustain malpractice complaints against law firms, even where the offending partner had quit the firm far more than three years before the lawsuit was commenced, and the client's ties to the former law firm had been severed. *HNH Intl. Ltd. v. Pryor Cashman Sherman & Flynn LLP*, 63 A.D.3d 534, 881 N.Y.S.2d 86 (First Dept. 2009); *Waggoner v. Caruso*, 68 A.D.3d 1, 886 N.Y.S.2d 368 (First Dept. 2009)(statute tolled as to Pillsbury Winthrop even though partner had quit six years before action commenced). The long-standing principle is that a client "cannot be expected to jeopardize a relationship with the attorney handling his or her case during the period that the attorney continues to represent him." *Waggoner v. Caruso*, *supra at 373,* citing *Glamm v. Allen*, 57 N.Y.2d 87, 94, 453 N.Y.S.2d 674, 677 (1982).

Once it is shown that the representation is at least related, continuous representation applies for so long as the client reasonably believes that the lawyer is representing him. *Shumsky v. Eisenstein,* 96 N.Y.2d 164, 166, 169-171, 726 N.Y.S.2d 365 (2001). In *Schumsky*, the defendant lawyer was retained in 1993 to prosecute an action for breach of contract. The statute of limitations on the breach of contract claim expired in 1994. In 1997, more than three years after the accrual date, the clients learned that the defendant had let the statute expire, and they sued. The accrual date was immaterial. Once the lawyer was retained to prosecute the matter, the statute was tolled at least until the clients had reasonable notice that he withdrew from the representation.

*Schumsky* was applied in *Montes v. Rosenzweig*, 21 A.D.3d 460, 800 N.Y.S.2d 444

(Second Dept. 2005), where the defendant lawyer committed malpractice in 1996 by letting the statute of limitations expire on a wrongful death case. Notwithstanding the expiration of time to sue on the wrongful death case, the lawyer continued to represent the decedent's distributees in trying to obtain letters of administration for the wrongful death case until 2003. The continuous representation rule tolled the Statute until the representation concluded.

Where there is any question of fact as to whether the subsequent representation was related, or when it ended, the jury must decide continuous representation. *Nobile v. Schwartz,* 56 Fed.Appx. 525 at 2 (2nd Cir. 2000)(reversing district court because questions of fact existed); *Deep v. Boies,* 53 A.D.3d 948, 950, 863 N.Y.S.2d 269, 271 (Third Dept. 2008)(where no engagement letter, whether copyright litigation tolled statute for a distinct misappropriation claim was question of fact); *Icahn v. Todtman, Nachamie, Spizz & Johns,* 2001 WL 1160582 at 3-4 (S.D.N.Y. 2001) (even where client lost confidence in firm, but firm continued to receive court papers, question of fact existed*); Gray v. Wallman & Kramer*, 224 A.D.2d 275, 276, 638 N.Y.S.2d 18, 19 (First Dept.1996)(where firm had been replaced, but accepted service of papers, question of fact existed); *Carruthers v. Flaum*, 388 F.Supp.2d 360, 373-374 (S.D.N.Y. 2005)(client's merely pleading his belief that lawyer still represented him on the matters at issue raised question of fact).

Simply put, defendants' motion must fail unless, as a matter of law, the subsequent representation was "unrelated." As set forth below, that is just not so. Either defendants continued to represent Leviton as a matter of law on the same or a related matter, or a question of fact exists. Either way, defendants' motion must be denied.

## II.  UNDER RECENT CASE LAW, IT IS DISPOSITIVE THAT DEFENDANTS WERE USPTO COUNSEL OF RECORD

Both in its original and its amended Complaints, Leviton pled that defendants were counsel of record before the USPTO on all the patents at issue, and that they continued to be

counsel of record until 2008, and even beyond. *Compl. ¶33 (orig compl.), ¶36-39 (amended).* Under *37 C.F.R. §1.33(a) & (c),*[1] the defendants were the <u>sole</u> recipients of correspondence and notices from the USPTO. The Eighth Cause of Action shows the overwhelming importance of being USPTO counsel of record: Leviton never even knew that a third party had attacked a Leviton patent by demanding a re-examination proceeding, because only defendants were notified by the USPTO, and they never told Leviton. *Compl. ¶228-230.*

In New York, continuous representation has never been denied where a lawyer was counsel of record, except where it was shown that the relationship between lawyer and client was irretrievably ruptured, and the client was in the process of getting new counsel. *E.g.*, *Aaron v. Roemer, Wallens & Mineaux*, LLP, 272 A.D.2d 752, 755, 707 N.Y.S.2d 711, 714 (Third Dept. 2000)(client's letter to court consented to withdrawal because of "fractured relationship;" end of representation dated from letter, not from order allowing withdrawal); *compare Deep v. Boies*, *supra* (continuous representation while counsel of record, notwithstanding that firm had applied to withdraw).

