JEFFREY A. JANNUZZO, ESQ.
10 East 40th Street, 35th Floor
New York, NY 10016-0301
Tel: (212) 932-8524
Fax: (212) 932-1165

Milton Springut
David A. Kalow
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
Tel: (212) 813-1600
Fax: (212) 813-9600

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

LEVITON MANUFACTURING CO., INC.,

                Plaintiff,

            -against-

GREENBERG TRAURIG LLP, PAUL J. SUTTON,
BARRY G. MAGIDOFF, and CLAUDE R.
NARCISSE,

                    Defendants.
-----------------------------------------------------------X

09 Civ 8083(GBD)(THK)

**SECOND AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff LEVITON MANUFACTURING CO., INC., by its attorney Jeffrey A.

Jannuzzo, Esq., as and for its First Amended Complaint against defendants GREENBERG

TRAURIG LLP and PAUL J. SUTTON, BARRY G. MAGIDOFF, and CLAUDE R. NARCISSE,

alleges as follows:

1.        This is an action for legal malpractice and breach of fiduciary duty involving

questions of federal patent law, as well as state law claims.  Federal question jurisdiction exists

under applicable case law.  Damages in excess of $100 million are alleged.  Plaintiff demands a trial

by jury. This First Amended Complaint amends the Complaint dated and filed September 22, 2009,

and expressly incorporates the portions of the initial Complaint that are set forth in this First Amended Complaint.

## THE PARTIES

2.         Plaintiff Leviton Manufacturing Co., Inc. ("Leviton") is a Delaware corporation, with its principal executive office at 201 North Service Road, Melville, NY 11747.

3.         Defendant Greenberg Traurig LLP ("Greenberg Traurig") is a domestic registered limited liability partnership, with its offices at 200 Park Avenue, New York, NY 10166.

4.         Defendant Paul J. Sutton ("Sutton") is a member of the Bar of the State of New York, and resides or does business in person in the Southern District of New York.

5.         Defendant Sutton was, from approximately February 2000, a partner/shareholder at defendant Greenberg Traurig or a counsel employed by Greenberg Traurig, and was responsible for the representation of plaintiff with regard to the matters complained of, and the supervision of the lawyers who performed the services complained of.  Defendant Sutton was until approximately February 20, 2009 a counsel employed by defendant Greenberg Traurig, and was Traurig's "Senior Chair, Intellectual Property and Technology/Technology, Media & Telecommunications."

6.         Defendant Barry G. Magidoff ("Magidoff") is a member of the Bar of the State of New York, and either resides or does business in person in the Southern District of New York.

7.         Defendant Magidoff was, from approximately February 2000, either a counsel, or a partner/shareholder at defendant Greenberg Traurig, and was responsible for the representation of plaintiff with regard to the matters complained of, and the supervision of the lawyers who performed the services complained of.  According to Greenberg Traurig's website, defendant Magidoff became a partner/shareholder on February 18, 2005.

8.         Defendant Claude R. Narcisse ("Narcisse") is a member of the Bar of the State of

New York.  On information and belief, defendant Narcisse resides in New Jersey.

9.          According to Greenberg Traurig's website, defendant Narcisse became a partner/shareholder of defendant Greenberg Traurig on February 18, 2005.  Prior to becoming a partner/shareholder, at the relevant times, defendant Narcisse was an associate or counsel employed by defendant Greenberg Traurig.

10.          Defendant Narcisse was the lawyer assigned by defendants Sutton, Magidoff and Greenberg Traurig to prosecute the so-called '766 Patent, and the Germain patent application, referred to herein.

11.          Defendants Greenberg Traurig, Sutton, Magidoff and Narcisse are sometimes referred to collectively as "the Greenberg Traurig Defendants."

12.          On or about February 20, 2009, defendants Sutton, Magidoff, and Narcisse departed defendant Greenberg Traurig.

13.          On information and belief, defendants Sutton, Magidoff, and Narcisse were either forced to leave or were encouraged to leave defendant Greenberg Traurig.

14.          Defendants Sutton and Magidoff now practice law and do business in person at Sutton Magidoff LLP, 909 Third Avenue, New York, NY 10022-6731, in the Southern District of New York.

## VENUE AND JURISDICTION

15.          This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a), in that issues of patent infringement or validity are necessary elements of the legal malpractice action.[1]

16.          This Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367 over any and all

---

[1] *Air Measurement Technologies v. Akin Gump Strauss Hauer & Feld LLP*, 504 F.3d 1262 (Fed.Cir. 2007), and *Immunocept LLC v. Fulbright & Jaworsky LLP,* 504 F.3d 1281 (Fed.Cir. 2007).

state law claims, in that such claims are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

17.        Venue is proper in the Southern District of New York pursuant to 28 U.S.C.  § 1391(b)(2), in that a substantial part of the events and omissions giving rise to plaintiffs' claims occurred in this District.

## THE FACTS

**A       Leviton Manufacturing Co., Inc.**

18.        Defendant Leviton is a leading North American producer of electrical and electronic products, and is the largest North American manufacturer of electrical and electronic wiring devices. It is a third generation family-owned business, founded in 1906 by Isidor Leviton in a small shop on Delancey Street in New York, at the dawn of the electrical era.  Isidor Leviton's son Harold Leviton was the CEO and Chairman of the company from 1965 until his passing in 2007.

19.        Under the stewardship of Mr. Harold Leviton, Leviton set industry standards for product design, innovation and safety.  It currently holds over 800 patents worldwide and its brands and products are known around the world.

20.        One of Leviton's most significant lines of personal safety products are its Ground Fault Circuit Interrupter devices ("GFCIs"), introduced in 1972.  A GFCI protects people from electric shock and is found in nearly every home and building in North America.  It has undoubtedly saved countless lives.

**B.      Sutton's Continuous Representation of Leviton**

21.        For approximately 37 years, from 1971 to 2008, when Leviton terminated the relationship, defendant Sutton represented Leviton in substantially all of its intellectual property matters. Defendant Sutton took over the representation of Leviton from his partner Harry Hamilton,

Esq., who had represented Leviton for 45 years, until Mr. Hamilton retired in 1971.

22.     Defendant Sutton's representation of Leviton included responsibility for seeking patent protection for Leviton's inventions and enforcing Leviton's patent rights, including through litigations commenced upon Sutton's recommendation. When Sutton changed law firms, he took Leviton's intellectual property matters with him from one firm to the next.

23.     During his 37 year relationship with Leviton, Sutton developed, nurtured and protected a close relationship of friendship and trust with Mr. Harold Leviton. Sutton led plaintiff to believe that there was never any need for Leviton to have an internal legal department to oversee Sutton's work. Sutton and his firms effectively functioned as Leviton's legal department for intellectual property matters.

24.     This relationship proved to be very lucrative for Sutton, who advertised on Greenberg Traurig's website that he represented Leviton in at least 58 patent litigations, 44 as a plaintiff and 14 as a defendant.

25.     On information and belief, the legal services that defendant Sutton provided or supervised at his various firms represented half or more of the client business originated by Sutton at such firms during most of the years covered by the events described herein. Leviton's business was the mainstay of defendant Sutton's legal practice.

26.     On information and belief, the Leviton account formed a principal part of the "portable business" of defendant Sutton which caused defendant Greenberg Traurig to offer Sutton a position as a partner/shareholder in approximately February 2000.

