UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LEVITON MFG. CO., INC.,                :

             Plaintiff,            :

     -against-                   :

                     :

GREENBERG TRAURIG LLP, et al.,         :

         Defendants.         :
------------------------------------X

09 Civ. 8083 (GBD) (THK)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Leviton Mfg. Co. ("Leviton") alleges in its Complaint that Defendant Greenberg Traurig LLP and certain individual attorneys at Greenberg Traurig were professionally negligent in prosecuting a number of patent applications before the United States Patent and Trademark Office ("USPTO" or "Patent Office"). As a consequence, the "on-sale bar" foreclosed the patentability of Leviton's inventions, because the inventions were on sale in the United States for more than one year prior to the date of the patent applications. Presently before the Court is a dispute over Leviton's invocation of the attorney-client privilege and work-product doctrine in response to subpoenas, issued by Defendants to the third-party law firms that assumed responsibility for handling the patents after Greenberg Traurig was terminated as Leviton's counsel. The subpoenas seek a wide array of documents from the successor law firms, including all

documents relating to the patentability of the Leviton inventions, documents containing any analysis or decision regarding the scope of the claims of the relevant Leviton patents, documents containing analysis relating to the decision to abandon the patents, and documents relating to any contemplated or actual legal action taken against Greenberg Traurig.   Greenberg Traurig contends that any privilege has been impliedly waived through the "at issue" waiver doctrine, as Leviton has raised claims which can only be fairly assessed through examination of the subpoenaed documents.   For the reasons that follow, the Court concludes that there has not been a waiver of privilege.[1]

### BACKGROUND

In the Complaint, Leviton alleges that it disclosed to Defendants certain inventions, and that the inventions would be sold to the public by a certain date.   They contend that, over the course of several years, Defendants failed to file at least five patent applications within one year from first public sale of the inventions, that Leviton was therefore forced to abandon the pending patent applications and/or patents because of the "on-sale bar" rule, and, as a consequence, Leviton was

---

[1] The action was referred to this Court for general pretrial supervision, pursuant to 28 U.S.C. § 636(b)(1)(A).

financially harmed. (See Second Amended Complaint ("Sec. Am. Compl.") ¶¶ 167-214.)

Greenberg Traurig contends that after it was discharged by Leviton, Leviton retained new counsel for the Patent and Trademark Office proceedings.  According to Defendants, at Leviton's direction, the new firms continued to prosecute some of the patents for nearly a year, and, in consultation with Leviton, abandoned or disclaimed some of them only shortly before this action was filed.  Greenberg Traurig argues that it was not involved in the decisions to abandon or disclaim the patents, and no publicly available documents disclose the reasons that they were abandoned.  Consequently, Greenberg Traurig argues that,

> the *only* way for Defendants to refute Leviton's allegations in its Second Amended Complaint that its actions to abandon or disclaim were taken *because of* the Defendants' alleged failure to timely file the applications — and not for another reason, such as a business judgment not to pursue them or because the alleged inventions were not actually patentable — is by reviewing the very documents Leviton refuses to produce.

(Letter-Brief from Aaron P. Maurer, Esq. to the Court, dated Oct. 14, 2010 ("Defs.' Br.") at 3.)  That is, it seeks to review all of successor counsels' files relating to the patents, including the communications between Leviton and its counsel that relate to the patents and why they were abandoned.

3

Leviton responds that it does not intend to rely on privileged communications in proving its claims; rather, it will simply establish the dates on which the assignments were given to Defendants, and the dates on which the products went on sale. It contends that Defendants allowed five or more years to go by between receiving their assignments and applying for the patents, during which time the products were on sale. Thus, as a matter of law, the "on-sale bar" foreclosed patentability. According to Plaintiff, because the one-year "on-sale bar" is absolute and cannot be waived, Defendants' malpractice can be established on the basis of a clear legal standard and objective facts. Leviton argues that any defenses to its claims must be proven in traditional fashion, through normal discovery and expert testimony, not by reference to its privileged communications. (See Letter-Brief from Jeffrey A. Jannuzzo, Esq. to the Court, dated Oct. 14, 2010 ("Pl.'s Br.") , at 2-4.)