While this Memorandum was being written, *Touchcom v. Bereskin & Parr LLP*, 1:07cv0114 (JCC)(E.D.Va. 2010)[Dkt. No. 80] was decided. *Exh. C. Touchcom* rejected the identical argument that defendants make here, *i.e.*, that their representation ended for statute of limitations purposes when the patent issued. *Id. at 11.* In finding the representation to be continuous thereafter, *Touchcom* relied the fact that the plaintiff gave defendants a power of attorney before the USPTO, and that the power of attorney was never withdrawn. *Id. at 14-15.*

---

[1] 37 C.F.R. §1.33(a) provides in pertinent part: "The Office will direct,. . ., all notices, official letters, and other communications . . . to the person associated with the correspondence address. * * * * The Office will generally <u>not</u> engage in <u>double</u> correspondence with an applicant <u>and</u> a patent practitioner . . . ." *(Emphasis added.)*

*(Emphasis added.)*  While the decision also noted that defendants had done further work, it was their continued status as counsel of record that was material to the holding.  *Id.*

While *Touchcom* was decided under Virginia law, there is no discernible difference between Virginia and New York law on this subject.  Indeed, to the extent there is a difference, Virginia law is more parsimonious than New York.  Virginia law speaks of continuing representation in "a particular undertaking."  *Id. at 10-11,* citing *Keller v. Denny,* 352 S.E.2d 327, 330 (Sup.Ct.Va. 1987)*; Guthrie v. Flanagan,* 2007 WL 4355320 at 2 (E.D.Va. 2007).  New York merely asks whether the representation "pertained to" or "related to" the prior matter. *Supra.*

In both states, if there is any question of fact about whether the representation was continuing, the motion to dismiss must be denied.  *Touchcom* even relied on New York case law for the rule, citing *Corless v. Mazza*, 295 A.D.2d 848, 744 N.Y.S.2d 249, 251 (Third Dept. 2002).

Under *Touchcom*, which is congruent with established New York law, the continuous representation rule applies, because defendants were counsel of record until at least 2008.  Defendants' motion should be denied for this reason alone.

### III.  <u>THE FOURTH AND FIFTH CAUSES OF ACTION ARE TIMELY</u>

The amended Complaint pleads what these defendants as life-long patent lawyers well know: that they were hired to protect the intellectual property for the <u>inventions</u> at issue in this lawsuit.  *Compl. ¶22, 30, 34-36, 38-39, 43.*  That defendants filed continuing patent applications for an invention does not diminish the fact of their continuous representation of Leviton on the invention, but instead underscores that they continued to be Leviton's lawyers for the invention.  That it took defendants a number of continuation applications to get more complete and correct protection for the intellectual property in the invention does not make that continued work distinct, any more than filing an Amended Complaint constitutes a separate representation

in a litigation. In addition, under *Touchcom*, that defendants were counsel of record on the patents at issue is dispositive.

**A.**    **Representation in Patent Litigation Is Representation on the Same or Related Matter**.

The amended Complaint pleads what these defendants well know: that they represented Leviton in all the litigations to enforce the GFCI Patents at issue in this lawsuit since shortly after the first such patent issued in 2001, and that as infringers found and exploited deficiencies in the patent coverage, the defendants filed continuation applications and got additional patents, and then immediately brought suit on Leviton's behalf to enforce those patents. *Compl. ¶43-46.* Greenberg Traurig was paid more than $30 million to represent Leviton in its litigations to enforce the GFCI patents at issue in this lawsuit. *Compl. ¶258.*

Defendants represented Leviton <u>before Judge Davis</u> since 2001 in litigation to enforce the GFCI patents, commencing shortly after the '966 and '558 Patents issued. *Compl. ¶46. Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.* 01-CV-3855, and 03-CV-1701, 03-CV-2137 (AMD)(D.Md. 2001). When Judge Davis granted summary judgment to the infringers, defendants then applied for the '766 Patent; they presented the application to the USPTO under a Petition to Make Special, to expedite the patent application "on the basis of actual infringement," pursuant to 37 C.F.R. § 1.102(d). *Compl. ¶47-48.* Defendants then commenced another action before Judge Davis against the same infringers, literally within three weeks of the '766 Patent being issued. *Compl. ¶46, 48.* It was in that action that Judge Davis subsequently rendered the judgment for million-dollar sanctions. *Id.*

Leviton pled that the scope of defendants' representation was to do what defendants in fact actually did: represent Leviton in all matters relating to obtaining patent protection for the intellectual property in the invention, to recommend to Leviton where and against whom to bring

-9-

infringement actions, and then to prosecute all those infringement actions. *Compl. ¶34-35, 40-43.* What defendants denounce as "conclusory allegations" are backed up by the detailed record of the actual litigations and actual patent applications defendants actually filed and actually prosecuted.