27.     On information and belief, defendant Sutton was being paid annual compensation by defendant Greenberg Traurig in excess of $2 million a year during much of the time period in question.

28.        Defendant Sutton departed defendant Greenberg Traurig not long after Leviton wound down and then terminated the use of his professional services.

## C.    Greenberg Traurig's Continuous Representation of Leviton

29.        During the times complained of below, defendant Greenberg Traurig, through its partner/shareholder defendant Sutton, functioned as Leviton's general counsel for all patent matters.

30.        Defendants Greenberg Traurig and Sutton were retained and paid by Leviton to prosecute and maintain nearly all of its patents worldwide.  This included reviewing invention disclosures; making recommendations on protecting the inventions with appropriate patent applications; preparing and filing timely applications in various countries to protect Leviton's inventions; representing Leviton before the U.S. Patent and Trademark Office ("the USPTO" or "PTO") to achieve issuance of correct and complete Letters Patent; maintaining a database of Leviton's patents and monitoring the deadlines for maintenance payments; insuring that all fees were timely paid; and enforcing Leviton's patents.

31.        During the times complained of below when Sutton was a partner/shareholder in defendant Greenberg Traurig, Leviton paid Greenberg Traurig an average of 4.9 million dollars annually, with nearly 11 million dollars paid in 2005, for handling Leviton's patent matters, including both patent prosecution and patent litigation.  During the period from 2000 through 2005, Leviton paid Greenberg Traurig over $38 million for its work on Leviton's patent matters.

32.        Defendant Greenberg Traurig continuously represented plaintiff Leviton with regard to patent matters during the time that defendant Greenberg Traurig maintained the patent docket of Leviton, and was responsible for all matters related to the patents on such docket, including insuring timely payment of all fees necessary to maintain such patents.  Greenberg Traurig, under Sutton's supervision, maintained such database, and charged plaintiff for its professional time and

disbursements for maintaining such patents and such database, until at least November 2008.

33.         Defendant Greenberg Traurig continuously represented Leviton with respect to patent matters before the USPTO until the USPTO was notified in approximately July 2008 that the patent files in question were the responsibility of different counsel.

**D.      The Scope of Defendants' Continuous Representation**

34.         For each of the inventions which are the subject of this Complaint, where Leviton engaged defendants Sutton and Magidoff prior to defendants Sutton and Magidoff's affiliation with defendant Greenberg Traurig, defendants Sutton and Magidoff were retained to protect the intellectual property regarding the invention; to prosecute correct, complete, and timely patent applications for such inventions; to investigate, research, and be responsible for, all matters relating to the procurement of patent protection for such invention; to coordinate and be responsible for procuring patent protection in foreign countries; and to enforce such patent protection against alleged infringers through litigation in such venues throughout the United States as such defendants would recommend to Leviton; and to represent Leviton in such litigation.

35.         It was expressly contemplated at the time that defendants Sutton and Magidoff were retained as to each such invention, that such defendants would recommend to Leviton whether to commence litigation against alleged infringers, to represent Leviton in litigation against alleged infringers, and to defend Leviton in litigation commenced by others regarding the patents for such inventions.

36.         It was expressly contemplated at the time that defendants Sutton and Magidoff were retained as to each such invention, that such defendants would represent Leviton regarding such invention in all matters before the U.S. Patent Office, would be Leviton's counsel of record in the U.S. Patent Office, and would receive and respond to all communications and notices from the U.S.

Patent Office on Leviton's behalf, and would be responsible for seeing that all necessary maintenance and other fees were timely paid to the U.S. Patent Office and would keep Leviton apprised of all developments in the U.S. Patent Office relating to these inventions  Defendants were entrusted with all matters relating to the administration of the patents that are referred to in this Complaint.

37.      Defendants were paid substantial fees over the years to represent Leviton before the U.S. Patent Office for the patents which are the subject of this Complaint.  Being paid such fees was both a continuing source of income for defendants, and in addition, being Leviton's counsel of record on all such patents enabled defendants to keep their multi-million dollar monopoly on Leviton's patent business.

38.      Upon the affiliation of defendants Sutton and Magidoff with defendant Greenberg Traurig, such defendants and Greenberg Traurig were retained by Leviton as to the  inventions for which defendants Sutton and Magidoff had previously been retained, and as to the inventions which are the subject of this Complaint where the representation began during the time defendants Sutton and Magidoff became affiliated with defendant Greenberg Traurig.

39.      The retention of defendant Greenberg Traurig with regard to each such invention was equal in scope to the scope described above as to defendants Sutton and Magidoff.   The representation did not end until the defendants were replaced (if they were) as counsel of record for Leviton in the USPTO for each of the patents and patent applications which are the subject of this Complaint.

**E.      Defendants' Representation of Leviton in  GFCI Litigations.**

40.      Defendant Sutton, and subsequently defendants Magidoff and Greenberg Traurig,

represented Leviton as plaintiff in at least 44 patent litigations,[2] and as defendant in at least 14 patent

litigations,[3] including both GFCI litigations and other litigations, with defendant Greenberg Traurig

being substituted as counsel in all or virtually all in the litigations pending at the time of defendants

Sutton and Magidoff's affiliation with defendant Greenberg Traurig.   Whether or not defendant

Magidoff was counsel of record in such litigations, it was understood between Leviton and Magidoff

that he would perform legal work as required to support such litigations.

41.        After the affiliation of defendant Narcisse with defendant Greenberg Traurig, whether

---

[2]  Leviton Manufacturing Co., Inc. vs. 3M, Leviton Manufacturing Co., Inc. vs. Applied Lighting Concepts, Inc., Leviton Manufacturing Co., Inc. vs. Arlington Industries, , Leviton Manufacturing Co., Inc. vs. C&K Electronics, Leviton Manufacturing Co., Inc. vs. Carlingswitch, Leviton Manufacturing Co., Inc. vs. Catalina Lighting Inc., Leviton Manufacturing Co., vs. Central Purchasing LLC, Leviton Manufacturing Co., Inc. vs. Conair Corporation, Leviton Manufacturing Co., Inc. vs. Control Devices, Leviton Manufacturing Co., Inc. vs. Eagle Electric, Leviton Manufacturing Co., Inc. vs. Florida Lighting, Leviton Manufacturing Co., Inc. vs. General Cable, Leviton Manufacturing Co., Inc. vs. Grandway/Cheetah USA Corp., Leviton Manufacturing Co., Inc. vs. Harbor Freight Tools Inc., Leviton Manufacturing Co., Inc. vs. Heath-Zenith, Leviton Manufacturing Co., Inc. vs. HML Quenqing, Leviton Manufacturing Co., Inc. vs. Il Shin Electric Co., Leviton Manufacturing Co., Inc. vs. Intelectron/Larry Lee, Leviton Manufacturing Co., Inc. vs. Interline Brands, Leviton Manufacturing Co., Inc. vs. Intermatic, Leviton Manufacturing Co., Inc. vs. I.T.S. Industries, Inc., Leviton Manufacturing Co., Inc. vs. Leen d/b/a Designers Edge, Leviton Manufacturing Co., Inc. vs. Lights of America, Leviton Manufacturing Co., Inc. vs. M3 Products, Leviton Manufacturing Co., Inc. vs. Nicor Lighting & Fans, Inc., Leviton Manufacturing Co., Inc. vs. Orbit Electric Inc./Yatai, Leviton Manufacturing Co., Inc. vs. Potrans, Leviton Manufacturing Co., Inc. vs. Preferred Industries, Leviton Manufacturing Co., Inc. vs. Safety Plus, Inc., Leviton Manufacturing Co., Inc. vs. Sammax International Ltd., Leviton Manufacturing Co., Inc. vs. Skil, Leviton Manufacturing Co., Inc. vs. Stellar Lighting, Leviton Manufacturing Co., Inc. vs. Sunland Inc., Leviton Manufacturing Co., Inc. vs. Test-Rite, Leviton Manufacturing Co., Inc. vs. Taiwan Lishin Electric, Leviton Manufacturing Co., Inc. vs. Taiwan Passive Infrared, Leviton Manufacturing Co., Inc. vs. Topaz Lighting Corp., Leviton Manufacturing Co., Inc. vs. Universal Security Industries Inc., Leviton Manufacturing Co., Inc. vs. USI, Leviton Manufacturing Co., Inc. vs. Visonic Ltd., Leviton Manufacturing Co., Inc. vs. Westek Associates, Leviton Manufacturing Co., Inc. vs. Woods Wire, Leviton Manufacturing Co., Inc. vs. Zhejiang Dongzheng Electric Inc., Lutron Electronics Co., Inc. vs. Leviton Manufacturing Co., Inc.