## DISCUSSION

I. At-Issue Waiver

The attorney-client privilege affords confidentiality to communications among clients and their attorneys for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept

4

confidential. <u>See</u> <u>United States v. Int'l Bhd. of Teamsters</u>, 119
F.3d 210, 214 (2d Cir. 1997); <u>United States v. Doe (In re Six</u>
<u>Grand Jury Witnesses)</u>, 979 F.2d 939, 943 (2d Cir. 1992); <u>John Doe</u>
<u>Corp. v. United States (In re John Doe Corp.)</u>, 675 F.2d 482, 487-
88 (2d Cir. 1982); <u>Bank Brussels Lambert v. Credit Lyonnais</u>
<u>(Suisse) S.A.</u>, 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (citing <u>United</u>
<u>States v. United Shoe Mach. Corp.</u>, 89 F. Supp. 357, 358-59 (D.
Mass. 1950)). The privilege is among the oldest of the common
law privileges and "exists for the purpose of encouraging full
and truthful communication between an attorney and his client."
<u>In re von Bulow</u>, 828 F.2d 94, 100 (2d Cir. 1987); <u>accord</u> <u>United</u>
<u>States v. Bilzerian</u>, 926 F.2d 1285, 1292 (2d Cir. 1991). However,
because the privilege "stands as an obstacle of sorts to the
search for truth," it must be applied "only to the extent
necessary to achieve its underlying goals." <u>XYZ Corp. v. United</u>
<u>States (In re Keeper of the Records)</u>, 348 F.3d 16, 22 (1st Cir.
2003); <u>see also</u> <u>Salomon Bros. Treasury Litig. v. Steinhardt</u>
<u>Partners, L.P. (In re Steinhardt Partners)</u>, 9 F.3d 230, 235 (2d
Cir. 1993) (finding that the privilege does not apply in
situations where the client's conduct does not serve to
"improve[] the attorney-client relationship") (quoting <u>Permian</u>
<u>Corp. v. United States</u>, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

The attorney-client privilege may be waived. Although Defendants' rely primarily upon federal law in arguing the issue of waiver, Leviton correctly argues that it is New York law that provides the law of decision for Leviton's claim of legal malpractice. See Chin v. Rogoff & Co., P.C., No. 05 Civ. 8360 (NRB), 2008 WL 2073934, at *4 (S.D.N.Y. May 8, 2008) ("when a discovery dispute involves an attorney-client relationship with a New York attorney, New York privilege law applies"). Nevertheless, the parties cite both New York and federal law in support of their positions, and appear to hold the view that there is no material difference in New York and federal law on this issue. (See Pl.'s Br. at 2.)

Under Second Circuit law, waiver of attorney-client privilege may occur,

> when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense . . . .

In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008) (quoting Sedco Int'l S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)). Courts have recognized that a party need not explicitly rely upon advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief

in the lawfulness of his conduct, is relied upon in support of a
claim of defense.  Because legal advice that a party received may
well demonstrate the falsity of its claim of good faith belief,
waiver in these instances arises as a matter of fairness, that
is, it would be unfair to allow a party to "use[] an assertion of
fact to influence the decisionmaker while denying its adversary
access to privileged material potentially capable of rebutting
the assertion." John Doe Co. v. United States, 350 F.3d 299, 306
(2d Cir. 2003); accord County of Erie, 546 F.3d at 229; see also
Bilzerian, 926 F.2d at 1292; von Bulow, 828 F.2d at 103; Am. S.S.
Owners Mut. Prot. and Indem. Ass'n v. Alcoa S.S. Co., 232 F.R.D.
191, 199 (S.D.N.Y. 2005).

As the Second Circuit has cautioned, however, determinations
of fairness must be decided on a case-by-case basis, in the
specific context in which the privilege has been asserted, rather
than on the basis of generalizations. See John Doe, 350 F.3d at
302. Moreover, in the Erie decision, the Second Circuit reined in
what it perceived to be an overbroad invocation of the fairness
doctrine, based on principles set forth in Hearn v. Rhay, 68
F.R.D. 574 (E.D. Wash. 1975).   Under the Hearn standard, an
implied waiver or forfeiture of privilege would be found if:

> (1) assertion of the privilege was a result of some
> affirmative act, such as filing suit by the asserting
> party; (2) through the affirmative act, the asserting

7

party has put the protected information at issue by
making it relevant to the case; and (3) the application
of the privilege would have denied the opposing party
access to information vital to the defense.