Defendants nonetheless argue that representation in litigation to enforce the patents for the GFCI invention does not constitute representing the client concerning the GFCI invention, although they do concede that "both involve the '766 Patent at some level." *Defs. Mem. 15.* Defendants' original Memorandum omitted mentioning the on-point case *Luk Lamellen U. Kupplungbau GmbH v. Lerner*, 166 A.D.2d 505, 560 N.Y.S.2d 787 (Second Dept. 1990); their current Memorandum tries to distinguish it, but it cannot be distinguished.

In *Luk Lamellen*, the defendant lawyer obtained a patent for an automobile clutch, which issued in 1974. Less than three years later, in 1977, he was hired to give a legal opinion for a litigation to defend that patent. In 1979, he was hired to represent the client in a litigation about that patent. In 1979, it was discovered that he had made a mistake in the patent application, mistranslating a word from the German patent to the American one. He continued working on the litigation until the end of 1981, and was sued two years later in 1983. *Exh. D at 2 (lower ct. dec.)*

The decision below simply took it for granted that the defendant's representation in the patent litigation in 1979 invoked continuous representation. The only question was whether the representation to give the opinion letter in 1977, on a different part of the patent, bridged the time between the 1974 issuance of the patent, and the 1979 retention in the patent litigation. *Exh. D at 2.* The court below found that it did, and the Appellate Division affirmed: "the defendant continued to represent the plaintiff <u>with regard to</u> the same patent from which the alleged malpractice stems. Hence, the Statute of Limitations was tolled <u>through 1981</u>." *(Emphasis added.).*

*Luk Lamellen* stands for the proposition that representation in a litigation over the

patent constitutes continuous representation, as a matter of law.  Moreover, it is simply an application of the case law that any litigation that is "related" to the malpractice subject matter invokes continuous representation. *Pellati v. Lite & Lite, supra* (conclusion of one litigation in 1992, but commencement of a related litigation in 1994); *Stampfel v. Eckhardt*, 143 A.D.2d 184, 531 N.Y.S.2d 814 (Second Dept. 1988) (continuous representation where lawyer who handled conveyance of real property represented client in a subsequent lawsuit by adjacent landowners).

Defendants' cases simply do not address the situation at hand, either because they did not concern continuous representation at all,[2] or because the litigation asserted as the basis for continuous representation was concluded much longer than three years before the malpractice action was commenced.[3]  *Luk Lamellen* controls here, and disposes of defendants' motion as to both the Fourth Cause of Action (for negligence in prosecuting the '766 GFCI Patent), and the Fifth Cause of Action (for failure to obtain complete coverage for the GFCI invention in the first place).

## B.    The Case Law, USPTO Filings, And Their Invoices Are Dispositive Against Defendants

Leviton's amended Complaint laid out the record of defendants' filings in the USPTO on Leviton's behalf, showing that defendants had actually continued working on patent protection for the GFCI invention at issue until at least 2008, and that they had billed Leviton through at least

---

[2] *Sun Studs, Inc. v. Applied Theory Associates, Inc.*, 772 F.2d 1557, 1568 (Fed.Cir. 1985) stands only for the proposition that a lawyer who represents a corporation does not represent the individual employees.  *In re Seagate Technology, LLC*, 497 F.3d 1360 (2nd Cir. 2007) stands only for the proposition that waiver of attorney-client privilege for opinion counsel does not waive the privilege for litigation counsel, where the counsel are different people.  Neither case ever addressed continuous representation at all.

[3] In *McCoy v. Feinman*, 99 N.Y.2d 295, 306, 755 N.Y.S.2d 693, 701 (2002) the litigation which was asserted as the basis for continuous representation had concluded five years before the malpractice case was commenced.  In *Bastys v. Rothschild*, 200 WL 1810107 at 29-30 (S.D.N.Y 2000), the litigation which was asserted as continuous representation was not commenced until ten years after the malpractice occurred.

2008. *Compl. ¶50, 52 & Table One*, ¶58-62.