[3]  C&K Electronics vs. Leviton Manufacturing Co., Inc., Eaton Corporation vs. Leviton Manufacturing Co., Inc., EOS Technologies, Inc. vs. Leviton Manufacturing Co., Inc., Excelsior vs. Leviton Manufacturing Co., Inc., Hoskamer vs. Leviton Manufacturing Co., Inc., Hubbell vs. Leviton Manufacturing Co., Inc., Lutron Electronics Co., Inc. vs. Leviton Manufacturing Co., Inc., Orbit Electric vs. Leviton Manufacturing Co., Inc., Recoton Corporation vs. Leviton Manufacturing Co., Inc., Sales Consultants Corp. vs. Leviton Manufacturing Co., Inc., Shanghai Meihao Electric Inc. vs. Leviton Manufacturing Co., Inc., Southwest Laboratories, Inc. vs. Leviton Manufacturing Co., Inc., Weber vs. Leviton Manufacturing Co., Inc., Zhejiang Dongzheng Electrical Ltd. vs. Leviton Manufacturing Co., Inc.

or not defendant Narcisse was counsel of record in such litigations, it was understood between Leviton and Narcisse that he would perform legal work as required to support such litigations.

42.      The litigations referred to above included either all or virtually all of Leviton's GFCI patent litigations; while there were occasions where other counsel were involved in such litigations on behalf of Leviton, defendants herein during the times described herein for such defendants were Leviton's counsel in such litigations.

43.      It was expressly understood between defendants and Leviton that they would both represent Leviton in connection with investigating and procuring patent protection for the GFCI inventions, and that they would enforce that protection on behalf of Leviton in litigation against alleged infringers, and would defend Leviton in litigations commenced against Leviton that concerned the GFCI patents.

44.      Defendants represented Leviton in litigation to enforce the GFCI patents since 2001, shortly after the '967 Patent was issued, and continued to represent Leviton in GFCI patent litigation once the '558 Patent and the '766 Patent were issued.

45.      When infringers found and exploited deficiencies in the GFCI patent claims, defendants filed continuations and amendments to attempt to obtain complete and correct patent coverage (as described in more detail below), and then filed new lawsuits on behalf of Leviton to enforce the corrected patents.

46.      Defendants' representation of Leviton in litigations to enforce the '967 and '558 Patent included an action in the District of Maryland before Judge Andre Davis.  After Judge Davis granted summary judgment to the alleged infringers, and defendants obtained the '766 Patent, defendants commenced another action against the alleged infringers before Judge Davis to enforce the '766 Patent. *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc.* 01-cv-3855 and 03-cv-

1701, 03-cv-2137 (AMD)(D.Md. 2001)(D.Md 2003); *Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.* 05-cv-889 (D.Md 2005). It is that litigation in which Judge Davis entered judgment for over one million dollars on account of defendants' conduct in the prosecution of the '766 Patent.

47.        In order to obtain the '766 Patent, defendants expressly presented the application for it to the USPTO under a Petition to Make Special, to expedite the patent application "on the basis of actual infringement," pursuant to 37 C.F.R. § 1.102(d) and MPEP 708.02.

48.Defendants commenced the above litigation against Shanghai Meihao to enforce the '766 Patent within three weeks of the '766 Patent being issued.[4]

49.        Within the three years of the filing of the Complaint herein, defendants were still representing Leviton in patent litigations on the '766 Patent.[5]   Defendants did not withdraw as counsel in the above litigation against Shanghai Meihao until March 2007.[6]

**F.      Defendants Continuously Represented Leviton On The GFCI Patents**

50.        Defendants used the same Greenberg Traurig billing and docket code, "0267-001-1415" for all patent applications in the GFCI patent family described below in Table One.[7]  In this code, "0267" refers to Leviton, and "001" is the subfile for patent prosecutions and general matters. The suffix "1415" is defendants' docket and billing code for all the GFCI patent applications in the patent family at issue.

---

[4] *Leviton Mfg. Co. Inc. v. Shanghai Meihao Elec., Inc.* 1:05-cv-00889 (AMD)(D.Md. 2005) at Docket #1 (Complaint).

[5] Complaint in Leviton v. Universal Security Instruments;  Answer in declaratory judgment action Shanghai Meihao Electric v. Leviton;  Complaint in Leviton Manufacturing Co. v. Harbor Freight Tools.

[6] See Shanghai Meihao Litigation docket entry 87; docket entry 31; docket entries 134 and 136.

[7] Transmittal sheet for the '955 Application. The serial number is indicated in the upper right hand corner of the transmittal, above the bar code.  See the first page of the issued '967 Patent which in field [21] identifies it as corresponding to the '955 Application.  The attorney, listed above field [57], is defendant Sutton.

51.       The Greenberg Traurig "docket code" referred to above is the number that defendants placed on every filing in the USPTO which provided a place for patent counsel to set forth their docket code for the matter.