Id. at 581.  In Erie, the Second Circuit concluded that simply
because privileged information is relevant to a claim or defense
in the case does not give rise to an implied waiver; rather, to
forfeit privilege, "the party must rely on privileged advice from
his counsel to make his claim or defense." Erie, 546 F.3d at 229.
The court declined, however, to specify what degree of reliance
is required.

        The  New  York  Court  of  Appeals  has  adopted  the  Second
Circuit's  view  that  "to  what  extent  waiver  has  occurred  is
inherently  factual  and  turns  on  case-by-case  considerations  of
'fairness'."  People  v.  Kozlowski,  11  N.Y.3d  222,  246,  869
N.Y.S.2d 848, 863 (2008) (citing John Doe Co. v. United States,
350  F.3d  299,  302  (2d  Cir.  2003))(quoting  In  re  Grand  Jury
Proceedings, 291 F.3d at 183).  And, New York courts have defined
"at issue" waiver as occurring

        where a party affirmatively places the subject matter
        of  its  own  privileged  communication  at  issue  in
        litigation,  so  that  invasion  of  the  privilege  is
        required  to  determine  the  validity  of  a  claim  or
        defense  of  the  party  asserting  the  privilege,  and
        application  of  the  privilege  would  deprive  the
        adversary of vital information.

<u>Deutsche Bank Trust Co. of Ams. v. Tri-Link Inv. Trust</u>, 43 A.D.3d 56, 63, 837 N.Y.S.2d 15, 23 (1st Dep't 2007); <u>accord</u> <u>Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft LLP</u>, 62 A.D. 3d 581, 582, 880 N.Y.S.2d 617, 619 (1st Dep't 2009); <u>IMO Indus., Inc. v. Anderson Kill & Olick, P.C.</u>, 192 Misc. 2d 605, 609, 746 N.Y.S.2d 572, 575 (S. Ct. N.Y. Cty. 2002); <u>see also</u> <u>Chin</u>, 2008 WL 2073934, at *5.

Like the Second Circuit, New York courts will not find an at issue waiver merely because privileged information is relevant to the issues being litigated; "[r]ather, at issue waiver occurs when the party has asserted a claim or defense that he intends to prove by use of the privileged materials," <u>Deutsche Bank</u>, 43 A.D.3d at 23, 837 N.Y.S.2d at 64 (internal quotation marks omitted; <u>accord</u> <u>Veras Inv. Partners, LLC v. Akin Gump Strauss Hauer & Feld LLP</u>, 52 A.D.3d 370, 374, 860 N.Y.S.2d 78, 82 (1st Dep't 2008), or, where rather than being merely relevant, "the privileged documents are indispensable to a party's claims or defenses." <u>Chin</u>, 2008 WL 2073934, at *5; <u>Carl v. Cohen</u>, 23 Misc. 3d 1110(A), 886 N.Y.S.2d 66 (Table), 2009 WL 997517, at *3 (S. Ct. N.Y. Cty. 2009).  For example, where a claim of malpractice is premised upon reliance on the erroneous advice of predecessor counsel, under both New York and federal law, the legal advice received from any other counsel on the same issue is placed at

9

issue. <u>See, e.g.</u>, <u>Goldberg v. Hirschberg</u>, 10 Misc. 3d 292, 297-98, 806 N.Y.S.2d 333, 337 (S. Ct. N.Y. Cty. 2005) (citing to the "remarkable similarity" to <u>Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez</u>, No. 96 Civ. 7233 (LMM)(RLE), 2003 WL 21277139 (S.D.N.Y. June 2, 2003), <u>aff'd</u> 2005 WL 756859 (S.D.N.Y. April 1, 2005), for the proposition that "because plaintiff was claiming that it relied on defendant's advice on a certain issue to its detriment, the legal advice it received from any other lawyers on that issue related to the reasonableness of plaintiff's reliance and was not subject to the attorney-client privilege").

II. <u>Application</u>

Plaintiff argues that there has been no forfeiture of its attorney-client privilege because it does not intend to rely on the advice of counsel or any privileged communications to prove its claims.   Rather, Leviton argues, it is a matter of indisputable law that Defendants' failure to file the patent applications in a timely fashion resulted in an "on-sale bar" and inability to secure the patents, thus requiring that the applications be withdrawn and that the patents be abandoned.   Nor does Plaintiff intend to rely on its state of mind to advance its claims, which could only be rebutted by viewing what it learned from its successor attorneys.