Leviton pled detailed facts showing that defendants were not only billing it for that work until at least 2008, and but were even doing so under the same billing code "*0267-001-1415.*" *Id.* Sending invoices to the client for work in the matter is dispositive in favor of continuous representation. *Golub v. Baer, Marks & Upham*, 172 A.D.2d 489, 567 N.Y.S.2d 843 (Second Dept. 1991). At the very least, the detailed pleadings create a question of fact.

Leviton showed that defendants filed all the GFCI patent applications and all other USPTO filings under the same docket number "*0267-001-1415*" through 2008. *Compl. ¶50 et seq and Table One.* Leviton pled that defendants were still trying to cure the defects in their GFCI patent applications with another application they filed in 2004 (which issued in 2008 as the '124 Patent), and that they worked on that application and billed Leviton until at least 2007. *Compl. ¶44-48, 52 at Table One, ¶63-65.* Leviton further pled that when defendants filed the application for the '124 Patent (which did issue until 2008), they filed an exact copy of the inventor's declaration they had filed in 1999 for the '558 Patent, because the later application concerned the same invention. *37 C.F.R. 1.63(d)(1)*; *Compl. ¶69, 70, 52.*

Leviton further pled that defendant Magidoff filed "terminal disclaimers" in the context of the '124 Patent, the'766 Patent and the '558 Patent; and that by filing these terminal disclaimers, defendants stated to the USPTO that the claimed inventions were "obvious variants of each other and thus directed to the same matter." *Compl. 67-68.*

Leviton cited the case law showing that continuation applications were as a matter of law <u>related</u> to the same invention. *Transco Prods. v. Performance Contracting*, 38 F.3d 551, 555 (Fed. Cir. 1994)("a 'continuation' application claims <u>the same invention</u> claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed.")

*(Emphasis added.)*; *TBC Consoles, Inc. v. Forecast Consoles, Inc.*, 2009 WL 2337138 at 1 (S.D.N.Y. 2009) (quoting *Transco*); MPEP 201.07 ("A continuation application is an application for <u>the same invention</u> . . .")*(Emphasis added.)*  Under continuation case law, a family of patents are all "<u>part of the same transaction constituting one continuous application</u>." *Transco,* supra at 556-557, *citing Godfrey v. Eames*, 68 U.S. 317, 325-26 (1864).

Leviton further showed the significance of the foregoing: a continuation patent has the benefit of the earlier filing date of the parent application. *Transco, supra* at 556-557, *35 U.S.C. 120*.  The earlier filing date also prevents a patent from being invalidated by the one-year "on sale bar" of *15 U.S.C. § 102(b)*.

Defendants' sole response to the extensive case law, and to the detailed factual pleading of what they actually did (and did under the same docket number to boot), was to quote a law review article entitled "Ending Abuse of Patent Continuations," and to suggest that continuation applications should really get de novo review by the Patent Office. *Def. Mem. 18*. Whether or not the continuation application process is subject to abuse has nothing to do with the case law holding that continuation applications concern the same invention, or the facts showing that it was considered as such by defendants themselves.

At the very least, a continuation application is "related" to the subject matter of the invention, and is certainly not as a matter of law "unrelated."  Moreover, just the fact that Leviton pled that as infringers found and exploited defects in the patent coverage, defendants continued to represent Leviton by filing continuations and amendments to attempt to obtain complete and correct patent coverage, at a bare minimum raises questions of fact as to whether there was continuous representation in an effort to cure. *Gravel v. Cicola*, 297 A.D.2d 620, 621, 747 N.Y.S.2d 33 (Second Dept. 2002)(whether subsequent representation was attempt to cure raises

issues of fact).

**C.    Greenberg Traurig Is Liable On The Fourth and Fifth Causes of Action**

The conduct of defendants which was the basis for Judge Davis's million-dollar sanction judgment occurred entirely during the time Greenberg Traurig was counsel of record. To the extent defendants object that the statute was not tolled as to Greenberg Traurig for the Fourth Cause of Action (negligence in the prosecution of the '766 Patent), their objections have no merit.

Defendants' objection to the Fifth Cause of Action (failure to get complete and correct patent coverage) is that the first of the GFCI patents was applied for by defendants Sutton and Magidoff in 1999 before they joined Greenberg Traurig. That objection is likewise meritless, for all the reasons set forth above. Leviton pled that Greenberg Traurig both took over the representation as to this invention, and became counsel of record at the USPTO, after Sutton and Magidoff joined the firm in February 2000. *Compl. ¶5 & 7, 38-39, 40.*

Moreover, none of the GFCI patents issued until 2001, a year after Sutton and Magidoff joined Greenberg Traurig and the firm took over the representation. *Compl. ¶5, 7, 38-39, 52 at Table One. Luk Lamellen*, *supra, Exh. D at 2*, and *Touchcom, supra, Exh. C at 5*, took it for granted that, as a matter of law, the representation to procure a patent for an invention continues at least until the patent is issued.