52.       Of the more than thirty GFCI patent applications[8] filed by defendants on behalf of Leviton, seven are pertinent here and have the following relationship; the last three digits of the issued patent number are underscored, and each application and the corresponding patent are thereafter referred to together by the shorthand, *e.g.* "138 App/558 Pat."

| | | | | | |
|---|---|---|---|---|---|
| **Table One** | | | | | |
| | Description | Appl. # & Pat # | GT Docket No. | Filing/Issue Dates | "Name" |
| 1 | Initial Application | 09/138,955; now US 6,040,967 | 0267-001-1415 | filed Aug. 24, 1998, issued March 21, 2000 | 955 App/967 Pat |
| 2 | Continuation-in-part | 09/369,759; now US 6,282,070 | 0267-001-1415CIP1A | filed Aug. 6, 1999, issued August 28, 2001 | 759App/ 070Pat |
| 3 | Continuation-in-part | 09/379,138; now US 6,246,558 | 0267-001-1415CIP3 | filed Aug.20, 1999, issued June 12, 2001 | 138App/ 558Pat |
| 4 | Continuation | 09/879,563; now US 6,437,953 | 0267-001-1415-CIP3CON | filed June 11, 2001, issued August 20, 2002 | 563App/ 953Pat |
| 5 | Continuation | 10/223,284; now US 6,813,126 | 0267-001-1415CIP3CON2 | filed August 19, 2002, issued Nov. 2, 2004 | 284App/ 126Pat |
| 6 | Continuation | 10/827,093 now US 6,864,766 | 0267-001-1415CIP3CON3 | filed April 19, 2004, issued March 8, 2005 | 093App/ 766Pat |
| 7 | Continuation | 10/977,929; now US 7,463,124 | 0267-001-1415CIP3CON4 | filed October 28, 2004, issued Dec. 9, 2008 | 929 App/124 Pat |

53.       MPEP 201.07 provides: "A continuation application is an application for <u>the same invention</u> . . .." *(Emphasis added.)*   MPEP 201.11 provides that a "continuation" or "continuation-in-part" application are both deemed "continuing" applications.

54.       35 U.S.C. § 115 provides in pertinent part: "applicant shall make oath that he believes

---

[8] As noted, the Defendants also worked on other GFCI family member applications, some of which have issued as patents and some of which are still pending in the USPTO.  However, in order not to overwhelm the Complaint with detail, those other applications have been omitted from the chart.

himself to be the original and first inventor of the process, machine, manufacture, or composition of matter, or improvement thereof, for which he solicits a patent."

55.         **093 App/766 Pat**. On April 19, 2004, defendant Magidoff filed U.S. application serial No. 10/827,093 (the "'093 Application"), which issued on March 8, 2005 as U.S. Patent No. 6,864,766 (the "'766 Patent") (093 App/766 Pat). The first page of the transmittal sheet states that on behalf of the inventors, defendant Magidoff claimed that the application that resulted in the '766 Patent was a <u>continuation</u> application of an application (USSN 10/223,285), that was a continuation application of an application (09/879,563), that was a continuation application of the application that corresponds to the 138App/558 Pat.[9]

56.         The defendants' application for the '766 Patent claims priority to five other GFCI patent applications. As shown above, it claims to be a continuation of an application, that claims to be a continuation of a second application, that claims to be a continuation of a third application, which is 138 App/558 Pat.

57.         Although the 138 App/558 Pat and the 093 App/766 Pat issued as different patents, those patents, as well as the other patents below them in the chain are, because they are continuation applications, are presumed to be from the same invention. MPEP 201.07. By asserting that each application was a continuation of the previous one, as early as the '558 Patent, the defendants acknowledged that they are directed to the same invention.

58.         **Reexamination of 093 App/766 Pat**. A Reexamination Proceeding is a proceeding in the USPTO, in which the USPTO considers whether, with respect to an issued patent, there is a substantial new question of patentability of the issued claims. *35 U.S.C. § 304.*

---

[9] See the transmittal sheet for the application that the Patent Office assigned serial number 10/827,093, which is indicated in the upper right hand corner of the transmittal, above the bar code. See also the first page of issued 093 App/766 Pat, which in field [21] shows that it corresponds to the '093 Application. The attorney listed in field [74] is defendant Paul J. Sutton.

59.         The 093 App/766 Pat was the subject of a Reexamination Proceeding, USPTO control No. 95/000,097. (097 Reex 093 App/766 Pat).  During the Reexamination Proceeding, the claims of the '766 Patent were challenged, and the defendants represented Leviton in the re-examination.

60.         The Request for Reexamination was filed in 2005.  Until July 2008, the defendants were counsel of record to Leviton in that proceeding, and were the recipients of behalf of Leviton of all communications and notices from the USPTO.  The representation continued for as long as defendants were USPTO counsel of record for Leviton on the patent.

61.         The Reexamination Proceedings did not conclude until 2009, with the issuance of a reexamination certificate.

62.         During 2007, defendants billed Leviton for work on the re-examination.[10]  The Greenberg Traurig invoices for work on the reexamination proceeding were billed to the same client and matter number, and for the same code as all the GFCI patents, "1415."  The Greenberg Traurig invoices further set forth that the reexamination related to a continuation of such patent, *i.e.*, "0267-001-1415-CIP3CON3."  That number is the docket number that defendant identified on their filings with the USPTO for the reexamination proceeding for the 093 App/766 Pat.

63.         **929 App/124 Pat**.  On October 28, 2004, defendant Magidoff filed U.S. application serial no. 10/977,929 (the "'929 Application") which issued on December 9, 2008 as U.S. Patent No. 7,463,124 (the "'124 Patent") (the "929 App/124 Pat" ).  The first page of the transmittal sheet indicates that, on behalf of the inventors, defendant Magidoff claimed that the application was a continuation application of the 093 App/766 Pat, and was part of a chain of continuation applications (described above in Table One) going back to the 138 App/558 Pat.

64.         By filing the 929 App/124 Pat application as a "continuation application," defendants

---

[10]  Greenberg Invoice numbers 1915015, 1937810 and 2003616.

stated to the USPTO, during the prosecution of the 929 App/124 Pat, they continued to represent Leviton on the invention that is the subject of the 138 App/558 Pat.[11]

65.     The excerpt below is from a filing signed by defendant Narcisse in April 2007, in which defendants gave the genealogy of the patent family, showing a continuous "isolated conductors" patent family begotten from the '558 Patent.

> The <u>current</u> application is a <u>continuation</u> of application no. 10/827,093 now U.S. patent 6,864,766 (hereinafter "the "766 patent"). The <u>'766 patent is a continuation</u> of application no. 10/223,284, filed on August 19, 2002, <u>which is a continuation</u> of application no. 09/879,563, filed on August on June 11, 2001, now US patent 6,437,953, which is a <u>continuation of application</u> no. 09/379,138, filed on Aug. 20, 1999, now US patent 6,246,558 (hereinafter <u>the '558 patent</u>). *(Emphasis added.)*

66.     "Terminal disclaimers" are typically filed with the USPTO because two patent applications claim obvious variants of the same invention, and thus are not patentably distinct. MPEP 804.02.

67.     Magidoff filed "terminal disclaimers" in the context of the 929 App/124 Pat, over the 093 App/766 Pat and the 138 App/558 Pat. Defendant Magidoff filed a "terminal disclaimer" in the context of the 093 App/766 Pat over the 138 App/558 Pat.[12]

68.     By filing these terminal disclaimers, defendants stated to the USPTO that the claimed inventions were obvious variants of each other and thus directed to the same matter.

69.     37 C.F.R. 1.63(d)(1) provides that a new oath is not required in continuation applications.

---

[11] See the first page of issued patent, U.S. 7,463,124, which in field [21] shows that it corresponds to the '929 Application. The attorney listed in field [74] is defendant Paul J. Sutton.

[12] See the three terminal disclaimers. Although defendant Magidoff did not include serial numbers, the terminal disclaimers can be tied to the '929 Application and the '093 Application by the Greenberg Traurig docket numbers in the upper right hand corners, which are listed as 1415CIP3CON3 and 1415CIP3CON4 respectively. Also the application serial number of 929 App/124 Pat is digitally stamped on bottom of the terminal disclaimers that were filed in that case.