Defendants respond that this is an oversimplification.  In order to establish its claim of legal malpractice, Plaintiff must establish, as alleged in its Complaint, that each of the on-sale bar applications concerned a valuable commercial invention, and the loss of patent protection to each was because of Defendants' malpractice. (See Sec. Am. Compl. ¶¶ 177, 180, 188, 202, 209, 214.)  Defendants argue that it was only after Leviton hired successor counsel, who continued to prosecute the patents, that a decision was made to abandon the patents.  Although Plaintiff can claim that it abandoned the patents because of Defendants' failure to timely file the patent applications, Defendants argue that they are not required to take Leviton at its word. According to Defendants, it is apparent that the decision to cease prosecution of the patents was reached in consultation with successor counsel; that decision could have been reached for any number of reasons, including a determination that the patents were not economically valuable or because the alleged inventions were not actually patentable; and, without access to Leviton's communications with successor counsel, Defendants are deprived of any opportunity to disprove that it was Defendants' professional errors that were the true reason for the abandonment of the patents and the proximate cause of Plaintiff's damages.

11

Although there is some superficial appeal to Defendants'
argument, the Court concludes that there has not been an at issue
waiver of privilege by Leviton.   Leviton will not rely on
privileged advice to prove its claims against Defendants.   And,
it does not intend to rely on any privileged communications in
advancing its claims.   Instead, its claim on this issue is
straightforward — Defendants committed malpractice when they
failed to file timely patent applications, thus resulting in the
inability to secure patents because of the on-sale bar rule.

Although it might be useful to Defendants to know what
Plaintiff's new attorneys were thinking about the patents after
Defendants were discharged as counsel, that knowledge is not
critical to defending against the malpractice claim.   Defendants
can attempt to establish that they were not professionally
negligent, and, even if they were, that their negligence was not
the proximate cause of injury to Leviton, by demonstrating that
they timely filed the patent applications or, even if they did
not, notwithstanding the on-sale bar rule, it was still possible
to secure the patents.   Those propositions can be established by
reference to objective facts and law.   Leviton's state of mind or
advice of counsel is not in issue. See Carl, 2009 WL 997517, at
*4 (defendant attorney in malpractice action was free to argue,
and could demonstrate, that successor counsel could have taken

12

action within the statute of limitations to remedy injury allegedly caused by defendant attorney, without invading privileged communications of successor counsel); TIG Ins. Co. v. Yules & Yules, No. 99 Civ. 3378 (KMW)(MHD), 1999 WL 1029712, at *2-3 (S.D.N.Y. Nov. 12, 1999) (where defendant attorney was sued for malpractice for failing to file an action within the statute of limitations, he did not require access to confidential communications with successor counsel who continued to litigate the action, in order to demonstrate that there were arguments successor counsel could have made to protect the plaintiff's interests).

Similarly, Defendants argue that with respect to some of the patents in issue, there was no on-sale bar, and that in some cases the products on sale were not necessarily covered by the patent. (See Transcript of Oral Argument, dated Sept. 29, 2010 ("H. Tr.") at 46-47.)  Those propositions, as well, can be proved through traditional  discovery, and do not require invading the attorney-client privilege.

Contrary to what Defendants argue, they do not have to demonstrate that there were other reasons why Plaintiff abandoned the patents.  Defendants simply need to demonstrate that the patents did not have to be abandoned because the applications were not filed prior to a certain date.  It is the untimely

filing that is the sole claim of negligence that Plaintiff is advancing, and if the failure to timely file the patent applications need not have been a reason to abandon the patents, that can be proved without access to Plaintiff's confidential communications with its successor attorneys. Moreover, in order to address Plaintiff's claim that it is Defendants' negligence that resulted in the destruction of the patents' value, Defendants can attempt to demonstrate, as they imply as possible explanations for Plaintiff's abandoning the patents, that the alleged inventions were not patentable or otherwise lacked economic value. Such damage and causation issues are standard in commercial litigation, and are capable of proof through traditional fact and expert discovery.