**IV. THE SIXTH THROUGH EIGHTH CAUSES OF ACTION ARE TIMELY**

The Sixth Cause of Action concerns defendants' failure to apply for patents within one year of the products containing the invention going "on sale." *Compl. ¶167-210, 261-263.* Under 35 U.S.C. 102(b), a patent must be applied for within one year of the product being offered for sale in the United States. *Compl. ¶168.* The defendants waited literally years before getting around to actually filing the applications, and then when the on-sale bar negated patentability, did

-14-

the work anyway, and charged Leviton substantial legal fees for work they never should have done.

The Seventh Cause of Action concerns defendants' multiplying their own fees in prosecuting patents for a line of unique wiring devices. *Compl. ¶215-224, 265-267.* Defendants filed a series of applications that were sloppily done, and had to be withdrawn and then reapplied for multiple times, for which Greenberg Traurig charged Leviton excess legal fees.

The Eighth Cause of Action concerns the defendants' receiving notice from the Patent Office of a re-examination proceeding commenced by a third-party against a patent for an electric series circuit, but failing to tell Leviton that the re-examination proceeding had been commenced, and then charging Leviton fees that they were not authorized to incur, and allowing parts of the patent to be canceled without authority from Leviton. *Compl. ¶226-233, 269-273.*

**A.   Defendants Conceded Continuous Representation On Certain On-Sale Bar Patents.**

Defendants' original Memorandum denied that they had continuously represented Leviton on any of the on-sale bar patents. Leviton amended to plead, in tabular form, its research into defendants' own invoices. *Compl. ¶72, Table Two, et seq.*

Defendants then conceded that they were still Leviton's lawyers on six of the 14 on-sale bar patents, *i.e.*, the ones where Leviton could, even at the pleading stage, actually identify the entries in the thousands of pages of invoices that clearly specified defendants' work. *Defs. Mem 19, fn. 12.* Defendants' partial concession was compelled by their own invoices, but it only serves to underscore why questions of fact cannot be resolved at the pleading stage. In addition to the six patents that defendants concede, defendants also demonstrably billed Leviton for three other patents, a total of 9 of the 14 at issue.[4]

Moreover, for six of the on-sale bar patents that defendants have not yet conceded,

---

[4] Table Two shows identifiable billing for the '541, '906, and 081 patents. *Compl. ¶76.*

Leviton is able to show, even at the pleading stage, that defendants actually received official notices on Leviton's behalf from the USPTO.[5] *Icahn v. Todtman, Nachamie, Spizz & Johns,* supra; *Gray v. Wallman & Kramer*, *supra* (receipt of pleadings). Leviton pled that defendants were still their lawyers on all the inventions until at least 2008. *Compl. ¶21-22, 30-33, 73-75.* Until Leviton has discovery of defendants' files, it will be hampered in showing that defendants were still working on the on-sale bar patents where Leviton has not already been able to show continuing work or continuing receipt of official notices at the mere pleading stage.

**B.     Defendants Were Still Counsel of Record, and Acting In That Capacity.**

For <u>all</u> of the on-sale bar patents, including those that defendants still contest, their status as counsel of record is dispositive against them. *Touchcom v. Bereskin & Parr LLP*, *supra*; *and Deep v. Boies*, *supra* (status as counsel of record was continuous representation).

**C.     Greenberg Traurig Is Liable For The Older On-Sale Bar Patents**

Certain of the inventions for which defendants allowed the on-sale bar to expire were entrusted to Sutton and Magidoff before they joined defendant Greenberg Traurig. *Compl. ¶172-191.* Leviton pled that Greenberg Traurig took over the assignments when Sutton and Magidoff joined the firm. *Compl. ¶38-39, 73.* Moreover, Greenberg Traurig demonstrably did take over the assignments: Greenberg Traurig filed the untimely patent applications, and billed Leviton for the work. *Compl. ¶76, Table Two, ¶172-207.*

Greenberg Traurig is also liable for the loss of patent rights for inventions as to which it was still possible to file timely patent applications, just like a lawyer who takes over a case before the statute of limitations has run. *Compl. ¶172-190, Hansen v. Brognano*, 137 A.D.2d 880,

---

[5] Table Two shows that defendants received USPTO notices on the '274, '478, '262, '793, '906, and '081 Patents. *Compl. ¶76.*