70.       In the initial filing of the 929 App/124 Pat application, defendant Magidoff filed an exact copy of the 138 App/558 Pat application, and an exact copy of the inventors' declaration filed in that application.[13]

71.       Defendants continued to act as Leviton's attorneys during the prosecution of 929 App/124 Pat and to make filings with the USPTO through at least May 2007, including filing:

    A.       Information Disclosure Statements.[14]

    B.       Amendments and Responses to Office Actions in the USPTO.[15]

72.       Defendants billed Leviton for the above, and other activities, in connection with the 929 App/124 Pat, through at least June 27, 2008.[16]

## G.   Defendants Continuously Represented Leviton On The "On-Sale Bar" Patents

73.       The defendants were engaged to represent Leviton as to each of the inventions listed below in Table Two, with the same scope of representation as described above in Section D.

74.       The representation with respect to each invention listed below in Table Two commenced when each invention was entrusted to defendants, and continued until defendants were replaced as Leviton's counsel of record before the USPTO with respect to such inventions and the

---

[13] That the Defendants took advantage of this procedure is evidenced by the Greenberg Traurig docket number on the transmittal being 1415CIP3CON4, corresponding to the 929 App/124 Pat, while the Greenberg Traurig docket number on the first page of the application is 026-001-1415CIP3CON, corresponding to the docket number of the 138 App/558 Pat. See the initial filing package for the 929 App/124 Pat.

[14] April 16, 2007 IDS filed by defendant Narcisse of defendant Greenberg Traurig; October 5, 2006 IDS filed by defendant Sutton of defendant Greenberg Traurig.

[15] August 9, 2007 Amendment filed by defendant Narcisse of defendant Greenberg Traurig;
April 16, 2007 Amendment filed by defendant Narcisse of defendant Greenberg Traurig;
February 1, 2007 Response filed by defendant Sutton of defendant Greenberg Traurig;
October 5, 2006 Amendment filed by defendant Sutton of defendant Greenberg Traurig;
May 18, 2007 Supplemental Preliminary Amendment that defendant Paul Sutton filed in Patent Office on behalf of Leviton, which although the signature block has a signature of Claude Narcisse and a date of April 16, 2007, the footer reads May 17, 2007 and the PTO records show receipt on May 18, 2007.

[16] See Greenberg invoices 1766790, 1867374, 1891967, 1937810, 2003616, 2191203; *i.e.* invoices for work performed in the context of the '929 Application.

patents applied for or obtained thereon.

75.        Defendants continued as counsel of record until at least July 2008 with respect to each of the inventions listed in Table Two, and in certain cases for a longer period.  In addition to being Leviton's counsel for such inventions until they were replaced, defendants actually performed work or received legal notices on Leviton's behalf for such inventions as set forth in such Table Two, within three years of the filing of the Complaint herein.

76.        Table Two lists the "on-sale bar" patent applications filed by defendants, correlated to the USPTO application numbers, Greenberg Traurig docket numbers, and documents showing continued representation.  For most matters, a provisional patent application was filed first, and then a non-provisional patent application that claimed priority to the provisional application.  The USPTO application numbers, and the Greenberg Traurig docket numbers, are provided for both the provisional and non-provisional applications.

| Table Two | | | |
|---|---|---|---|
| Invention | Applic. No. | GT docket # | Defendants' Continuing Work |
| Occupancy Sensor | 11/182,36960/ 591,274 | 0267-001-12930267-001-1293PROV | May 30, 2007: PTO sends Office Action to Defendants. December 14, 2007: PTO sends Notice of Abandonment to Defendants. |
| Occupancy Sensor | 11/201,35960/ 601,246 | 0267-001-12940267-001-1294PROV | Revocation and Power of Attorney not filed until July 9, 2009. |
| Occupancy Sensor | 11/201,44060/ 602,478 | 0267-001-12950267-001-1295PROV | April 17, 2007: PTO sends Office Action to Defendants. November 23, 2007: PTO sends Notice of Abandonment to Defendants. |
| Plug in Tool Counter | 11/367,65160/ 658,262 | 0267-001-13990267-001-1399PROV | April 3, 2008: PTO sends Restriction Requirement to Defendants. |
| Magnetic Low Voltage Dimmer | 11/367,98560/ 658,080 | 0267-001-14440267-001-1444PROV | Notice regarding Change of Power of Attorney dated June 4, 2008. |
| Motor Starting Switch | 11/326,68860/ 648,793 | 0267-001-1445 0267-001-1445PROV | October 24, 2006: Defendants pay issue fee and on December 27, 2006 are sent the Issue Notification.  GT Invoice 1766790: shows bill sent by Defendants, including $1,700 USPTO fee and a $400 GT service fee. |

| Table Two | | | |
|---|---|---|---|
| Invention | Applic. No. | GT docket # | Defendants' Continuing Work |
| Controller for Wallbox Dimmer | 29/219,541 | 0267-001-1536(A) | Invoices 1829817 and 1867374: December 19 & 21, 2006 and February 16, 2007, Defendants bill for work done on foreign corresponding matters, including both GT and foreign associate work. |
| Membrane Touch Dimmer | 11/363,88860/657,906 | 0267-001-15370267-001-1537PROV | March 28, 2008 and April 4, 2008: Defendants file Information Disclosure Statements with USPTO. August 6, 2008: PTO sends Office Action to Defendants. February 20, 2009: PTO sends Notice of Abandonment to Defendants. Invoice 2134322: March 28, 2008: Work that is invoiced to Defendants in April 2008. |
| Programming Template | 11/367,93460/658,263 | 0267-001-16930267-001-1693PROV | April 30, 2007: Defendants file an amendment in the PTO. July 25, 2007: PTO sends Office Action to Defendants, which Defendants receive. February 14, 2008: PTO sends Notice of Abandonment to Defendants. GT Invoice 1891967: April 26, 2007: Work that is invoiced by Defendants in May of 2007. GT Invoice 1937810: May 9, 2007: Excess claim fee that is invoiced by Defendants in July of 2007. |
| Security Lock Switch | 11/367,93360/658,081 | 0267-001-19050267-001-1905PROV | October 12, 2006: Defendants submit Response to Office Action. November 1, 2006: PTO sends Notice of Allowance to Defendants February 1, 2007: Defendants pay issue fee.GT Invoice 1766790: for work done in October 2006. GT Invoice 1847473: for work done in January and February 2007. |
| Snap in Printed Circuit Board Holder | 11/236,73960/637,319 | 0267-001-19090267-001-1909PROV | November 16, 2006: Defendants pay issue fee, and December 27, 2006, PTO sends Issue Notification to Defendants. 60)GT Invoice 1782743: for work done in April and November 2006, including a $400 GT fee for paying the issue fee. |
| Weatherproof Electrical Enclosure | 11/182,36860/591,896 | 0267-001-19450267-001-1945PROV | November 14, 2007: Defendants file amendment. February 6, 2008: PTO sends Office Action to Defendants. GT Invoice 1867374: For work done in March 2007. GT Invoice 1955774: For work done in April 2007. GT Invoice 2058430: For work done in November 2007. |
| Indexing Mechanism | 11/078,07860/553,834 | 0267-001-19840267-001-1984PROV | December 14, 2007: Defendants file Amendment after Final Office Action. April 22, 2008: Defendants pay issue fee. GT Invoice 1766790: For work in October 2006. GT Invoice 1891967: For work in March 2007. Invoice 2058430: For work in December 2007. GT Invoice 2150814: For work in April 2008, note $400 charge on cover sheet. |
| High Current Surge Panel with Diagnostics | 11/367,16560/658,069 | 0267-001-20980267-001-2098PROV | May 20, 2008: Defendants file Information Disclosure Statement with USPTO. June 19, 2008: USPTO sends Office Action to Defendants. August 27, 2008: Power of attorney for Defendants is revoked. GT Invoice 2176883: For work performed in May of 2008. |

### H.   Defendants Continuously Represented Leviton On the "Multiplication of Fees" Patents

77.        Defendants represented Leviton on U.S. Patents: 7,282,642; 7,246,792; 7,285,723; 7,250,580; 7,030,318; and 7,279,636; from the time that defendants accepted the assignment to investigate the patentability of the invention at issue, with the same scope of representation as described above in Section D.  The representation continued for so long as defendants were USPTO counsel of record for Leviton on the patents.