A more difficult, but ultimately, similarly resolved question is presented by Defendants' contention that for four out of five of the patent applications in issue that were transferred to third-party law firms, the Patent Office issued various office actions during the course of the subsequent representation. For two of the applications, the office actions made no reference to the on-sale bar, yet Leviton failed to respond to those actions. And, with respect to several applications, Notices of Allowance were issued, but Leviton ultimately disclaimed the patents or abandoned the applications. Defendants argue that it is possible

14

that Leviton, in consultation with successor counsel, decided to abandon these applications because of patentability concerns having nothing to do with an on-sale bar, for example, because of prior art either cited by the Patent Office or located independently. They argue that they must be able to examine Leviton's communications with its attorneys to disprove that it was the on-sale bar that caused Leviton not to respond to the Patent Office actions, and that they should not be limited to accepting Leviton's explanation for its conduct.

Leviton, of course, will be required to disclose its communications with the Patent Office. Moreover, it will be required to explain why it failed to act in response to Patent Office actions and Notices of Allowance. Any facts that Leviton was aware of in making those decisions must be revealed. But, so long as Leviton does not choose to rely on privileged communications or the advice of successor counsel in demonstrating why it abandoned the patents, under New York law, as set forth in Deutsche Bank, which is consistent with federal law, Leviton has not placed its privileged communications with counsel at issue. Simply because those communications might be useful in undermining Leviton's explanation does not mean that the attorney-client privilege has been impliedly waived. To conclude otherwise would require an implied waiver of privilege

15

in any legal malpractice action in which the defendant attorney challenged causation and claimed that the former client had available, through successor counsel, alternative courses of action to avoid the consequences of his malpractice. See Jakobleff v. Cerrato, Sweeney and Cohn, 97 A.D.2d 834, 835, 468 N.Y.S.2d 895 (2d Dep't 1983) (in legal malpractice action where plaintiff sought to recover medical expenses incurred because of counsel's negligence in failing to require husband to pay insurance premiums as part of divorce agreement, although defendant raised arguments as to how the expenses could have been avoided and why successor counsel could have taken remedial actions to avoid paying the expenses, court finds no waiver of privilege with respect to communications with successor counsel - "to conclude otherwise would render the privilege illusory in all legal malpractice actions").[2]

---

[2]     This is not a case in which Leviton was simultaneously represented by Greenberg Traurig and the successor firms, and was relying on each of them to timely file the patents. See Goldberg v. Hirschberg, 10 Misc. 3d at 298, 806 N.Y.S.2d at 337 (in malpractice action, where plaintiffs claimed that they relied on advice of counsel with regard to trading activity for which they were subsequently investigated, attorney-client privilege was waived with respect to any legal advice received from other counsel's concurrent advice on related subjects); Chin, 2008 WL 2073934, at *6 (court finds waiver of privilege where plaintiff claimed it was given erroneous advice by defendant about executing a release, when plaintiff was also advised on the release by the law firm which invoked privilege); IMO Indus., 192 Misc. 2d at 611, 746 N.Y.S. 2d

The <u>Deutsche Bank</u> case is instructive on this point. The plaintiff in that action brought suit to obtain indemnification for the amount in which it settled another action. Although the reasonableness of the settlement it negotiated was in issue, the court found that the plaintiff had not placed the legal advice it received in settling the action at issue because (1) its claim for indemnity was not premised on the legal advice it received in settling the action; (2) it had not made self-serving selective disclosure of privileged material; and (3) it committed to not using privileged material in establishing the reasonableness of its settlement. Instead, it intended to rely on the non-privileged discovery it had produced to the defendant. Thus, while its privileged communications were no doubt relevant to the issues the parties were litigating, the court found that the "mass of nonprivileged material provides a more-than-ample basis for the parties to litigate the reasonableness — an objective standard — of [the] decision to settle the . . . action rather than take the risk of going to trial." <u>Deutsche Bank</u>, 43 A.D.3d at 65, 837 N.Y.S.2d at 24.

---

at 576 ("[Plaintiff] claims that Farella and Anderson Kill concurrently represented it in the California Action, the outcome of which is the basis for [plaintiff's] alleged harm.").