524 N.Y.S.2d 862 (Third Dept. 1988)(subsequent attorneys who failed to file within statute also liable).

**D.    The Seventh And Eighth Causes of Action Are Timely**

Defendants' arguments on the Seventh Cause of Action (for multiplication of billings) are a repeat of their faulty argument that continuing to work on a patent application for an invention does not constitute continuing to work on the patent application for the invention. Moreover, under *Luk Lamellen* and *Touchcom,* the cause of action does not accrue until the patent issues. Table Three to the amended Complaint, and the narrative paragraphs following it, demonstrate that patents for five of the six inventions did not actually issue until 2007, and that defendants invoiced Leviton for the work into at least 2007, well within the three-year statute. *Compl. ¶¶77-86, 89-90.* The sixth patent issued in 2006 but defendants continued to invoice for work on it in 2007 and thereafter. *Compl. ¶87-88.* Moreover, defendants were counsel of record until 2008. *Compl. ¶21-22, 30-33, 77.*

The Eighth Cause of Action (undisclosed reexamination proceeding) is based both on defendants' representation of Leviton as counsel of record through 2009 on that patent, and on defendants invoicing Leviton for work in November 2006 for work on it, and is timely for either reason. *Compl. ¶91-95.*

## V. THE NINTH, TENTH AND ELEVENTH CAUSES OF ACTION ASSERT VALID AND NON-DUPLICATIVE CLAIMS

The Ninth, Tenth and Eleventh Causes of Action against defendants Greenberg Traurig and Sutton arise from their wrongful billing of Leviton for work that defendants had no right whatsoever to bill for. The Complaint pleads that when defendants did the work and billed Leviton for the patent applications, the "on-sale bar" had expired years before, and defendants could not lawfully apply for the patents. *35 U.S.C. 102(b); Compl. ¶168-209.* In addition to

cheating their client by passing off bills for legal work that never should have been done, defendants likely breached their ethical obligation to the USPTO, by filing applications that were barred by the on-sale statute, without disclosing same. *37 C.F.R. 1.56 (duty to disclose material information)*.

Defendants' objection is that the claims for wrongful billing are duplicative of the negligence claims, which reflects a misapprehension of what defendants are being sued for. They are not being sued in the Ninth through Eleventh Causes of Action for negligence in performing the work. In fact, the Complaint pleads that they actually got the patents in nearly all cases, but that the patents are invalid because defendants waited so long to do the work. *See Compl. ¶168-209.*

Rather, the Ninth, Tenth and Eleventh Causes of Action are for defendants Greenberg and Sutton wrongfully billing their client for work they had no right to bill for <u>at all</u>. For the purposes of these Causes of Action, the claims are in essence the same as billing a client for work that was never done.

A year ago, in *Smartix Intern. Corp. v. Garrubbo, Romankow & Capese, P.C.*, 2009 WL 857467 (S.D.N.Y. 2009), Judge Koeltl rejected the same challenge that defendants raise here:

> In connection with its unjust enrichment claim, the plaintiff asserts, among other things, that the defendants <u>inflated their bills</u> without justification. *See, e.g., Town of Wallkill v. Rosenstein* [cite omitted]. The defendants [argue] . . . that the unjust enrichment claim should be dismissed as <u>duplicative</u> of the plaintiff's legal malpractice claims.
>
> This argument is without merit, because the unjust enrichment claim is <u>not duplicative</u> of any of the legal malpractice claims. The <u>unjust enrichment claim</u> alleges that the defendants <u>inflated their legal bills</u>. The <u>legal malpractice claims</u> allege <u>errors in judgment</u> and performance by the defendants with <u>respect to the legal services</u> they provided to the plaintiff. Plainly these are different claims relying on different facts. *(Emphasis added.)*

-18-

*Smartix Intern. Corp.* applies equally here, as does Judge Koeltl's rejection of *Town of Wallkill*, the same authority relied on by defendants here.  *Defs. Mem. 20.*

*Smartix* likewise disposes of defendants' assertion that the shorter three-year negligence statute of limitations should apply, rather than the six-year one that applies to unjust enrichment, constructive trust, and constructive fraud.  Under *Smartix*, the claims in the Ninth through Eleventh Causes of Action are distinct from negligence claims, and they are thus distinct for all purposes.  Defendants' citation of *Malmsteen v. Berdon, LLP*, 477 F.Supp.2d 655, 662-663, 668-669 (S.D.N.Y. 2007) is inapt.  In *Malmsteen,* the court recognized the same distinction between claims for negligent performance of services, and payment of excessive fees, and applied the longer, six-year statute to claims for fraud, and constructive trust, against an accountant.  The Ninth through Eleventh Causes of Action are valid.