78.        Defendants' multiplication of patent fees concerned six inventions.  Certain patent applications directed to the inventions  are listed in Table Three, below and are grouped by the Greenberg Traurig docket numbers assigned to them.  As with the on-sale cases, the Greenberg Traurig docket and billing numbers all begin with 0267-001-, and then are followed by a four digit number for the patent application, and in some cases, further followed by alphanumeric codes. As set forth below, with one exception, the patents did not issue until 2007, well within three years of the filing of the Complaint herein.  As to the one that issued in 2006 (the fifth family), defendants made filings and invoiced Leviton for work in 2007 and thereafter:

| GT Docket # 0267-001- | Applic. Date | Applic. No. | Grant Date | Patent No. |
|---|---|---|---|---|
| Table Three | | | | |
| *0267-001-2004* | | | | |
| 2004 | 6/6/2002 | 10/163,487 | | |
| 2004CIP | 9/6/2002 | 10/236,617 | | |
| 2004CIP2/PCT | 6/6/2003 | PCT/US2003/017936 | | |
| 2004CIP3 | 5/25/2004 | 10/852,812 | 10/16/2007 | 7,282,642 |
| *0267-001-2005* | | | | |
| 2005/US | 6/6/2002 | 10/163,471 | | |
| 2005CIP/US | 9/6/2002 | 10/236,616 | | |
| 2005CIP2/PCT | 6/6/2003 | PCT/US2003/018043 | | |
| 2005CIP3 | 5/25/2004 | 10/853,465 | 7/24/2007 | 7,247,792 |

| 0267-001-2006 | | | | |
|---|---|---|---|---|
| 2006/US | 6/6/2002 | 10/163,934 | | |
| 2006CIP/US | 9/6/2002 | 10/236,198 | | |
| 2006CIP2/PCT | 6/6/2003 | PCT/US2003/018115 | | |
| 2006CIP3 (1640-7 CIP II) | 5/25/2004 | 10/852,818 | 10/23/2007 | 7,285,723 |
| 0267-001-2007 | | | | |
| 2007/US | 6/6/2002 | 10/163,546 | | |
| 2007CIP/US | 9/6/2002 | 10/236,642 | | |
| 2007CIP2/PCT | 6/6/2003 | PCT/US2003/017805 | | |
| 2007CIP3 | 5/25/2004 | 10/852,815 | 7/31/2007 | 7,250,580 |
| 0267-001-2008 | | | | |
| 2008/US | 6/6/2002 | 10/163,490 | | |
| 2008CIP/US | 9/6/2002 | 10/236,199 | | |
| 2008CIP2/PCT | 6/6/2003 | PCT/US2003/018044 | | |
| 2008CIP3 | 5/25/2004 | 10/852,794 | 4/18/2006 | 7,030,318 |
| 0267-001-2009 | | | | |
| 2009/US | 6/6/2002 | 10/163,488 | | |
| 2009CIP/US | 9/6/2002 | 10/236,406 | | |
| 2009CIP2/PCT | 6/6/2003 | PCT/US2003/017806 | | |
| 2009CIP3 | 5/25/2004 | 10/852,816 | 10/9/2007 | 7,279,636 |

79.        **0267-001-2004**. The first invention is the subject  U.S. 7,282,642, which issued within three years of filing that complaint and during which, the Defendants: (1) on November 10, 2006, filed an amendment with the Patent Office; (2) on January 5, 2007 filed a Request for Continued Examination with the Patent Office; (3) on February 26, 2007 participated in an Examiner-Initiated Interview, which became part of an Interview Summary dated March 7, 2007; and (4) on June 7, 2007, paid the issue fee and filed an Information Disclosure Statement.[17]

80.        The Defendants used the docket number 0267-001-2004 to refer to the patent

---

[17] See excerpts from the file wrapper.

applications directed to this invention, and charged Leviton for the work performed in connection with the prosecution of U.S. 7,282,642 (USSN 10/852,812) during the period through October 4, 2007.[18]  Defendants also invoiced Leviton for other U.S. patent family members,[19] and related foreign family members, during the period through August 23, 2007.[20]

81.      **0267-001-2005 Patent Family**.  The second invention is the subject of U.S. 7,247,792, which issued within three years of the filing of the Complaint, and for which defendants: (1) on December 13, 2006, filed an amendment and Request for Continued Examination with the Patent Office; (2) on February 6, 2007 participated in an Examiner-Initiated Interview; and (3) on May 16, 2007, paid the issue fee and filed an Information Disclosure Statement.[21]

82.      Defendants used docket number 0267-001-2005 to refer to patent applications directed this invention, and charged Leviton for the work performed in connection with the prosecution of U.S. 7,247,792 (USSN 10/853,465) during the period through May 16, 2007,22 and also invoiced Leviton for related foreign family members, during the period through December 20, 2007.[23]

83.      **0267-001-2006 Patent Family**.  The third invention is the subject of U.S. 7,285,723, which issued within three years of the filing of the Complaint, the Defendants: (1) on November 27, 2006, filed an amendment with the Patent Office; (2) on May 14, 2007, filed an amendment with the Patent Office; and (3) on September 9, 2007 paid the issue fee.[24]

---

[18]  See from invoices numbers 1829817, 1867374, 1847473, 1955774, and 2021523).
[19]  Excerpts from invoices 1829817, 1847473, and 2003616.)
[20]  Excerpts from invoices 1847473, 1867374, 1891967, 1955774, 2003616, and 2134322).
[21]  Excerpts from the file wrapper.
[22]  Excerpts from invoices numbers 1829817, 1847473, 1915015, and 1955774).  Excerpts from invoices 1847473, 1867374, 2003616, and 2134322).
[23]  Excerpts from invoices 1847473, 1867374, 2003616, and 2134322).
[24]  Excerpts from the file wrapper.