Similarly, in <u>Green v. Beer</u>, No. 06 Civ. 4156 (KMW)(JCF), 2010 WL 2653650 (S.D.N.Y. July 2, 2010), the plaintiff sought to recover payments made in settlement with the IRS, from defendants who were alleged to have made fraudulent representations about investments and their tax consequences.  Those representations are what were alleged to have led to the IRS settlement.  The court denied the defendants access to the plaintiff's communications with counsel, even though the reasonableness of the IRS settlement and the reasonableness of the plaintiff's reliance on the alleged misrepresentations were at issue, stating:

> Here, the legal advice that the plaintiffs received prior to settling with the IRS and other taxing authorities is no doubt relevant to their claim for reimbursement of what they paid in those settlements. However, they are not relying on that advice to demonstrate the reasonableness of their decision to settle.  Consequently, . . . the attorney-client privilege has not been forfeited, and defendant['s] . . . application to compel production of privileged documents must be rejected.

<u>Green</u>, 2010 WL 2653650, at *6, <u>aff'd in relevant part and reversed in part</u>, <u>Green v. Beer</u>, No. 06 Civ.4156 (KMW)(JCF), 2010 WL 3422723 (S.D.N.Y. Aug 24, 2010); <u>see also</u> <u>Nomura Asset Capital</u>, 62 A.D.3d at 582, 880 N.Y.S.2d at 619 (finding no waiver of privilege where legal malpractice action was based on counsel's negligent advice in forming a trust, that allegedly

18

resulted in plaintiff's need to subsequently settle an action relating to the trust; "While any communications between plaintiff and its [successor] attorneys in the [action] that evaluated defendant's prior advice in the allegedly bungled [trust] transaction are certainly relevant to the issue of defendant's alleged malpractice, plaintiff disavows any intention to use such communications and defendant fails to show that any such communications are necessary to either plaintiff's claim or its defense.").

In sum, while Greenberg Traurig is free to attempt to demonstrate that factors other than its failure to timely file the patent applications resulted in the loss of the economic value of the patents, it is not necessary to invade Leviton's confidential communications with its attorneys in order to do so.

The same analysis applies to documents withheld on the basis of the work-product doctrine, although very few documents on Leviton's privilege log appear to have been withheld solely on the basis of work-product. See Veras Inv. Partners, 52 A.D.3d at 372, 860 N.Y.S.2d at 82-83 (where plaintiffs brought malpractice claim based, inter alia, on representation during regulatory investigations, subsequent settlement agreement with regulators did not place in issue or waive successor attorney's work-product with respect to rationale for entering into the settlement

19

agreement); <u>Deutsche Bank</u>, 43 A.D.3d at 66, 837 N.Y.S.2d at 25 (commencement of indemnity action did not, in itself, imply an at issue waiver of the protection of the attorney-client privilege or work-product doctrine, for documents concerning the defense and settlement of the underlying action); <u>Goldberg v. Hirschberg</u>, 10 Misc. 3d at 298-99, 806 N.Y.S.2d 337-338 ("work-product protection . . ., like the attorney-client privilege, may be waived pursuant to the 'at issue' doctrine").

However, there is one caveat on work-product. The work-product doctrine is inapplicable to documents prepared for, or in anticipation of, submission to the Patent Office. The prosecution of a patent is not, standing alone, in anticipation of litigation. <u>See</u>  <u>In re Rivastigmine Patent Litig.</u>, 237 F.R.D. 69, 85 (S.D.N.Y. 2006) ("In patent matters, the work product doctrine is less likely to be applicable, because the drafts of patent applications, unlike draft legal memoranda, are generally prepared prior to any expectation of litigation."); <u>Genal Strap, Inc. v. Dar</u>, No. CV2004-1691 (SJ)(MDG), 2006 WL 525794, at *3 (E.D.N.Y. Mar. 3, 2006) ("work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection because it is not created 'in anticipation of litigation'"); <u>Softview Computer Prods. Corp. v. Haworth, Inc.</u>, No. 97 Civ. 8815 (KMW)(HBP), 2000

WL 351411, at *5 (S.D.N.Y. Mar. 31, 2000) ("Documents that are generated in connection with a patent application are not protected by the work-product doctrine simply because an issued patent may give rise to an infringement action."); Minebea Co. Ltd. v. Minebea Co., Ltd., 143 F.R.D. 494, 499 (S.D.N.Y. 1992) ("Generally, work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection, since the prosecution of a patent application is a non-adversarial ex parte proceeding.").

It is not clear from the privilege logs, however, that any such documents were withheld by Plaintiff.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel production of documents subpoenaed from Plaintiff's successor counsel is denied.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: December 6, 2010
       New York, New York

21