## VI.  THERE IS NO RIPENESS ISSUE, AND LEVITON ADEQUATELY PLED DAMAGES

Defendants do not deny that the First through Third Causes of Action were brought within three years and are timely.  These Causes of Action arise out of the defendants' representation of Leviton in the Shanghai Meihao Litigation before Judge Davis in the District of Maryland.[6]  Defendants represented Leviton in that case until at least March 2007. *Compl. ¶49.*

### A.    The First And Second Causes of Action Will Be Untouched By The Appeal

As they did in their prior Memorandum, defendants ignored the First and Second Causes of Action, which arise from their gross violation of their fidicuary duty by commencing and continuing a litigation in which they knew or it was obvious that they would be adverse witnesses against their own client. Nothing about the First or Second Cause of Action is dependent

---

[6]  Defendants contend that defendant Narcisse was not "counsel of record" on the docket sheet, but in fact Mr. Narcisse's name was on the Complaint.  *See fn. 5, supra; cf. Defs. Mem 12.*

on the outcome of the appeal, or the finding of "inequitable conduct."

The First Cause of Action is for disgorgement of the millions of dollars in legal fees that defendants earned on a case they never should have commenced, or should have immediately withdrawn from. *Compl. ¶153-166, 235-240.* In May 2005, at the very outset of the Shanghai Meihao Litigation, the adverse party specifically alleged that the defendants, by name, had committed "inequitable conduct" in obtaining the '766 Patent. Its detailed pleading laid out in 2005 the undisclosed claim copying, the questionability as to inventorship, and the failure to disclose related litigation, which formed the basis for Magistrate Gauvey and Judge Davis's sanctions decisions in 2008 and 2009.[7] *See Compl. ¶159.*

Defendants knew or it was obvious that they, personally, would be adverse witnesses against their client, but they never advised Leviton of that, nor of their ethical obligation to withdraw, so that their monopoly on Leviton's patent business would not be interrupted, and they could continue to earn millions on that business. *Compl.¶160-162.*

The Second Cause of Action is for the damages arising from the Shanghai Meihao Litigation itself, including the damages or settlement that Leviton could have received if the case against Shanghai Meihao had been prosecuted by unconflicted counsel. *Compl. ¶244-246.*

The Federal Circuit is not being asked to and cannot rule on the question of whether defendants knew or it was obvious that the defendants were potential adverse witnesses who should never have undertaken this case, nor whether the defendants were ethically conflicted in their conduct of the case. The defendants' liability on the First and Second Causes of Action arises from their disloyalty to their client, not the misconduct that Judge Davis found they committed in

---

[7] Complaint for Declaratory Judgment, *Shanghai Meihao Elec. Inc. vs. Leviton Mfg. Co.*, 1:05-cv-1243 (AMD)(D.Md. 2005)[Dkt No. 1].

prosecuting the '766 Patent. *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 13, 865 N.Y.S.2d 14, 24 (First Dept. 2008)(conflicted counsel are liable for disgorgement of fees); *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir.2003)(faithless servant doctrine requires disgorgement of all compensation received); *In re Food Management Group, LLC*, 380 B.R. 677, 713 (Bkrtcy.S.D.N.Y.2008)(applying *Phansalkar* to fees of counsel).

**B.      The Third Cause of Action Is Res Judicata And Thus Ripe**.

The Third Cause of Action arises from Judge Davis's ruling that defendants committed litigation misconduct in the Shanghai Meihao Litigation, which was a further basis for his sanction against Leviton for over one million dollars. *Compl. ¶139-152, 248-250*.

Defendants' contention that this claim is not ripe ignores the most fundamental principle of federal civil procedure. There is an entered judgment against Leviton for over one million dollars, and Leviton has actually paid over one million dollars to the Clerk in lieu of an appeal bond. *Compl. ¶137, 139, 144-145*. The pendency of an appeal does not change the res judicata effect of an entered judgment of a federal court. *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188, 61 S.Ct. 513, 515 (1941); *Washington v. State Street Bank & Trust Co.*, 14 Fed.Appx. 12, 16, 2001 WL 812315 at 2 (1ˢᵗ Cir. 2001).

Leviton's claims against defendants were "ripe" from the time the judgment was entered; taking an appeal did not render the claims unripe. *See New York State Nat. Organization for Women v. Terry*, 159 F.3d 86 (2ⁿᵈ Cir. 1998)("An initially ripe case or controversy does not cease to be justiciable merely because the defendants stop violating the plaintiffs' rights.") Even where the action for legal malpractice is not based on an entered judgment, just that fact that a plaintiff has pled a valid malpractice cause of action renders the action ripe. *RBC Bank (USA) v.*

*Riley, Riper, Hollin & Colagreco*, 2009 WL 2580354 at 10 (D.N.J. 2009)("by claiming that it has been and will continue to be injured by Defendants' negligence . . . Plaintiff has sufficiently pled injury to satisfy Article III's justiciability requirements.")