84.       Defendants used the docket number 0267-001-2006 to refer to patent applications directed to this invention, and charged Leviton for the work performed in connection with the prosecution of U.S. 7,285,723 (USSN 10/852,818), during the period through September 7, 2007.[25] Defendants also invoiced Leviton for other U.S. patent family members,[26] and related foreign family members, during the period through December 20, 2007.[27]

85.       **0267-001-2007 Patent Family**.  The fourth invention is the subject of U.S. 7,250,780, which issued within three years of the filing of the Complaint, and for which the Defendants: (1) on January 23, 2007, filed an amendment with the Patent Office; and (2) on May 7, 2007, filed an Information Disclosure Statement with the Patent Office and paid the issue fee.[28]

86. Defendants used the docket number 0267-001-2007 to refer to patent applications directed to this invention, and charged Leviton for the work performed in connection with the prosecution of U.S. 7,250,780 (USSN 10/852,815, during the period through July 19, 2007.[29] Defendants also invoiced Leviton for other U.S. patent family members,[30] and related foreign family members, during the period through February 25, 2008. [31]

87.       **0267-001-2008 Patent Family**. The fifth invention is the subject of  U.S. 7,030,318, for which within three years of the filing of the Complaint, the Defendants on May 8, 2007, filed a Request for a Certificate of Correction with the Patent Office.

88. The Defendants used the docket number 0267-001-2008 to refer to patent applications directed to this invention , and charged Leviton for the work performed in connection with the prosecution

---

[25] Excerpts from invoices numbers 1829817, 1915015, and 2003616).
[26] Excerpts from invoices 1955774, 2058430, 2003616, and 2021523
[27] Excerpts from invoices 1847473, 1867374, 1955774, 2003616, and 2134322)
[28] Excerpts from the file wrapper.
[29] Excerpts from invoices numbers 1829817, 1867374, 1955774, and 2003616).
[30] Excerpts from invoices 1829817, 2003616, and 2107620)
[31] Excerpts from invoices 1847473, 1867374, 1937810, 2003616, and 2134322.

of U.S. 7,030,318 (USSN 10/852,794), during the period through May 8, 2007.[32] Defendants also

invoices Leviton for other U.S. patent family members,[33] and at least one related foreign family

member, during the period through March 1, 2007.[34]

89.        **0267-001-2009 Patent Family**.   The sixth invention is the subject of U.S.

7,279,636, which issued within three years of the filing of the Complaint, and for which

defendants: (1) on December 1, 2006, filed an amendment with the Patent Office; (2) on April 4,

2007, filed a Supplemental Amendment; and (3) on August 2, 2007, filed an Information

Disclosure Statement with the Patent Office and paid the issue fee. [35]

90.        Defendants used the docket number 0267-001-2009 to refer to this patent

applications directed to this invention, and charged Leviton for the work performed in connection

with the prosecution of U.S. 7,279,636 (USSN 10/852,816), during the period through September

26, 2007.[36] Defendants also invoiced Leviton for at least one other U.S. patent family member,[37]

and related foreign family members, during the period through December 20, 2007.[38]

**I.**    **Defendants Continuously Represented Leviton on the "Re-examination" Patent**

91.        Defendants represented Leviton on U.S. Patent No. 5,886,423 (the "423 Patent")

from the time that defendants accepted the assignment to investigate the patentability of the

invention at issue, with the same scope of representation as described above in Section D.

---

[32] Excerpts from invoices numbers 1915015, and 2003616).
[33] Excerpts from invoices 1829817, and 1915015),
[34] Excerpts from invoice 1867374)
[35] Excerpts from the file wrapper.
[36] Excerpts from invoices numbers 1847473, 1891967, and 2021523).
[37] Excerpts from invoices 1829817 and 1891967.
[38] Excerpts from invoices 1847473, 1867374, 1937810, 2003616, and 2134322).

92.    A reexamination proceeding is a proceeding in which the Patent Office reexamines whether issued patent claims are patentable over printed publications. *35 U.S.C. § 301 et seq.* Any person may request that the Patent Office reexamine a patent. *35 U.S.C. § 302.* If the Patent Office determines that the references presented to it raise a substantial new question of patentability, it will grant the request and begin to reexamine the patent. *35 U.S.C. § 303.*

93.    For the Reexamination Proceeding referred to in Section P herein, the request for reexamination was made on March 1, 2002. On April 22, 2002, the Patent Office granted the request for reexamination.

94.    Defendants Greenberg Traurig, Sutton and Magidoff represented Leviton in such reexamination proceeding. During the Reexamination Proceedings, defendant Sutton signed a number of documents stating that he was the "Attorney for Patent Owner." Defendants' power of attorney for this case was never revoked, and even as of December 17, 2009, defendants continued to be Leviton's agent of record in the USPTO. By representing Leviton as counsel of record, defendants were obligated to submit amendments, and were the recipients on behalf of Leviton for all communications and notices from the USPTO.

95.    In addition, on November 30, 2006, defendants billed Leviton for coordinating payment of the Canadian application issue fee for the Canadian patent; the November invoice tacks a $400 fee on top of the Canadian patent agent's fee, which bears an invoice date of September 28, 2006.

## J.   Defendants' Malpractice In Failing To Prosecute Correct and Complete Patent Claims For One Of Leviton's Most Significant Recent Inventions

96.    **Background of the GFCI Inventions**. A GFCI receptacle is commonly found in kitchens and bathrooms near a water source. It is designed to detect a small loss of current that might indicate there is a broken path to the ground, *i.e.*, a "ground fault," which could cause the

shock or electrocution of a someone holding an appliance that is plugged into the defective receptacle.  A properly functioning GFCI receptacle will detect the "ground fault" and will "interrupt" the circuit, cutting off all power to the face outlets, and preventing shock or electrocution.

97.         A GFCI receptacle typically has two buttons: one to test its operation, and the other to reset it, after it has been tripped by a ground fault.  One long-standing industry problem was how to prevent the GFCI from being reset if the device was broken.  In that situation, someone could reset the device thinking it was still safe, but the device would no longer give protection from a ground fault.

98.         **Leviton's Reset Lockout Invention**.   In approximately mid-1998 Leviton employees were the first in the industry to solve this problem, and invented "reset lockout" technology.  Simply put, it prevented a broken GFCI device from being reset, so that a person would not be shocked or electrocuted by plugging an appliance into a GFCI that no longer protected against a ground fault.  Leviton considered "reset lockout" to be one of its most important inventions.

99.         Leviton submitted to defendant Sutton an invention disclosure to seek patent protection for this "reset lockout" technology.

100.        Sutton prepared a patent application and filed it on August 24, 1998.  After a complete and thorough examination, the USPTO granted U.S. Patent No. 6,040,967 (the '967 Patent) to Leviton.  This was the first, or parent, of a line of "reset lockout" patent applications.

101.        **"Reverse Wire" And Its Solution**.  On or about October 20, 1998, approximately two months after the application for the '967 Patent was filed, Leviton provided Sutton with another invention that solved a second long standing problem known as "reverse wire," so named

because it arose when an installer of a GFCI wired the device in reverse.  Simply put, if the installer wired a GFCI device with the incoming or "line" terminals mistakenly connected to the outgoing or "load" terminals, the faulty installation would defeat the protection of the GFCI.  Leviton refers to this invention as "isolated conductors."

102.        Prior to this invention, GFCIs had one conductor connected to the incoming or "line" terminals, and a second conductor that fed power to both the "load" terminals and the "face outlets," *i.e.*, the place where an appliance was plugged in.  The circuit interrupter was situated between the first and second conductors.  If the GFCI was installed correctly, in the event of a ground fault, the circuit interrupter tripped, cutting off power to the load terminals and the face outlets.