**C.    Leviton Adequately Pled Damages To The '766 Patent**

The loss of value of the '766 Patent is pled as damages in both in the Second and the Fourth Cause of Action. *Compl. ¶246, 254.* Defendants are wrong that Leviton has not adequately pled damages, and they still ignored the controlling case law in Leviton's prior Memorandum.

Defendants still incorrectly assert that New York case law permits a motion to dismiss a patent prosecution malpractice complaint, when the client has not currently proven its actual out of pocket royalty damages, citing *Igen, Inc. v. White*, 250 A.D.2d 463, 464, 672 N.Y.S.2d 867, 868 (First Dept.1998). Defendants' proposition is still wrong. *Igen* was a summary judgment motion, brought <u>seven years</u> into a case. The dispositive facts were that the plaintiff was unable to show its patent was other than worthless when the case was filed, nor could its expert on the summary judgment motion show that it had acquired value in the 13 years since it was issued.

Defendants' latest Memorandum still ignores the contrary case law that Leviton previously cited. Two recent cases have held that *Igen* is simply not applicable on a motion to dismiss in a patent malpractice action. A plaintiff need only allege that he lost valuable patent rights as a result of the malpractice. *InKine Pharmaceutical Co., Inc. v. Coleman*, 305 A.D.2d 151, 759 N.Y.S.2d 62, 63 (First Dept. 2003)(distinguishing *Igen* as concerning only summary judgment); *Beasley v. Avery Dennison Corp.*, 2006 WL 925069 at 3-4 (W.D.Tex. 2006). Even under *Ashcroft v. Iqbal*, a malpractice plaintiff need not prove "actual loss," but only show that the pleadings "put defendants on notice that their alleged malpractice has impaired plaintiff's

position." *RBC Bank (USA) v. Riley, Riper, Hollin & Colagreco*, *supra at 5, 10* (applying N.J. substantive law).

These defendants cannot seriously contend that the '766 Patent was worthless. They were paid millions of dollars to enforce it against infringers. *See Compl. ¶241, 258.*[8] Leviton more than adequately met the malpractice damages pleading test of *InKine Pharmaceutical* and New York malpractice case law. *Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg*, 199 A.D.2d 45, 604 N.Y.S.2d 947 (First Dept. 1993)(plaintiff "is not obliged to show, at this stage of the pleadings, that [it] actually sustained damages. . . [it need only plead] allegations from which damages attributable to [defendant's conduct] might be reasonably inferred."); *Fielding v. Kupferman*, 65 A.D.3d 437, 885 N.Y.S.2d 24 (First Dept. 2009)(same).

Judge Davis' determination of "inequitable conduct" in obtaining the '766 Patent rendered the patent unenforceable. *Compl. ¶137, 144-145*. Moreover, the Magistrate's determination of "inequitable conduct" in 2008, and Judge Davis's decision in 2009, affected the market value of the GFCI patents the moment they were released. *Compl. ¶147-150*. Even if the Federal Circuit exonerates Leviton of "inequitable conduct" in 2010 or 2011, the market value of the patents and Leviton's ability to obtain royalties will have been diminished during the intervening years. *Compl. ¶147-150*. The causes of action are ripe, and Leviton adequately pled damages.

---

[8] The '766 Patent litigations include *Leviton Mfg. Co., Inc. v. Zhejiang Dongzheng Elec. Co.*, 506 F.Supp.2d 646 (D.N.Mex. 2007); *Leviton Mfg. Co., Inc. v. Nicor, Inc.*, 2007 WL 5057 (D. N.Mex. 2007); *Leviton Mfg. Co., Inc. v. Interline Brands, Inc.*, WL 2523137 (M.D.Fl. 2006).

## CONCLUSION

Defendants' motion to dismiss should be denied.

Dated: March 2, 2010

JEFFREY A. JANNUZZO, ESQ.
*Counsel for plaintiff Leviton Mfg. Co., Inc.*

By: _____
        Jeffrey A. Jannuzzo (JJ 3203)

10 East 40th Street, 35th Floor
New York, NY 10016-0301
(212) 932-8524
jeff@jannuzzo.com

KALOW & SPRINGUT LLP
*Counsel for plaintiff Leviton Mfg.* Co., Inc.
488 Madison Avenue
New York, NY 10022
(212) 813-1600
ms@creativity-law.com

Memo-2010-3-2-signed.wpd