103.        However, when the device was wired in reverse, power entered from the wrong side, *i.e.*, the "load" terminals.  Because the "load" terminals were permanently connected to the face outlets, even if the circuit interrupter tripped due to a ground fault, the face outlets were still live, and could still cause shock or electrocution.

104.        Leviton invented the "isolated conductor" GFCI to solve this problem.  This new GFCI has three separate conductors: one for the line side, one for the load side, and one for the face outlets.  When a ground fault is detected, the circuit interrupter isolates all three conductors.  In this way, even if the installer has wired the GFCI in reverse, the "isolated conductors" would cut off power to the face outlets and prevent shock or electrocution if a ground fault is detected.

105.        "Isolated conductors" is one of Leviton's more significant inventions.

106.        In no small part, Leviton's demonstration of a viable "reverse-wired" protected GFCI made it possible for the ANSI standards body to require, effective July 2006, that a GFCI that is wired in reverse should be unable to provide power at the outlets upon installation.

107.        Leviton submitted to defendant Sutton an invention disclosure to seek patent protection for this invention.

108.        Leviton provided Sutton with a preferred embodiment of the new GFCI that encompassed both "reset lockout" and "isolated conductors." The preferred embodiment used a bridge mechanism to electrically connect the three conductors. This bridge mechanism was referred to as "bridge contacts."

109.        On August 20, 1999, Sutton filed a patent application entitled "Circuit Interruptive Device with Reverse Wiring Protection." This application was filed as a continuation in part of the application that led to the '967 patent. On June 21, 2001, the USPTO granted U.S. Pat No. 6,246,588 (the '558 patent) to Leviton.

110.        **Malpractice in Failing to Prosecute Correct and Complete Patent Claims**. Instead of prosecuting patent claims that covered the full breadth of the "isolated conductor" invention, Sutton prosecuted patent claims limited in one fashion or another to the preferred embodiment. Sutton did not prosecute a patent claim for "isolated conductors" as a separate invention, but only claimed patent protection for "isolated conductors" used in connection with "reset lockout."

111.        Despite having every opportunity to do so prior to the issuance of the '558 Patent, Sutton failed to prosecute proper and correct patent claims directed to this invention. Only later when unauthorized GFCIs incorporating "isolated conductors" were found in the marketplace did Sutton appreciate he had failed to properly claim the isolated conductors invention.

112.        As a result of defendants Greenberg Traurig and Sutton's negligence in securing proper patent protection for Leviton's "isolated conductors" invention, Leviton had to pay Greenberg Traurig and Sutton excessive fees for a multiplicity of patent application filings in

excess of what a patent prosecutor of ordinary skill would have achieved following accepted patent prosecution practice.

113.      By failing to completely and correctly patent the invention, defendants Greenberg Traurig and Sutton caused Leviton to expend millions of dollars of unnecessary legal fees and expenses in litigating multiple patent infringement cases, and to settle such cases for less than they would have been worth if the proper patents had been obtained.

114.      Defendants Greenberg Traurig and Sutton caused Leviton to incur legal fees and expenses in the Shanghai Meihao Litigation that would have been unnecessary if the proper patents had been obtained, and to incur the damage to the value of the patents described below.

115.      Leviton was further harmed by widespread infringement of its "isolated conductors" invention, because until recently it did not have the proper patent coverage to obtain judicial relief.

**K.   Defendants' Malpractice During Prosecution Of The Application For the '766 Patent**

116.      On April 19, 2004, Sutton filed another patent application as a continuation application regarding GFCI technology, which in accordance with applicable U.S. statutes and regulations, claimed a priority filing date back to the filing of the '558 patent, August 20, 1999. This application was drafted with the goal of claiming "isolated conductors" separate from reset lockout.  On March 8, 2005, the USPTO granted U.S. Patent No. 6,864,766 (the "'766 Patent") to Leviton.

117.      Defendant Narcisse was the attorney who actually wrote the patent application for the '766 Patent, and prosecuted such patent before the USPTO.  Defendants Sutton and Magidoff were responsible for supervising defendant Narcisse with regard to the '766 Patent.

118.      Narcisse had not previously worked on any of the patent applications related to the

"reset lockout" or "isolated conductors" inventions.  However, he had worked on another, later invention by a different group of inventors, who created a new embodiment for a GFCI with the isolated conductors invention.  This application was filed six months prior to the filing of the application for the '766 Patent, and was assigned Serial No.10/690,776 ("the Germain Application").

119.        The Germain Application was prepared by defendant Narcisse, under the supervision of defendants Sutton and Magidoff.

120.        Narcisse filed claims in the application for the '766 Patent that were nearly identical to the claims he had previously filed in the Germain Application.

121.        Defendant Greenberg Traurig filed a Petition to Make Special requesting expedited prosecution of the application for the '766 Patent, in light of infringing activity.

122.        During prosecution of the application for the '766 Patent, the Greenberg Traurig Defendants did not inform the Patent Office examiner about the co-pending Germain Application with nearly identical claims, and did not make disclosures about relevant litigations and other matters.

123.        The Greenberg Traurig Defendants' failure to make proper disclosures to the USPTO in the application for the '766 Patent resulted in adverse findings in the litigation discussed below.

## L.     Judicial Determinations Of Greenberg Traurig's Malpractice and Breach of Duty In The Shanghai Meihao Litigation

124.        Three weeks after the '766 Patent was granted, on March 31, 2005, defendant Greenberg Traurig filed suit in the District of Maryland on behalf of Leviton against Universal Security Instruments, Inc. ("USI") and Shanghai Meihao Electric, Inc. ("Shanghai Meihao") for infringement of the '766 Patent.  *Leviton Manufacturing Co., Inc. v. Universal Security*

*Instruments, et al.*

125.        On May 5, 2005, Shanghai Meihao filed its Answer in that case, and commenced a declaratory judgment action against Leviton ("the Shanghai Meihao Declaratory Judgment Action"). The actions were consolidated and are referred to collectively herein as "the Shanghai Meihao Litigation."

126.        Shangai Meihao raised the defense, and sought a declaratory judgment, that the '766 Patent was unenforceable due to "inequitable conduct" during prosecution of the '766 Patent before the USPTO.

127.        The conduct alleged by Shanghai Meihao was the conduct of the Greenberg Traurig Defendants. Shanghai Meihao referred to the conduct of Sutton, Magidoff, and Narcisse, by name, and made detailed allegations of wrongdoing and breaches of professional responsibility and standards of practice by them.

128.        On or about January 14, 2008, Shanghai Meihao moved for attorneys' fees and costs against Leviton, alleging "inequitable conduct" by the Greenberg Traurig Defendants during prosecution of the application for the '766 Patent, and discovery misconduct by the Greenberg Traurig Defendants during the Shanghai Meihao Litigation.

129.        By email dated January 20, 2008, Leviton informed the Greenberg Traurig Defendants of Shanghai Meihao's motion, and sent the Greenberg Traurig Defendants a copy of the publicly-filed motion.

130.        **Judicial Determinations Of Failure to Disclose by Greenberg Traurig Defendants**. In a Report and Recommendation dated December 23, 2008 in the Shanghai Meihao Litigation ("the Gauvey Decision"), Magistrate Judge Susan K. Gauvey determined that Greenberg Traurig had violated applicable regulations of the PTO and case law in connection with